**07 CV   5731**

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK



| | | |
|---|---|---|
| COMMERCE AND INDUSTRY INSURANCE COMPANY, | ) ) ) | Case No. |
| Plaintiff, | ) ) ) | |
| vs. | ) ) ) | |
| U.S. BANK NATIONAL ASSOCIATION, AS INDENTURE TRUSTEE FOR THE REGISTERED HOLDERS OF FMAC LOAN RECEIVABLES TRUSTS 1997-B, 1998-B, 1998-C, 1998-D AND 2000-A, | ) ) ) ) ) ) ) ) | |
| Defendant. | ) ) ) ) | |

JUN 1 5 2007
U.S. ... N Y.
CASHIERS

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff Commerce and Industry Insurance Company ("C&I"), sues defendant U.S. Bank National Association, as Indenture Trustee for the Registered Holders of FMAC Loan Receivables Trusts 1997-B, 1998-B, 1998-C, 1998-D and 2000-A ("U.S. Bank"), and alleges as follows:

1.    This is an action for declaratory relief pursuant to 28 U.S.C. § 2201. There is an actual controversy between C&I and U.S. Bank with respect to their respective rights and obligations under certain Secured Creditor Impaired Property ("SCIP") insurance policies issued by C&I.

2.    Plaintiff seeks a determination concerning the scope and nature of its obligations, if any, to the Defendant for fifty-two (52) claims ("Claims") brought under SCIP insurance policies

5295859, 5295865, 7788373 and 7788374 (collectively "SCIP Policies").  Exhibit A attached

hereto contains a list of the Claims.

## THE PARTIES

3.    Plaintiff C&I is a corporation organized under the laws of the State of New York

with its principal place of business in New York, New York.

4.    Defendant U.S. Bank is a Delaware corporation with its principal place of business

in Minneapolis, Minnesota.

## JURISDICTION AND VENUE

5.    This Court has jurisdiction over the subject matter of this action under 28 U.S.C.

§ 1332.  Complete diversity exists between plaintiff C&I and defendant U.S. Bank.  The amount

in controversy exceeds $75,000, exclusive of interest and costs.

6.    Pursuant to 28 U.S.C. § 1348, U.S. Bank is a citizen of Minnesota for diversity

purposes.

7.    This Court has personal jurisdiction over U.S. Bank.

8.    Pursuant to 28 U.S.C. § 1391(a)(2), venue is proper in the Southern District of New

York, the District where a substantial part of the events or missions giving rise to this claim

occurred.

9.    The SCIP Polices contain a Choice of Law and Forum clause that provides:

> K. **Choice of Law and Forum** - In the event that the **Insured** and
> the Company dispute the validity or formation of this Policy or the
> meaning, interpretation or operation of any term, condition,
> definition or provision of this Policy resulting in litigation,
> arbitration or other form of dispute resolution, the **Insured** and the
> Company agree that the law of the State of New York shall apply

and that all litigation, arbitration or other form of dispute
resolution shall take place in the State of New York.

10.     This action is properly filed pursuant to 28 U.S.C. § 2201 because an actual

controversy of a ripe and justiciable nature exists between C&I and U.S. Bank as to whether and

to what extent the Plaintiff has an obligation to provide insurance coverage to U.S. Bank in

connection with Claims brought under the SCIP Policies.

<u>FACTS</u>

**The SCIP Policies**

11.     C&I issued SCIP insurance policy 5295859 to FMAC Loan Receivables Trust

1998-C with a policy period from September 23, 1998 to September 23, 2018.   U.S. Bank has

never been added to this policy as either a Named Insured or an Additional Insured.

12.     C&I issued SCIP insurance policy 5295865 to FMAC Loan Receivables Trust

1998-D, with a policy period from December 1, 1998 to December 1, 2018.  U.S. Bank was

listed as an Additional Insured under this policy via Endorsement No. 19 which was effective on

December 1, 1998.

13.     C&I issued SCIP insurance policy 7788373 to FMAC Loan Receivables Trust

2000-A, with a policy period from April 26, 2000 to April 26, 2020.  U.S. Bank was listed as an

Additional Insured under this policy via Endorsement No. 8 which was effective on April 26,

2000.

14.     C&I issued SCIP insurance policy 7788374 to FMAC Loan Receivables Trust

2000-A, with a policy period from April 26, 2000 to April 26, 2020.  U.S. Bank was listed as an

Additional Insured under this policy via Endorsement No. 8 which was effective on April 26,

2000.

15. The portion of the Insuring Agreement in the SCIP Policies relevant to this dispute provides coverage as follows:

> In the event of **Loss** arising from a **Default** by a **Borrower** on a **Commercial Real Estate Loan** secured by an **Insured Property**, the Company agrees to pay the lesser of either the **Outstanding Balance**, in which case the Company will indemnify the **Insured**, or **Clean-Up Costs**, in which case the Company will pay on behalf of the **Insured**. For this coverage to apply, **On-Site Pollution Conditions** must first be discovered by the **Insured** during the **Policy Period**.

16. The SCIP Policies define Loss in relevant part as "the Outstanding Balance on the date of default or the amount of Clean-Up Costs, whichever is less...."

17. The SCIP Policies define Default as "the failure of a Borrower to make any part of a scheduled, periodic or final payment within ninety (90) days of the due date for each such payment, or as provided by the terms of the Commercial Real Estate Loan. The default shall be deemed to occur on the day after such due date provided that the default was not cured."

18. The SCIP Policies define Borrower as "the obligor on a Commercial Real Estate Loan, the holder of any ownership interest in an Insured Property and any other person, entity or organization controlled by or under common control of the obligor."

19. The SCIP Policies define Commercial Real Estate Loan as "a loan agreement which is secured by Insured Property, Leasehold or Fixed Assets, and in which loan agreement the Insured relies upon such Insured Property, Leasehold or Fixed Assets as the primary security and obtains a perfected mortgage or other security interest; and for which either (a) the appraised value of the Insured Property, Leasehold or Fixed Assets at the time the loan is made exceeds the principal amount of the loan or (b) the loan was made based on the Borrower's ability to make timely payments on the Loan, or the adequacy of cash flow of both the financed business unit

and the Borrower and an evaluation of the real and/or tangible personal property as collateral for such loan."

20.   The SCIP Policies define Outstanding Balance as "the principal amount of outstanding indebtedness owed to the Insured as of the date of Default calculated pursuant to the terms and conditions of the Commercial Real Estate Loan, which shall not include interest, penalties or other fees arising out of a Default."

21.   The SCIP Policies define Clean-Up Costs as:

> 1.    The costs and expenses of investigation or removal of, or rendering non-hazardous or less hazardous, **Pollution Conditions** to the extent required by **Environmental Laws**, or by governmental or court order or directive, or required or approved by a governmental agency, acting under authority granted by **Environmental Laws;**
>
> 2.    Legal fees and costs expended by or on behalf of the **Insured** in connection with the investigation or removal of, or the rendering non-hazardous or less hazardous of, **Pollution Conditions**, as described in sub-paragraph (1) above.

22.   The SCIP Policies define Pollution Conditions as:

> [T]he presence, discharge, dispersal, release or escape of **Hazardous Substances** into or upon land, the atmosphere or any watercourse or body of water, resulting in the presence of **Hazardous Substances** in concentration or amounts exceeding maximum levels allowed by applicable **Environmental Laws**, or by governmental court order or directive, or a governmental agency, acting under the authority granted by **Environmental Laws**, provided such conditions are not naturally present in the environment.

23.   The SCIP Policies define Environmental Laws as "any applicable federal, state or local laws pursuant to which the Insured has or may have a legal obligation to incur Clean-Up Costs for Pollution Conditions."

24.   The Notice Requirements and Claim Provisions section of the SCIP Policies requires the insured to give "written notice" to C&I "of the Insured's discovery of On-Site

Pollution Conditions as soon as possible but not later than twenty-one (21) days after discovery."

This Notice "shall include, at a minimum, information sufficient to identify the Insured, the

Insured Property, the names of the persons with knowledge regarding the time, place, cause,

nature of and other circumstances of the On-Site Pollution Conditions."

    25.    The Conditions section of the SCIP Policies contains a section setting forth the

Insured's duties in the event of any payment under the SCIP Policies:

> **B. Subrogation** – In the event of any payment under this Policy,
> the Company shall be subrogated to all the **Insured's** rights of
> recovery therefor against any person or organization, including the
> **Borrower**, without limitation, and the **Insured** shall execute and
> deliver instruments and papers, including an assignment of rights,
> and do whatever else is necessary to secure such rights. The
> Company's right of subrogation shall include any rights the
> **Insured** has or had against the **Borrower** arising from the
> **Borrower's Default** under the **Commercial Real Estate Loan**,
> including, without limitation, the right of foreclosure. The
> **Insured** shall do nothing to prejudice such rights. Any recovery as
> a result of subrogation proceedings arising out of the payment
> covered under this Policy shall accrue first to the Company to the
> extent of its payment under the Policy; and then to the **Insured** to
> the extent of payments in excess of the limits of coverage and to
> the extent of its Deductible. Expenses incurred in such
> subrogation proceedings shall be apportioned among the interested
> parties in the recovery in the proportion that each interested party's
> share in the recovery bears to the total recovery.
>
> With regard to **Loss** paid in accordance with the above, the
> Company will not have the right of foreclosure with regard to the
> **Commercial Real Estate Loan** in default. However, it is agreed
> that upon final disposition of the foreclosed property or properties
> associated with a foreclosed **Commercial Real Estate Loan**, if the
> amount recovered by the **Insured** exceed the **Outstanding
> Balance**, the Company will be subrogated against such recoveries
> to the extent of **Loss** paid.

    26.    The SCIP Policies contain an "Other Insurance" provision that states:

> **F. Other Insurance** – Where other insurance is available to the
> **Insured** for Loss covered under the terms and conditions of this
> Policy, the Company's obligation to the **Insured** shall be as
> follows:
>
> 1. This insurance shall apply as excess insurance over any other
> valid insurance, whether collectible or not, be it primary or excess.

This excess insurance shall in no way be increased or expanded as a result of the receivership, insolvency, or inability to pay of any insurer with respect to both the duty to indemnify and the duty to defend. This also applies to the **Insured** while acting as a self-insurer for any coverage.

2. Where this insurance is excess insurance, the Company will pay only its share of the amount of **Loss**, if any, that exceeds the total amount of all such other valid insurance.

The **Insured** shall promptly upon request of the Company provide the Company with copies of all policies potentially applicable to **Loss** covered by this Policy.

27.    As a condition of coverage, the SCIP Policies state that the Insured agrees that statements in the declarations and application for the policy are its agreements and representations, that the SCIP Policies are issued in reliance upon the truth of those representations, and that the SCIP Policies embody all agreements existing between the Insured and C&I relating to the insurance.

28.    To the extent any coverage is provided under the SCIP Policies, the SCIP Policies include a Policy Aggregate Limit that provides "[r]egardless of the number of Pollution Conditions, Insureds, Claims or claimants under this Policy," C&I's "total liability of all Loss covered under this Policy shall not exceed" $35,000,000 under any one of the SCIP Policies.

29.    To the extent any coverage is provided under the SCIP Policies, the SCIP Policies include an Each Loss Limit that provides "[r]egardless of the number of Pollution Conditions, Insureds, Claims or claimants under this Policy," and subject to the Policy Aggregate Limit, "the most the Company will pay in excess of the deductible amount" of $10,000 "for each Loss" is $2,000,000.

### The Coverage Dispute

30.    In general, the SCIP Policies provide coverage if U.S. Bank establishes that: (a) an insured commercial real estate loan is in default; and (b) "Pollution Conditions," as defined by

the SCIP Policies, are discovered at the site that is the subject of the insured commercial real estate loan. If these two conditions occur, and all other terms and conditions of the SCIP policies are met, the policies provide coverage for the "Loss" as defined by the SCIP Policies.

31.    The "Loss" payable to U.S. Bank under the SCIP Policies is the lesser of (1) the "Outstanding Balance" of the insured commercial real estate loan or (2) the amount of Clean-Up Costs that U.S. Bank has or may have a legal obligation to incur as a result of the Pollution Conditions discovered at the insured property.

32.    U.S. Bank has made claims on 52 insured loans it alleges are in default, and for which it alleges Pollution Conditions have been discovered. With respect to nearly all of these claims, it appears that the amount of Clean-Up Costs being sought by U.S. Bank is less than the Outstanding Balance of the defaulted loan.

33.    U.S. Bank contends that the amount of Clean-Up Costs owed to it under the SCIP Policies for the Claims can be established by estimates for proposed remedial work at the site in question, or by other environmental proposals prepared by U.S. Bank's environmental consultants. This contention is inconsistent with the express language of the SCIP Policies.

34.    The  proposals submitted by U.S. Bank's environmental consultants often contain only an estimated range of costs that are allegedly necessary to remediate the alleged Pollution Conditions at the sites in question. Such estimates are insufficient to support a claim for payment under the SCIP Policies.

35.    C&I has explained to U.S. Bank that under the SCIP Policies, Clean-Up Costs cannot be established through this type of documentation. Rather, C&I has explained to U.S.

Bank that the SCIP Policies require that U.S. Bank establish that it has, or may have, a legal obligation to incur Clean-Up Costs before C&I has any obligation to pay the Claims and, further, that C&I is obligated only to pay such incurred Clean-Up Costs "on behalf of" U.S. Bank.

36.    C&I has repeatedly requested that U.S. Bank provide documentation, such as state regulatory correspondence, showing that the alleged Clean-Up Costs were legally required to be incurred by U.S. Bank pursuant to applicable Environmental Laws as required by the SCIP Policies, and that such costs had been incurred.

37.    U.S. Bank has not provided C&I with documentation or evidence that it is or may be legally obligated to incur Clean-Up Costs at any of the 52 sites at issue, that it has actually incurred any such Clean-Up Costs, or that it if it has incurred such costs, the actual amount of such Clean-Up Costs.

38.    On June 5, 2007, U.S. Bank nonetheless sent a demand letter to C&I alleging that it was owed $11,786,287 in estimated Clean-Up Costs and $1,789,370 in Outstanding Balance for claims made under the SCIP Policies.

39.    C&I disputes that it is obligated to pay the amounts demanded by U.S. Bank.

40.    C&I has specifically reserved all rights and defenses under the SCIP Policies while conducting further investigation into the Claims made by U.S. Bank. Among the bases upon which C&I specifically reserved its rights and defenses are the following:

      a.    C&I reserved the right to confirm the Default of the insured commercial real estate loan and deny coverage if a Default did not occur.

      b.    C&I reserved the right to confirm the existence of Pollution Conditions and deny coverage if a Pollution Condition, as defined by the SCIP policies, does not exist at the property securing the claim loan.

c.     C&I reserved the right to deny coverage if U.S. Bank did not report the alleged Loss to C&I in writing within twenty-one (21) days of discovery.

d.     C&I reserved the right to deny coverage if the alleged Default did not occur during the Policy Period.

e.     C&I reserved the right to deny coverage if U.S. Bank did not discover the Pollution Conditions during the Policy Period.

f.     C&I reserved the right to deny coverage to the extent the insured commercial real estate loan was not secured by property whose appraised value was greater than the amount of the insured commercial real estate loan.

g.     C&I reserved the right to deny coverage to the extent that any inaccurate information was provided to C&I at the time the SCIP Policies were issued, including but not limited to the failure to comply with lending standards or procedures.

h.     C&I reserved all subrogation and recovery rights.

i.     C&I reserved to deny coverage to the extent that U.S. Bank made claims on the SCIP Policies for which they were not added to the policies as an Insured

j.     The coverage provided by the SCIP Policies is excess insurance over any other valid insurance, whether collectible or not, be it primary or excess. C&I reserved the right to only pay its share of the amount of Loss, if any, that exceeds the total amount of all such other valid insurance.

k.     C&I reserved the right to deny coverage to the extent that U.S. Bank, the servicer of the commercial real estate loans at issue and/or any other entity acting on U.S. Bank's behalf failed to mitigate any Loss incurred under the SCIP Policies.

l.     C&I reserved the right to seek reimbursement from U.S. Bank for any claim payments made by C&I to the extent that a determination is made after such payment that the Loss upon which such payment was made is excluded.

41.    C&I reserved the right, *inter alia*, to assert additional rights or defenses to coverage as additional facts related to U.S. Bank's Claims were discovered.

42.    A judicial decision will resolve the foregoing disputes between and among the parties.

## FIRST CAUSE OF ACTION
### (Declaratory Relief as to the Coverage Under the SCIP Policies)

43.    C&I repeats and incorporates by reference the allegations contained in paragraphs 1 through 42 as though more fully set forth herein.

44.    An actual and justiciable controversy exists between C&I and U.S. Bank

regarding the scope and extent of C&I's obligation, if any, to provide coverage for and/or make

payment to U.S. Bank in connection with its Claims under the SCIP Policies.

45.    C&I is entitled to a declaration regarding the scope and extent of C&I's

obligation, if any, to provide coverage for and/or make payment to U.S. Bank in connection with

its Claims under the SCIP Policies.

## SECOND CAUSE OF ACTION
### (Declaratory Relief as to the Payments Under the SCIP Policies)

46.    C&I repeats and incorporates by reference the allegations contained in paragraphs

1 through 45 as though more fully set forth herein.

47.    An actual and justiciable controversy exists between C&I and U.S. Bank

regarding the scope and extent of C&I's right, if any, to recover monies paid to U.S. Bank in

connection with its Claims under the SCIP Policies.

48.    C&I is entitled to a declaration regarding C&I's rights, if any, to receive

reimbursement, subrogation or other recovery from U.S. Bank in connection with its Claims

under the SCIP Policies.

**WHEREFORE** Plaintiff respectfully requests this Court:

A.    Declare the scope and extent of C&I's obligations, if any, to provide coverage for

and/or make payment to U.S. Bank for its Claims under the SCIP Policies;

B.    Declare that to the extent a determination is made that any claim payments made

by C&I to U.S. Bank the Claims are otherwise excluded by this action, C&I is entitled to

reimbursement of any such claim payment amounts.

C.    Award Plaintiff attorney's fees, costs of court and other such relief as the Court deems appropriate

**Dated:  June 15, 2007**

Respectfully submitted,

_____
Amy Lester (Bar Code # AL-3398)
Steptoe & Johnson LLP
750 Seventh Avenue, Suite 1900
New York, New York 10019
(212) 506-3900
(212) 506-3950 (fax)

and

Roger Warin
Harry Lee
Andrew Racca
Steptoe & Johnson LLP
1330 Connecticut Avenue, NW
Washington, DC 20036
(202) 429-3000
(202) 429-3902 (fax)

Attorneys for Plaintiff Commerce &
Industry Insurance Company

*Of Counsel:*

Scott Davis
David Timmins
Gardere Wynne Sewell LLP
1601 Elm Street
Suite 3000
Dallas, Texas 75201
(214) 999-3000
(214) 999-4667 (fax)

## EXHIBIT A

| Borrower | Property Address | Policy |
|---|---|---|
| Acme | 7618 Freedom St | 5295865 |
| Acme | I-95 and Hwy 76 | 5295865 |
| Acme | I-95 and Hwy 102 | 5295865 |
| Acme | Mill and Sunset Sts. | 5295865 |
| Acme | 733 N. Brools St | 5295865 |
| Acme | Hwy 15 and Hwy 301 | 5295865 |
| Acme | 100 Main St. | 5295865 |
| Acme | 106 N. Bovce St | 5295865 |
| Acme | I-95 and Hwy 301 | 5295865 |
| Acme | I-95 and Hwy 261 | 5295865 |
| Acme | Hwy 261 and Raccoon Road | 5295865 |
| Carolina Entertainment | 610 S. Guignard Dr. | 7788373 |
| Fasmart | 7865 Bay Rd | 7788373 |
| Fasmart | 4434 Summit Bridge Road | 7788373 |
| Iowa Oil | 704 E. Amelia St | 5295859 |
| Iowa Oil | 15080 Highway 20 | 5295859 |
| Henson Oil | 201 N. Church St | 5295859 |
| Henson Oil | 105 Highway 15 South | 5295859 |
| Petroleum Holdings | Old Highway 27 (Tekonsha) | 5295859 |
| Petroleum Holdings | 15874 11 Mile Road (Te-Khi) | 5295865 |
| FFP Properties | 2927 Pleaseanton Rd | 7788374 |
| FFP Properties | 404 N. Cleveland | 5295859 |
| FFP Properties | Hwy 77 and Cypress St | 5295859 |
| FFP Properties | Hwy 40 and Hwy 469 | 7788374 |
| FFP Properties | RR1, Box 2141 | 7788374 |
| FFP Properties | 5934 West I-20 | 7788374 |
| FFP Properties | 20482 Hwy 281 | 7788374 |
| FFP Properties | 11369 US Hwy 69 | 5295859 |
| FFP Properties | 401 N. Timberland | 7788374 |
| FFP Properties | 461 Hwy 69 South | 7788374 |
| FFP Properties | 730 West Corral | 5295859 |
| FFP Properties | 697 Medina | 5295859 |
| FFP Properties | 1540 El Indio Hwy | 5295859 |
| FFP Properties | Hwy 95 and Hwy 54 | 5295859 |
| FFP Properties | Hwy 359 and FM339 | 5295859 |
| FFP Properties | 2455 Main St | 7788374 |
| FFP Properties | 1401 San Diego Hwy | 5295859 |
| T&S Pantires | 725 West Jackson | 7788374 |
| East Texas Holdings | 801 Gilmer Rd | 5295859 |
| East Texas Holdings | West State Highway 79 | 5295859 |
| East Texas Holdings | 514 South Hwy 79 | 5295859 |
| East Texas Holdings | 1100 West Grand Ave | 5295859 |
| East Texas Holdings | 401 South Eastman Rd | 5295859 |
| East Texas Holdings | 1708 Mobberly | 5295859 |
| East Texas Holdings | 1111 East Broadway | 5295859 |
| East Texas Holdings | 3127 Estes Parkway | 5295859 |
| East Texas Holdings | 500 E. Palestine | 5295859 |
| East Texas Holdings | 1608 Judson | 5295859 |

## EXHIBIT A

| Borrower | Property Address | Policy |
|---|---|---|
| East Texas Holdings | 524 Eastman Rd | 5295859 |
| East Texas Holdings | US 80 at Alpine (1301 E. Marshal) | 5295859 |
| One Stop Food Services | 444 State Hwy 34 S | 7788373 |
| One Stop Food Services | SWC FM 879 and I-95 | 7788373 |