UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

COMMERCE AND INDUSTRY INSURANCE
COMPANY and AMERICAN INTERNATIONAL
SPECIALTY LINES INSURANCE COMPANY

                Plaintiffs,

              -against-

U.S. BANK NATIONAL ASSOCIATION, AS
INDENTURE TRUSTEE FOR THE REGISTERED
HOLDERS OF FMAC LOAN RECEIVABLES
TRUSTS 1997-B, 1998-B, 1998-C, 1998-D AND
2000-A,

              Defendant.

Civil Action No. 1:07 CV 5731
(JGK)(RLE)

**DECLARATION OF
LARA E. ROMANSIC**

LARA E. ROMANSIC states as follows:

1.    I am a member of the Bar of this Court and associated with the firm of Steptoe & Johnson LLP, counsel for plaintiffs Commerce and Industry Insurance Company ("C&I") and American International Specialty Lines Insurance Company ("AISLIC") (collectively "Insurers") in the above-captioned case.  I make this declaration in support of Insurers' motion to dismiss the Complaint.

2.    Annexed hereto as **Exhibit A** is a true and correct copy of the Plaintiffs' Second Amended Complaint.

3.    Annexed hereto as **Exhibit B** is a true and correct copy of Defendant's Answer and Counterclaim.

Dated: November 19, 2007
      New York, New York

                               _____
                                    Lara E. Romansic

# EXHIBIT A

## IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF NEW YORK

COMMERCE AND INDUSTRY ) Case No. 07-CV-5731 (JGK)
INSURANCE COMPANY and )
AMERICAN INTERNATIONAL )
SPECIALITY LINES INSURANCE )
COMPANY, )
)
          Plaintiff, )
)
vs. )
)
U.S. BANK NATIONAL )
ASSOCIATION, AS INDENTURE )
TRUSTEE FOR THE REGISTERED )
HOLDERS OF FMAC LOAN )
RECEIVABLES TRUSTS 1997-B, )
1998-B, 1998-C, 1998-D AND 2000-A, )
)
          Defendant. )



## PLAINTIFFS' SECOND AMENDED COMPLAINT

Plaintiffs Commerce and Industry Insurance Company ("C&I") and American International Specialty Lines Insurance Company ("AISLIC")(collectively "Insurers"), sue defendant U.S. Bank National Association, as Indenture Trustee for the Registered Holders of FMAC Loan Receivables Trusts 1997-B, 1998-B, 1998-C, 1998-D and 2000-A ("U.S. Bank"), and allege as follows:

    1.    This is an action for declaratory relief pursuant to 28 U.S.C. § 2201. There is an actual controversy between Insurers and U.S. Bank with respect to their respective rights and obligations under certain Secured Creditor Impaired Property ("SCIP") insurance policies issued by Insurers.

    2.    Plaintiffs seek a determination concerning the scope and nature of its obligations, if any, to the Defendant for sixty-four (64) claims ("Claims") brought under SCIP insurance

policies 5295738, 5295859, 5295865, 7788373, 7788374, 8195202 (collectively "SCIP

Policies"). Exhibit A attached hereto contains a list of the Claims.

## THE PARTIES

3.    Plaintiff C&I is a corporation organized under the laws of the State of New York

with its principal place of business in New York, New York.

4.    Plaintiff AISLIC is a corporation organized under the laws of the State of Alaska

with its principal place of business in Jersey City, New Jersey.

5.    Defendant U.S. Bank is a Delaware corporation with its principal place of business

in Minneapolis, Minnesota.

## JURISDICTION AND VENUE

6.    This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §

1332. Complete diversity exists between plaintiffs C&I and AISLIC and defendant U.S. Bank.

The amount in controversy exceeds $75,000, exclusive of interest and costs.

7.    Pursuant to 28 U.S.C. § 1348, U.S. Bank is a citizen of Minnesota for diversity

purposes.

8.    This Court has personal jurisdiction over U.S. Bank.

9.    Pursuant to 28 U.S.C. § 1391(a)(2), venue is proper in the Southern District of New

York, the District where a substantial part of the events or omissions giving rise to this claim

occurred.

10.    SCIP insurance polices 5295738, 5295859, 5295865, 7788373, and 7788374

contain a Choice of Law and Forum clause that provides:

- 2 -

K. **Choice of Law and Forum** - In the event that the **Insured** and the Company dispute the validity or formation of this Policy or the meaning, interpretation or operation of any term, condition, definition or provision of this Policy resulting in litigation, arbitration or other form of dispute resolution, the **Insured** and the Company agree that the law of the State of New York shall apply and that all litigation, arbitration or other form of dispute resolution shall take place in the State of New York.

11.    SCIP insurance policy 8195202 contains an Arbitration clause that provides:

K. **Arbitration** – It is hereby understood and agreed that all disputes or differences which may arise under or in connection with this Policy, whether arising before or after termination of this Policy, including any determination of the amount of **Loss**, shall be submitted to the American Arbitration Association under and in accordance with its then prevailing commercial arbitration rules. The arbitrators shall be chosen in the manner and within the time frames provided by such rules. If permitted under such rules, the arbitrators shall be three disinterested individuals having knowledge of the legal, corporate management, or insurance issues relevant to the matters in dispute.

Any party may commence such arbitration proceeding in either New York, NY; Atlanta, Georgia; Chicago, Illinois; or Denver, Colorado. The arbitrators shall give due consideration to the general principles of Delaware law in the construction and interpretation of the provisions of this Policy; provided, however, that the terms, conditions, provisions and exclusions of this Policy are to be construed in an evenhanded fashion as between the parties, including without limitation, where the language of this Policy is alleged to be ambiguous or otherwise unclear, the issue shall be resolved in the manner most consistent with the relevant terms, conditions, provisions or exclusions of the Policy (without regard to the authorship of the language, the doctrine of reasonable expectation of the parties and without any presumption or arbitrary interpretation or construction in favor of either party or parties, and in accordance with the intent of the parties.)

The written decision of the arbitrators shall be provided to both parties and shall be binding on them. The arbitrators' award shall not include attorney fees or other costs.

Each party shall bear equally the expenses of the arbitration.

12.    Insurers and U.S. Bank have agreed to waive their rights under the Arbitration clause and to instead litigate the claims brought under SCIP policy 8195202 with this Court.

13.    This action is properly filed pursuant to 28 U.S.C. § 2201 because an actual controversy of a ripe and justiciable nature exists between Insurers and U.S. Bank as to whether

- 3 -

and to what extent the Plaintiffs have an obligation to provide insurance coverage to U.S. Bank in connection with Claims brought under the SCIP Policies.

## FACTS

### The SCIP Policies

14.    C&I issued SCIP insurance policy 5295738 to FMAC Loan Receivables Trust 1998-B with a policy period from June 11, 1998 to June 11, 2018. U.S. Bank has never been added to this policy as either a Named Insured or an Additional Insured.

15.    C&I issued SCIP insurance policy 5295859 to FMAC Loan Receivables Trust 1998-C with a policy period from September 23, 1998 to September 23, 2018.  U.S. Bank has never been added to this policy as either a Named Insured or an Additional Insured.

16.    C&I issued SCIP insurance policy 5295865 to FMAC Loan Receivables Trust 1998-D, with a policy period from December 1, 1998 to December 1, 2018.  U.S. Bank was listed as an Additional Insured under this policy via Endorsement No. 19 which was effective on December 1, 1998.

17.    C&I issued SCIP insurance policy 7788373 to FMAC Loan Receivables Trust 2000-A, with a policy period from April 26, 2000 to April 26, 2020. U.S. Bank was listed as an Additional Insured under this policy via Endorsement No. 8 which was effective on April 26, 2000.

18.    C&I issued SCIP insurance policy 7788374 to FMAC Loan Receivables Trust 2000-A, with a policy period from April 26, 2000 to April 26, 2020. U.S. Bank was listed as an Additional Insured under this policy via Endorsement No. 8 which was effective on April 26, 2000.

- 4 -

19. AISLIC issued SCIP insurance policy 8195202 to FMAC Loan Receivables Trust 1997-B, with a policy period from September 23, 1997 to September 23, 2017. U.S. Bank has never been added to this policy as either a Named Insured or an Additional Insured.

20. The portion of the Insuring Agreement in the SCIP Policies relevant to this dispute provides coverage as follows:

> In the event of **Loss** arising from a **Default** by a **Borrower** on a **Commercial Real Estate Loan** secured by an **Insured Property**, the Company agrees to pay the lesser of either the **Outstanding Balance**, in which case the Company will indemnify the **Insured**, or **Clean-Up Costs**, in which case the Company will pay on behalf of the **Insured**. For this coverage to apply, **On-Site Pollution Conditions** must first be discovered by the **Insured** during the **Policy Period**.

21. The SCIP Policies define Loss in relevant part as "the Outstanding Balance on the date of default or the amount of Clean-Up Costs, whichever is less...."

22. The SCIP Policies define Default as "the failure of a Borrower to make any part of a scheduled, periodic or final payment within ninety (90) days of the due date for each such payment, or as provided by the terms of the Commercial Real Estate Loan. The default shall be deemed to occur on the day after such due date provided that the default was not cured."

23. The SCIP Policies define Borrower as "the obligor on a Commercial Real Estate Loan, the holder of any ownership interest in an Insured Property and any other person, entity or organization controlled by or under common control of the obligor."

24. The SCIP Policies define Commercial Real Estate Loan as "a loan agreement which is secured by Insured Property, Leasehold or Fixed Assets, and in which loan agreement the Insured relies upon such Insured Property, Leasehold or Fixed Assets as the primary security and obtains a perfected mortgage or other security interest; and for which either (a) the appraised

- 5 -

value of the Insured Property, Leasehold or Fixed Assets at the time the loan is made exceeds the

principal amount of the loan or (b) the loan was made based on the Borrower's ability to make

timely payments on the Loan, or the adequacy of cash flow of both the financed business unit

and the Borrower and an evaluation of the real and/or tangible personal property as collateral for

such loan."

25. The SCIP Policies define Outstanding Balance as "the principal amount of

outstanding indebtedness owed to the Insured as of the date of Default calculated pursuant to the

terms and conditions of the Commercial Real Estate Loan, which shall not include interest,

penalties or other fees arising out of a Default."

26. The SCIP Policies define Clean-Up Costs as:

> 1.    The costs and expenses of investigation or removal of, or
> rendering non-hazardous or less hazardous, **Pollution Conditions**
> to the extent required by **Environmental Laws**, or by
> governmental or court order or directive, or required or approved
> by a governmental agency, acting under authority granted by
> **Environmental Laws;**
>
> 2.    Legal fees and costs expended by or on behalf of the
> **Insured** in connection with the investigation or removal of, or the
> rendering non-hazardous or less hazardous of, **Pollution
> Conditions**, as described in sub-paragraph (1) above.

27. The SCIP Policies define Pollution Conditions as:

> [t]he presence, discharge, dispersal, release or escape of
> **Hazardous Substances** into or upon land, the atmosphere or any
> watercourse or body of water, resulting in the presence of
> **Hazardous Substances** in concentration or amounts exceeding
> maximum levels allowed by applicable **Environmental Laws**, or
> by governmental court order or directive, or a governmental
> agency, acting under the authority granted by **Environmental
> Laws**, provided such conditions are not naturally present in the
> environment.

28.   The SCIP Policies define Environmental Laws as "any applicable federal, state or local laws pursuant to which the Insured has or may have a legal obligation to incur Clean-Up Costs for Pollution Conditions."

29.   The Notice Requirements and Claim Provisions section of the SCIP Policies requires the insured to give "written notice" to Insurers "of the Insured's discovery of On-Site Pollution Conditions as soon as possible but not later than twenty-one (21) days after discovery." This Notice "shall include, at a minimum, information sufficient to identify the Insured, the Insured Property, the names of the persons with knowledge regarding the time, place, cause, nature of and other circumstances of the On-Site Pollution Conditions."

30.   The Conditions section of the SCIP Policies contains a section setting forth the Insured's duties in the event of any payment under the SCIP Policies:

> **B. Subrogation** – In the event of any payment under this Policy, the Company shall be subrogated to all the **Insured's** rights of recovery therefor against any person or organization, including the **Borrower**, without limitation, and the **Insured** shall execute and deliver instruments and papers, including an assignment of rights, and do whatever else is necessary to secure such rights. The Company's right of subrogation shall include any rights the **Insured** has or had against the **Borrower** arising from the **Borrower's Default** under the **Commercial Real Estate Loan**, including, without limitation, the right of foreclosure. The **Insured** shall do nothing to prejudice such rights. Any recovery as a result of subrogation proceedings arising out of the payment covered under this Policy shall accrue first to the Company to the extent of its payment under the Policy; and then to the **Insured** to the extent of payments in excess of the limits of coverage and to the extent of its Deductible. Expenses incurred in such subrogation proceedings shall be apportioned among the interested parties in the recovery in the proportion that each interested party's share in the recovery bears to the total recovery.
>
> With regard to **Loss** paid in accordance with the above, the Company will not have the right of foreclosure with regard to the **Commercial Real Estate Loan** in default. However, it is agreed that upon final disposition of the foreclosed property or properties associated with a foreclosed **Commercial Real Estate Loan**, if the amount recovered by the **Insured** exceed the **Outstanding**

- 7 -

Balance, the Company will be subrogated against such recoveries to the extent of Loss paid.

31.   The SCIP Policies contain an "Other Insurance" provision that states:

F. **Other Insurance** – Where other insurance is available to the **Insured** for **Loss** covered under the terms and conditions of this Policy, the Company's obligation to the **Insured** shall be as follows:

1. This insurance shall apply as excess insurance over any other valid insurance, whether collectible or not, be it primary or excess. This excess insurance shall in no way be increased or expanded as a result of the receivership, insolvency, or inability to pay of any insurer with respect to both the duty to indemnify and the duty to defend. This also applies to the **Insured** while acting as a self-insurer for any coverage.

2. Where this insurance is excess insurance, the Company will pay only its share of the amount of **Loss**, if any, that exceeds the total amount of all such other valid insurance.

The **Insured** shall promptly upon request of the Company provide the Company with copies of all policies potentially applicable to **Loss** covered by this Policy.

32.   As a condition of coverage, the SCIP Policies state that the Insured agrees that statements in the declarations and application for the policy are its agreements and representations, that the SCIP Policies are issued in reliance upon the truth of those representations, and that the SCIP Policies embody all agreements existing between the Insured and Insurers relating to the insurance.

33.   SCIP insurance policies 5295738, 5295859, 5295865, 7788373, and 7788374 include a Policy Aggregate Limit that provides "[r]egardless of the number of Pollution Conditions, Insureds, Claims or claimants under this Policy," C&I's "total liability of all Loss covered under this Policy shall not exceed" $35,000,000.

34.   SCIP insurance policy 8195202 includes a Policy Aggregate Limit that provides "[r]egardless of the number of Pollution Conditions, Insureds, Claims or claimants under this

Policy," AISLIC's "total liability of all Loss covered under this Policy shall not exceed" $25,000,000.

35.   SCIP insurance policies 5295738, 5295859, 5295865, 7788373, and 7788374 include an Each Loss Limit that provides "[r]egardless of the number of Pollution Conditions, Insureds, Claims or claimants under this Policy," and subject to the Policy Aggregate Limit, "the most the Company will pay in excess of the deductible amount" of $10,000 "for each Loss" is $2,000,000.

36.   SCIP insurance policy 8195202 includes an Each Loss Limit that provides "[r]egardless of the number of Pollution Conditions, Insureds, Claims or claimants under this Policy," and subject to the Policy Aggregate Limit, "the most the Company will pay in excess of the deductible amount" of $10,000 "for each Loss" is $5,000,000.

### The Coverage Dispute

37.   In general, the SCIP Policies provide coverage if U.S. Bank establishes that: (a) an insured commercial real estate loan is in default; and (b) "Pollution Conditions," as defined by the SCIP Policies, are discovered at the site that is the subject of the insured commercial real estate loan. If these two conditions occur, and all other terms and conditions of the SCIP policies are met, the policies provide coverage for the "Loss" as defined by the SCIP Policies.

38.   The "Loss" payable to U.S. Bank under the SCIP Policies is the lesser of (1) the "Outstanding Balance" of the insured commercial real estate loan or (2) the amount of Clean-Up Costs that U.S. Bank has or may have a legal obligation to incur as a result of the Pollution Conditions discovered at the insured property.

- 9 -

39. U.S. Bank has made claims on sixty-four (64) insured loans it alleges are in default, and for which it alleges Pollution Conditions have been discovered. With respect to nearly all of these claims, it appears that the amount of Clean-Up Costs being sought by U.S. Bank is less than the Outstanding Balance of the defaulted loan.

40. U.S. Bank contends that the amount of Clean-Up Costs owed to it under the SCIP Policies for the Claims can be established by estimates for proposed remedial work at the site in question, or by other environmental proposals prepared by U.S. Bank's environmental consultants. This contention is inconsistent with the express language of the SCIP Policies.

41. The proposals submitted by U.S. Bank's environmental consultants often contain only an estimated range of costs that are allegedly necessary to remediate the alleged Pollution Conditions at the sites in question. Such estimates are insufficient to support a claim for payment under the SCIP Policies.

42. Insurers have explained to U.S. Bank that under the SCIP Policies, Clean-Up Costs cannot be established through this type of documentation. Rather, Insurers have explained to U.S. Bank that the SCIP Policies require that U.S. Bank establish that it has, or may have, a legal obligation to incur Clean-Up Costs before Insurers have any obligation to pay the Claims and, further, that Insurers are obligated only to pay such incurred Clean-Up Costs "on behalf of" U.S. Bank.

43. Insurers have repeatedly requested that U.S. Bank provide documentation, such as state regulatory correspondence, showing that the alleged Clean-Up Costs were legally required to be incurred by U.S. Bank pursuant to applicable Environmental Laws as required by the SCIP Policies, and that such costs had been incurred.

- 10 -

44.   U.S. Bank has not provided Insurers with documentation or evidence that it is or may be legally obligated to incur Clean-Up Costs at any of the sixty-four (64) sites at issue, that it has actually incurred any such Clean-Up Costs, or that it if it has incurred such costs, the actual amount of such Clean-Up Costs.

45.   On June 5, 2007, U.S. Bank nonetheless sent a demand letter to Insurers alleging that it was owed $11,786,287 in estimated Clean-Up Costs and $1,789,370 in Outstanding Balance for claims made under the SCIP Policies.

46.   Insurers dispute that they are obligated to pay the amounts demanded by U.S. Bank.

47.   Insurers have specifically reserved all rights and defenses under the SCIP Policies while conducting further investigation into the Claims made by U.S. Bank.  Among the bases upon which Insurers specifically reserved their rights and defenses are the following:

a.   Insurers reserved the right to confirm the Default of the insured commercial real estate loan and deny coverage if a Default did not occur.

b.   Insurers reserved the right to confirm the existence of Pollution Conditions and deny coverage if a Pollution Condition, as defined by the SCIP policies, does not exist at the property securing the claim loan.

c.   Insurers reserved the right to deny coverage if U.S. Bank did not report the alleged Loss to Insurers in writing within twenty-one (21) days of discovery.

d.   Insurers reserved the right to deny coverage if the alleged Default did not occur during the Policy Period.

e.   Insurers reserved the right to deny coverage if U.S. Bank did not discover the Pollution Conditions during the Policy Period.

f.   Insurers reserved the right to deny coverage to the extent the insured commercial real estate loan was not secured by property whose appraised value was greater than the amount of the insured commercial real estate loan.

g.   Insurers reserved the right to deny coverage to the extent that any inaccurate information was provided to Insurers at the time the SCIP Policies were issued, including but not limited to the failure to comply with lending standards or procedures.

- 11 -

h.    Insurers reserved all subrogation and recovery rights.

i.    Insurers reserved to deny coverage to the extent that U.S. Bank made claims on the SCIP Policies for which they were not added to the policies as an Insured

j.    The coverage provided by the SCIP Policies is excess insurance over any other valid insurance, whether collectible or not, be it primary or excess. Insurers reserved the right to only pay their share of the amount of Loss, if any, that exceeds the total amount of all such other valid insurance.

k.    Insurers reserved the right to deny coverage to the extent that U.S. Bank, the servicer of the commercial real estate loans at issue and/or any other entity acting on U.S. Bank's behalf failed to mitigate any Loss incurred under the SCIP Policies.

l.    Insurers reserved the right to seek reimbursement from U.S. Bank for any claim payments made by Insurers to the extent that a determination is made after such payment that the Loss upon which such payment was made is excluded.

48.    Insurers reserved the right, *inter alia*, to assert additional rights or defenses to coverage as additional facts related to U.S. Bank's Claims were discovered.

49.    A judicial decision will resolve the foregoing disputes between and among the parties.

### FIRST CAUSE OF ACTION
### (Declaratory Relief as to the Coverage Under the SCIP Policies)

50.    Insurers repeat and incorporate by reference the allegations contained in paragraphs 1 through 49 as though more fully set forth herein.

51.    An actual and justiciable controversy exists between Insurers and U.S. Bank regarding the scope and extent of Insurers' obligation, if any, to provide coverage for and/or make payment to U.S. Bank in connection with its Claims under the SCIP Policies.

52.    Insurers are entitled to a declaration regarding the scope and extent of Insurers' obligation, if any, to provide coverage for and/or make payment to U.S. Bank in connection with its Claims under the SCIP Policies.

## SECOND CAUSE OF ACTION
### (Declaratory Relief as to the Payments Under the SCIP Policies)

53.    Insurers repeat and incorporate by reference the allegations contained in paragraphs 1 through 52 as though more fully set forth herein.

54.    An actual and justiciable controversy exists between Insurers and U.S. Bank regarding the scope and extent of Insurers' rights, if any, to recover monies paid to U.S. Bank in connection with its Claims under the SCIP Policies.

55.    Insurers are entitled to a declaration regarding Insurers' rights, if any, to receive reimbursement, subrogation or other recovery from U.S. Bank in connection with its Claims under the SCIP Policies.

**WHEREFORE** Plaintiffs respectfully request this Court:

A.    Declare the scope and extent of Insurers' obligations, if any, to provide coverage for and/or make payment to U.S. Bank for its Claims under the SCIP Policies;

B.    Declare that to the extent a determination is made that any claim payments made by Insurers to U.S. Bank the Claims are otherwise excluded by this action, Insurers are entitled to reimbursement of any such claim payment amounts.

C.    Award Plaintiffs' attorney's fees, costs of court and other such relief as the Court deems appropriate.

- 13 -

Dated:  **August 28, 2007**

Respectfully submitted,

Amy Lester (Bar Code # AL-3398)
Lara E. Romansic (Bar Code # LR-9236)
Steptoe & Johnson LLP
750 Seventh Avenue, Suite 1900
New York, New York 10019
(212) 506-3900
(212) 506-3950 (fax)

and

Roger Warin
Harry Lee
Andrew Racca
Steptoe & Johnson LLP
1330 Connecticut Avenue, NW
Washington, DC 20036
(202) 429-3000
(202) 429-3902 (fax)

Attorneys for Plaintiff Commerce &
Industry Insurance Company

*Of Counsel:*

Scott Davis
David Timmins
Gardere Wynne Sewell LLP
1601 Elm Street
Suite 3000
Dallas, Texas 75201
(214) 999-3000
(214) 999-4667 (fax)

- 14 -

# EXHIBIT A

| Borrower | Property Address | Policy |
|---|---|---|
| Acme | 7618 Freedom St | 5295865 |
| Acme | I-95 and Hwy 76 | 5295865 |
| Acme | I-95 and Hwy 102 | 5295865 |
| Acme | Mill and Sunset Sts. | 5295865 |
| Acme | 733 N. Brools St | 5295865 |
| Acme | Hwy 15 and Hwy 301 | 5295865 |
| Acme | 100 Main St. | 5295865 |
| Acme | 106 N. Bovce St | 5295865 |
| Acme | I-95 and Hwy 301 | 5295865 |
| Acme | I-95 and Hwy 261 | 5295865 |
| Acme | Hwy 261 and Raccoon Road | 5295865 |
| Carolina Entertainment | 610 S. Guignard Dr. | 7788373 |
| Fasmart | US Hwy 360 and Hwy 17 | 5295738 |
| Fasmart | 7865 Bay Rd | 7788373 |
| Fasmart | 4434 Summit Bridge Road | 7788373 |
| Iowa Oil | 704 E. Amelia St | 5295859 |
| Iowa Oil | 15080 Highway 20 | 5295859 |
| Henson Oil | 201 N. Church St | 5295859 |
| Henson Oil | 105 Highway 15 South | 5295859 |
| Petroleum Holdings | Old Highway 27 (Tekonsha) | 5295859 |
| Petroleum Holdings | 15874 11 Mile Road (Te-Khi) | 5295865 |
| FFP Properties | 2927 Pleaseanton Rd | 7788374 |
| FFP Properties | 404 N. Cleveland | 5295859 |
| FFP Properties | Hwy 77 and Cypress St | 5295859 |
| FFP Properties | Hwy 40 and Hwy 469 | 7788374 |
| FFP Properties | RR1, Box 2141 | 7788374 |
| FFP Properties | 5934 West I-20 | 7788374 |
| FFP Properties | 20482 Hwy 281 | 7788374 |
| FFP Properties | 11369 US Hwy 69 | 5295859 |
| FFP Properties | 401 N. Timberland | 7788374 |
| FFP Properties | 461 Hwy 69 South | 7788374 |
| FFP Properties | 730 West Corral | 5295859 |
| FFP Properties | 697 Medina | 5295859 |
| FFP Properties | 1540 El Indio Hwy | 5295859 |
| FFP Properties | Hwy 95 and Hwy 54 | 5295859 |
| FFP Properties | Hwy 359 and FM339 | 5295859 |
| FFP Properties | 2455 Main St | 7788374 |
| FFP Properties | 1401 San Diego Hwy | 5295859 |
| T&S Pantires | 725 West Jackson | 7788374 |
| East Texas Holdings | 801 Gilmer Rd | 5295859 |
| East Texas Holdings | West State Highway 79 | 5295859 |
| East Texas Holdings | 514 South Hwy 79 | 5295859 |
| East Texas Holdings | 1100 West Grand Ave | 5295859 |
| East Texas Holdings | 401 South Eastman Rd | 5295859 |
| East Texas Holdings | 1708 Mobberly | 5295859 |
| East Texas Holdings | 1111 East Broadway | 5295859 |
| East Texas Holdings | 3127 Estes Parkway | 5295859 |
| East Texas Holdings | 500 E. Palestine | 5295859 |

# EXHIBIT A

| Borrower | Property Address | Policy |
|---|---|---|
| East Texas Holdings | 1608 Judson | 5295859 |
| East Texas Holdings | 524 Eastman Rd | 5295859 |
| East Texas Holdings | US 80 at Alpine (1301 E. Marshal) | 5295859 |
| One Stop Food Services | 444 State Hwy 34 S | 7788373 |
| One Stop Food Services | SWC FM 879 and I-95 | 7788373 |
| Ran Oil | 2525 State St | 5295738 |
| Ran Oil | 215 Conneaut Lake Road | 5295738 |
| Ran Oil | 471 North St | 5295738 |
| Ran Oil | 5 Wilson Ave | 5295738 |
| Ran Oil | 3804 Liberty St | 5295738 |
| Ran Oil | 803 Brown Ave | 5295738 |
| Ran Oil | 7484 Main St | 5295738 |
| Ran Oil | 66 E. State St | 5295738 |
| Oasis | 17230 Preston Road | 8195202 |
| Oasis | 1101 Coit road | 8195202 |
| Oasis | 1171 W. Parker Road | 8195202 |

# EXHIBIT B

Charles E. Dorkey III (CD-8422)
S. Jane Moffat (SM-0912)
McKENNA LONG & ALDRIDGE LLP
230 Park Avenue
Suite 1700
New York, NY 10169
(212) 905-8330
(212) 922-1819 (facsimile)

*Attorneys for Defendant U.S. Bank National Association,
as Indenture Trustee for the Registered Holders of FMAC
Loan Receivables Trusts 1997-B, 1998-B, 1998-C, 1998-D
and 2000-A*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| COMMERCE AND INDUSTRY INSURANCE COMPANY and AMERICAN INTERNATIONAL SPECIALTY LINES INSURANCE COMPANY,<br><br>                                Plaintiffs,<br><br>- against –<br><br>U.S. BANK NATIONAL ASSOCIATION, AS INDENTURE TRUSTEE FOR THE REGISTERED HOLDERS OF FMAC LOAN RECEIVABLES TRUSTS 1997-B, 1998-B, 1998-C, 1998-D AND 2000-A,<br><br>                                Defendant. | Civil Action No.<br>1:07-CV-5731 (JGK)(RLE)<br><br>**DEFENDANT'S ANSWER AND COUNTERCLAIM** |

Defendant U.S. Bank National Association, as Indenture Trustee for the Registered Holders of

FMAC Loan Receivables Trusts 1997-B, 1998-B, 1998-C, 1998-D and 2000-A ("Defendant" or

"U.S. Bank"), by its undersigned attorneys, McKenna Long & Aldridge LLP, states for its Answer to

the Second Amended Complaint of Plaintiffs Commerce and Industry Insurance Company ("C&I")

and American International Specialty Lines Insurance Company ("AISLIC") (collectively,

"Plaintiffs"), as follows:

　　　1.　　Admits the averments contained in Paragraph 1.

2.      Admits the averments contained in Paragraph 2, except denies that Plaintiffs have no obligation under the SCIP Policies.

3.      Denies knowledge or information sufficient to form a belief as to the truth of the averments contained in Paragraph 3.

4.      Denies knowledge or information sufficient to form a belief as to the truth of the averments contained in Paragraph 4.

5.      Denies the averments contained in Paragraph 5, except admits that U.S. Bank is a national banking association with its main office, as listed in its Articles of Association, in Cincinnati, Ohio.

6.      Admits the averments contained in Paragraph 6.

7.      Denies the averments contained in Paragraph 7, except admits that U.S. Bank is deemed a citizen of Ohio under 28 U.S.C. § 1348 and that this Court has diversity jurisdiction over this case.

8.      Admits the averments contained in Paragraph 8.

9.      Admits the averments contained in Paragraph 9.

10.     Denies knowledge or information sufficient to form a belief as to the truth of the averments contained in Paragraph 10, except admits that certain insurance policies in Defendant's possession, issued by one or both of Plaintiffs, contain the provision quoted in Paragraph 10, and respectfully refers to the quoted insurance policies for the terms thereof.

11.     Denies knowledge or information sufficient to form a belief as to the truth of the averments contained in Paragraph 11, except admits that certain insurance policies in Defendant's possession, issued by one or both of Plaintiffs, contain the provision quoted in Paragraph 11, and respectfully refers to the quoted insurance policy for the terms thereof.

12.     Admits the averments contained in Paragraph 12.

13.     Admits the averments contained in Paragraph 13.

-2-

14.    Admits the averments contained in the first sentence in Paragraph 14, and denies knowledge or information sufficient to form a belief as to the truth of the averments contained in the second sentence of Paragraph 14, and respectfully refers to the insurance policy, referred to in Paragraph 14, for the terms thereof.

15.    Admits the averments contained in the first sentence in Paragraph 15, and denies knowledge or information sufficient to form a belief as to the truth of the averments contained in the second sentence of Paragraph 15, and respectfully refers to the insurance policy, referred to in Paragraph 15, for the terms thereof.

16.    Admits the averments contained in Paragraph 16.

17.    Admits the averments contained in Paragraph 17.

18.    Admits the averments contained in Paragraph 18.

19.    Admits the averments contained in the first sentence in Paragraph 19, and denies knowledge or information sufficient to form a belief as to the truth of the averments contained in the second sentence of Paragraph 19, and respectfully refers to the insurance policy, referred to in Paragraph 19, for the terms thereof.

20.    Denies knowledge or information sufficient to form a belief as to the truth of the averments contained in Paragraph 20, except admits that certain insurance policies in Defendant's possession, issued by one or both of Plaintiffs, contain the provision quoted in Paragraph 20, and respectfully refers to the quoted insurance policies for the terms thereof.

21.    Denies knowledge or information sufficient to form a belief as to the truth of the averments contained in Paragraph 21, except admits that certain insurance policies in Defendant's possession, issued by one or both of Plaintiffs, contain the provision quoted in Paragraph 21, and respectfully refers to the quoted insurance policies for the terms thereof.

22.    Denies knowledge or information sufficient to form a belief as to the truth of the averments contained in Paragraph 22, except admits that certain insurance policies in Defendant's

possession, issued by one or both of Plaintiffs, contain the provision quoted in Paragraph 22, and respectfully refers to the quoted insurance policies for the terms thereof.

23.    Denies knowledge or information sufficient to form a belief as to the truth of the averments contained in Paragraph 23, except admits that certain insurance policies in Defendant's possession, issued by one or both of Plaintiffs, contain the provision quoted in Paragraph 23, and respectfully refers to the quoted insurance policies for the terms thereof.

24.    Denies knowledge or information sufficient to form a belief as to the truth of the averments contained in Paragraph 24, except admits that certain insurance policies in Defendant's possession, issued by one or both of Plaintiffs, contain the provision quoted in Paragraph 24, and respectfully refers to the quoted insurance policies for the terms thereof.

25.    Denies knowledge or information sufficient to form a belief as to the truth of the averments contained in Paragraph 25, except admits that certain insurance policies in Defendant's possession, issued by one or both of Plaintiffs, contain the provision quoted in Paragraph 25, and respectfully refers to the quoted insurance policies for the terms thereof.

26.    Denies knowledge or information sufficient to form a belief as to the truth of the averments contained in Paragraph 26, except admits that certain insurance policies in Defendant's possession, issued by one or both of Plaintiffs, contain the provision quoted in Paragraph 26, and respectfully refers to the quoted insurance policies for the terms thereof.

27.    Denies knowledge or information sufficient to form a belief as to the truth of the averments contained in Paragraph 27, except admits that certain insurance policies in Defendant's possession, issued by one or both of Plaintiffs, contain the provision quoted in Paragraph 27, and respectfully refers to the quoted insurance policies for the terms thereof.

28.    Denies knowledge or information sufficient to form a belief as to the truth of the averments contained in Paragraph 28, except admits that certain insurance policies in Defendant's

possession, issued by one or both of Plaintiffs, contain the provision quoted in Paragraph 28, and respectfully refers to the quoted insurance policies for the terms thereof.

29.    Denies knowledge or information sufficient to form a belief as to the truth of the averments contained in Paragraph 29, except admits that certain insurance policies in Defendant's possession, issued by one or both of Plaintiffs, contain the provision quoted in Paragraph 29, and respectfully refers to the quoted insurance policies for the terms thereof.

30.    Denies the averments contained in Paragraph 30, except admits that certain insurance policies in Defendant's possession, issued by one or both of Plaintiffs, contain the provision quoted in Paragraph 30, and respectfully refers to the quoted insurance policies for the terms thereof.

31.    Denies knowledge or information sufficient to form a belief as to the truth of the averments contained in Paragraph 31, except admits that certain insurance policies in Defendant's possession, issued by one or both of Plaintiffs, contain the provision quoted in Paragraph 31, and respectfully refers to the quoted insurance policies for the terms thereof.

32.    Denies knowledge or information sufficient to form a belief as to the truth of the averments contained in Paragraph 32, except admits that certain insurance policies in Defendant's possession, issued by one or both of the Plaintiffs, contain "Representations" provisions, and respectfully refers to the SCIP policies for the terms thereof.

33.    Denies knowledge or information sufficient to form a belief as to the truth of the averments contained in Paragraph 33, except admits that certain insurance policies in Defendant's possession, issued by one or both of Plaintiffs, contain a Policy Aggregate Limit as quoted in Paragraph 33, and respectfully refers to the quoted insurance policies for the terms thereof.

34.    Denies knowledge or information sufficient to form a belief as to the truth of the averments contained in Paragraph 34, except admits that certain insurance policies in Defendant's possession, issued by one or both of Plaintiffs, contain a Policy Aggregate Limit as quoted in Paragraph 34, and respectfully refers to the quoted insurance policy for the terms thereof.

35.     Denies knowledge or information sufficient to form a belief as to the truth of the averments contained in Paragraph 35, except admits that certain insurance policies in Defendant's possession, issued by one or both of Plaintiffs, contain an Each Loss Limit as quoted in Paragraph 35, and   respectfully refers to the quoted insurance policies for the terms thereof.

36.     Denies knowledge or information sufficient to form a belief as to the truth of the averments contained in Paragraph 36, except admits that certain insurance policies in Defendant's possession, issued by one or both of Plaintiffs, contain an Each Loss Limit as quoted in Paragraph 36, and   respectfully refers to the quoted insurance policy for the terms thereof.

37.     Denies the averments contained in Paragraph 37, and respectfully refers to SCIP policies for the terms thereof.

38.     Denies the averments contained in Paragraph 38, and respectfully refers to SCIP policies for the terms thereof.

39.     Denies the averments contained in the first sentence of Paragraph 39, except admits that Defendant has made claims on 64 insured loans which were in default at the time of the respective claims, and for which Pollution Conditions have been discovered; and denies knowledge or information sufficient to form a belief as to the truth of the averments contained in the second sentence of Paragraph 39, except admits Defendant believes that, for some of the 64 claims at issue in this lawsuit, the amount of Clean-Up Costs may be less than the Outstanding Balance of the defaulted loan.

40.     Denies the averments contained in Paragraph 40, except admits that Defendant contends that the amount of Clean-Up Costs owed under the policies can be established, in part, by estimates for proposed remedial work at the sites in question, which Defendant has obtained for the majority of sites.

41.     Denies the averments contained in Paragraph 41.

42.    Denies the averments contained in Paragraph 42, and respectfully refers to any written communications from Plaintiffs, referred to in Paragraph 42, for the contents thereof.

43.    Denies the averments contained in Paragraph 43, and respectfully refers to any written communications from Plaintiffs, referred to in Paragraph 43, for the contents thereof.

44.    Denies the averments contained in Paragraph 44.

45.    Admits the averments contained in Paragraph 45.

46.    Denies knowledge or information sufficient to form a belief as to the truth of the averments contained in Paragraph 46, except admits that Plaintiffs have refused to pay the claims submitted by Defendant.

47.    Denies knowledge or information sufficient to form a belief as to the truth of the averments contained in Paragraph 47, except denies that Plaintiffs have a legal or factual basis to deny coverage, and respectfully refers to any written communications from Plaintiffs, referred to in Paragraph 47, for the contents thereof.

48.    Denies knowledge or information sufficient to form a belief as to the truth of the averments contained in Paragraph 48, except denies that Plaintiffs have a legal or factual basis to deny coverage, and respectfully refers to any written communications from Plaintiffs, referred to in Paragraph 47, for the contents thereof.

49.    Denies knowledge or information sufficient to form a belief as to the truth of the averments contained in Paragraph 49, except admits that a jury trial will resolve the disputes, described in the Complaint, between the parties.

## FIRST CAUSE OF ACTION

50.    Defendant restates and incorporates herein by reference its response to each and every averment contained in Paragraphs 1 through 49 as if such responses were set forth verbatim herein.

51.    Denies knowledge or information sufficient to form a belief as to the truth of the averments contained in Paragraph 51.

52.    Denies knowledge or information sufficient to form a belief as to the truth of the averments contained in Paragraph 52.

## SECOND CAUSE OF ACTION

53.    Defendant restates and incorporates herein by reference its response to each and every averment contained in Paragraphs 1 through 52 as if such responses were set forth verbatim herein.

54.    Denies knowledge or information sufficient to form a belief as to the truth of the averments contained in Paragraph 54.

55.    Denies knowledge or information sufficient to form a belief as to the truth of the averments contained in Paragraph 55.

## RESPONSE TO RELIEF REQUESTED

Defendant denies that Plaintiffs are entitled to any of the relief requested.

## FIRST DEFENSE

The Complaint fails to state a claim upon which relief can be granted.

## SECOND DEFENSE

Plaintiffs' claims are barred, in whole or in part, by the doctrines of waiver, estoppel and laches.

## THIRD DEFENSE

Plaintiffs' claims are barred, in whole or in part, because some or all of the payments made by Plaintiffs were voluntary payments made without the expectation of repayment.

## FOURTH DEFENSE

Neither Defendant nor any other insured breached any of the conditions of the insurance policies at issue in this lawsuit.

## COUNTERCLAIM

U.S. Bank files the following Counterclaim against AISLIC and C&I:

## PARTIES

1.      U.S. Bank is a national banking association with its main office, as listed in its Articles of Association, in Cincinnati, Ohio.  Under 28 U.S.C. § 1348, U.S. Bank is deemed to be a citizen of Ohio.

2.      Upon information and belief, as stated in Plaintiffs' Second Amended Complaint, C&I is a corporation organized under the laws of the State of New York with its principal place of business in New York, New York.

3.      Upon information and belief, as stated in Plaintiffs' Second Amended Complaint, AISLIC is a corporation organized under the laws of the State of Alaska with its principal place of business in Jersey City, New Jersey.

## JURISDICTION AND VENUE

4.      By filing this action, AISLIC and C&I subjected themselves to the personal jurisdiction of this Court.

5.      This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332 because the amount in controversy exceeds the sum of $75,000, exclusive of interests and costs, and complete diversity of citizenship exists between U.S. Bank and AISLIC and C&I.  Venue is proper in this Court under 28 U.S.C. § 1391(a)(2).

## BACKGROUND

6.      U.S. Bank is the indenture trustee of FMAC Loan Receivables Trusts 1997-B, 1998-B, 1998-C, 1998-D and 2000-A (the "Trusts").

7.    AISLIC and C&I insured the Trusts under policies of Secured Creditor Impaired Property ("SCIP") insurance, numbered 5295738, 5295859, 5295865, 7788373, 7788374 (the "C&I Policies") and 8195202 (the "AISLIC Policy") (collectively, the "Policies").

8.    Under the Policies, AISLIC and C&I agreed to pay the lesser of the "Outstanding Balance" or the "Clean-Up Costs" in the event the Trusts incurred "Loss" arising from a "Default" by a "Borrower" on a "Commercial Real Estate Loan" secured by "Insured Property" accompanied by "On-Site Pollution Conditions."

9.    The Trusts incurred substantial "Losses" as a result of "Defaults" on "Commercial Real Estate Loans" by the following borrowers (as U.S. Bank currently understands the borrowers' names): Acme, Carolina Entertainment, Fasmart, Iowa Oil, Henson Oil, Petroleum Holdings, FFP Properties, T& S Pantries, East Texas Holdings, One Stop Food Services, Ran Oil and Oasis Car Wash (collectively, the "Borrowers").

10.    The "Commercial Real Estate Loans" made to the Borrowers were secured by "Insured Properties."

11.    "Pollution Conditions" were subsequently discovered on certain of the "Insured Properties" which served as security for the "Commercial Real Estate Loans" made to the Borrowers.

12.    U.S. Bank provided AISLIC and C&I with timely notice of the discovery of "On-Site Pollution Conditions" at these "Insured Properties."

13.    All of the conditions to coverage under the Policies have been satisfied and/or waived.

14.    AISLIC and C&I have waived and/or are estopped from asserting any coverage defenses that may have been available to them under the Policies.

15.    Though they are covered, AISLIC and C&I have not paid the overwhelming majority of the Trusts' "Losses" under the Policies.

## FIRST CLAIM FOR RELIEF: BREACH OF CONTRACT

16.    U.S. Bank restates and incorporates by reference the allegations of Paragraphs 1-15 of the Counterclaim, as if fully restated herein.

17.    Under the terms of the Policies, AISLIC and C&I had a duty to pay the Trusts' "Losses" arising from the Borrowers' "Defaults" on the "Commercial Real Estate Loans."

18.    AISLIC and C&I have delayed payment, and now refused to pay, the Trusts' "Losses" related to all of the properties listed in Exhibit A to Plaintiffs' Complaint.

19.    There are no exclusions in the Policies which preclude coverage for the Trusts' "Losses."

20.    The Trusts complied with all applicable conditions precedent under the Policies.

21.    AISLIC and C&I's conduct breached their duties under the Policies.

22.    As a direct and proximate result of AISLIC and C&I 's breaches, the Trusts have been damaged in an amount to be determined at trial, which amount in any event exceeds $75,000.

## SECOND CLAIM FOR RELIEF: BAD FAITH REFUSAL TO PAY

23.    U.S. Bank restates and incorporates by reference the allegations of Paragraphs 1-22 of the Counterclaim, as if fully restated herein.

24.    AISLIC and C&I have refused to fulfill their obligations and/or delayed the performance of their obligations to the Trusts under the Policies.

25.    AISLIC and C&I's refusal to perform and/or delay in performing their obligations to the Trusts under the Policies was without reasonable justification and/or lacked a fairly debatable reason.

26.    AISLIC and C&I knew or recklessly disregarded the lack of a reasonable basis for their refusal to perform and/or delay in performing their obligations to the Trusts under the Policies.

27.    AISLIC and C&I's coverage position herein is without reasonable justification.

28.    Because of AISLIC and C&I's bad faith, the Trust are entitled to recover penalties and/or punitive damages in an amount to be determined by this Court.

29.    Because AISLIC and C&I breached the Policies in bad faith, U.S. Bank should be awarded its attorneys' fees.

### PRAYER FOR RELIEF

WHEREFORE, having submitted its Answer and Counterclaim, U.S. Bank requests:

(a)    that the Court declare that the Trusts are entitled to coverage under the Policies;

(b)    that judgment be entered in favor of U.S. Bank and against Plaintiffs in an amount to be determined at the trial of this matter;

(c)    that U.S. Bank recover the maximum penalties and/or punitive damages under applicable law for Plaintiffs' bad faith refusal to pay;

(d)    that U.S. Bank be awarded its attorneys' fees and expenses of litigation;

(e)    that U.S. Bank recover pre-judgment interest under applicable law; and

(f)    that the Court order such other, further and different relief as the Court may deem just and proper.

### JURY TRIAL DEMAND

Defendant, U.S. Bank, hereby demands trial by jury on all issues so triable in this lawsuit.

Dated: October 29 , 2007
New York, New York

McKENNA LONG & ALDRIDGE LLP

Charles E. Dorkey III (CD-8422)
S. Jane Moffat (SM-0912)
230 Park Avenue
Suite 1700
New York, NY 10169
(212) 905-8330
(212) 922-1819 (facsimile)

-12-

Of Counsel:

Tami L. Azorsky
McKenna Long & Aldridge LLP
1900 K Street, NW
Washington, D.C.  20006
Tel:  (202) 496-7500
Fax:  (202) 496-7756

Barry J. Armstrong
Jeremy M. Moeser
McKenna Long & Aldridge LLP
303 Peachtree Street, Suite 5300
Atlanta, Georgia  30308
Tel:  (404) 527-4000
Fax:  (404) 527-4198

*Attorneys for Defendant*