UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| COMMERCE AND INDUSTRY INSURANCE COMPANY and AMERICAN INTERNATIONAL SPECIALTY LINES INSURANCE COMPANY,<br><br>                     Plaintiffs,<br><br>     - against -<br><br>U.S. BANK NATIONAL ASSOCIATION, AS INDENTURE TRUSTEE FOR THE REGISTERED HOLDERS OF FMAC LOAN RECEIVABLES TRUSTS 1997-B, 1998-B, 1998-C, 1998-D AND 2000-A,<br><br>                    Defendant. | Civil Action No.<br>1:07-CV-5731 (JGK)(RLE)<br><br><br>(Oral Argument Requested) |

## DEFENDANT'S RESPONSE TO AND MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION TO DISMISS

McKENNA LONG & ALDRIDGE LLP
230 Park Avenue
Suite 1700
New York, NY 10169
Telephone: (212) 905-8330
Facsimile: (212) 922-1819

December 7, 2007

*Attorneys for Defendant U.S. Bank National Association, as Indenture Trustee for the Registered Holders of FMAC Loan Receivables Trusts 1997-B, 1998-B, 1998-C, 1998-D and 2000-A*

## TABLE OF CONTENTS

**Table of Contents** ……………………………………………………………… i

**Table of Authorities**……………………………………………………… ……ii

**INTRODUCTION**……………………………………………………………... 1

**STATEMENT OF FACTS** ………………………………………………………2

**ARGUMENT** ……………………………………………………………...5

     I.     Motion to Dismiss Standard and Consideration of Extrinsic Evidence. ……5

     II.    Choice of Law. ……………………………………………………7

          A.     Every Claim Must Be Analyzed Independently
                for Choice of Law. …………………………………………… 8

          B.     The Choice of Law Provision in the Five C&I
                Policies Does Not Apply to the Bad Faith Claim. ………………… 8

          C.     The AISLIC Policy Does Not Contain a New York Choice of
                Law Provision. ……………………………………………..11

          D.     New York Law Does Not Apply to the Bad Faith
                Claim Under New York Choice of Law Principles. ……………… 12

     III.   Bad Faith Claims are Recognized Under Delaware, California, and
          New Jersey Law. …………………………………………...18

**CONCLUSION** ……………………………………………………... 19

# TABLE OF AUTHORITIES

## FEDERAL CASES

Amadeo v. Principal Mutual Life Insurance Co., 290 F.3d 1152 (9th Cir. 2002) .....................18, 19

American National Fire Insurance Co. v. Mirasco, Inc., 143 F.Supp.2d 372
    (S.D.N.Y. 2001)...........................................................................................................12

Banks v. Correctional Services Corp., 475 F.Supp.2d 189 (E.D.N.Y. 2007)......................................6

DKR Capital, Inc. v. AIG International West Broadway Fund, Ltd., 03 Civ. 1568
    (JGK), 2003 WL 22283836 (S.D.N.Y. Oct. 2, 2003)............................................................6

Finance One Public Co. v. Lehman Bros. Special Financing, Inc., 414 F.3d 325
    (2d. Cir. 2005) ...........................................................................................8, 9, 10

IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049 (2d Cir. 1993)..............................................5

Ketzner v. John Hancock Mutual Life Insurance Co., 118 Fed. Appx. 594 (3d Cir.
    2004) .....................................................................................................................18, 19

Klaxon Co. v. Stentor Electric Manufacturing Co., 313 U.S. 487 (1941) .........................................12

Krock v. Lipsay, 97 F.3d 640 (2d Cir. 1996) ...................................................................................10

Levitt v. Bear Stearns & Co., 340 F.3d 94 (2d Cir. 2003) ...................................................................5

Lipsky v. Commonwealth United Corp., 551 F.2d 887 (2d Cir. 1976) ...........................................5, 6

Marra v. Bushee, 447 F.2d 1282 (2d Cir. 1971) .................................................................................7

National Oil Well Maintenance Co. v. Fortune Oil & Gas, Inc., No. 02 CV 7666
    (LBS), 2005 WL 1123735 (S.D.N.Y. May 11, 2005) .........................................................8, 9

New York Marine and General Insurance Co. v. McDermott International, Inc.,
    No. Civ.A. 04-2548, 2005 WL 1400450 (E.D. La. June 1, 2005) ...........................................6

Olin Corp. v. Insurance Co. of North America, 743 F.Supp. 1044 (S.D.N.Y. 1990) .................12, 13

Republic of Ecuador v. Chevron Texaco Corp., 376 F.Supp.2d 334 (S.D.N.Y. 2005) ................................................................................................................. 5

Scheuer v. Rhodes, 416 U.S. 232 (1974) ............................................................ 5

Schuster v. Dragone Classic Motor Cars, Inc., 67 F.Supp.2d 288 (S.D.N.Y. 1999) ....................... 10

U.S. Express, Inc. v. Intercargo Insurance Co., 841 F. Supp. 1328 (E.D.N.Y. 1994)...................... 13

Wiener v. Unumprovident Corp., No. 00 CIV 9315 (NRB), 2002 WL 31108182 (S.D.N.Y. Sept. 20, 2002) ............................................................. 12, 13

Wiener v. Unumprovident Corp., 202 F.Supp.2d 116 (S.D.N.Y. Feb. 28, 2002) ............................. 12

## STATE CASES

Auten v. Auten, 308 N.Y. 155 (1954) ................................................................. 12

Caribbean Construction Services & Associates, Inc. v. Zurich Insurance Co., 267 A.D.2d 81 (1st Dept. 1999)................................................................ 12, 13

Certain Underwriters at Lloyd's, London v. Foster Wheeler Corp., 36 A.D.3d 17 (1st Dept. 2006) ......................................................................... 14

D'Agostino v. Johnson & Johnson, Inc., 115 N.J. 491 (1989) ........................................ 6

Diamond Waterproofing Systems, Inc. v. 55 Liberty Owners Corp., 4 N.Y.3d 247 (2005) ................................................................................. 9

Knieriemen v. Bache Halsey Stuart Shields, Inc., 74 A.D.2d 290 (1st Dept. 1980) ..................... 8, 9

Munzer v. St. Paul Fire and Marine Insurance Co., 203 A.D.2d 770 (3d Dept. 1994) ................................................................................. 12, 13, 14

Rescildo v. R. H. Macy's, 187 A.D.2d 112 (1st Dept. 1993) ........................................... 8

Tackett v. State Farm Fire & Casualty Insurance Co., 653 A.2d 254 (Del. 1995) .................... 18, 19

Defendant U.S. Bank National Association, as Indenture Trustee for the Registered Holders of FMAC Loan Receivables Trusts 1997-B, 1998-B, 1998-C, 1998-D and 2000-A ("Defendant" or "U.S. Bank") respectfully submits this Memorandum of Law in Opposition to Plaintiffs' Motion to Dismiss.

## **INTRODUCTION**

This lawsuit concerns six Secured Creditor Impaired Property ("SCIP") insurance policies issued by Plaintiffs, and Plaintiffs' refusal to pay benefits under these insurance policies. Plaintiffs' initially filed a lawsuit seeking a declaratory judgment related to their obligations under the insurance policies. In response, U.S. Bank asserted two separate counterclaims: (1) breach of contract, and (2) bad faith refusal to pay insurance benefits. Plaintiffs' Motion to Dismiss only seeks to dismiss the counterclaim for bad faith. Plaintiffs' argument that the bad faith claim should be dismissed is based solely on the incorrect assumption that New York law bars the bad faith claim. New York law, however, does not apply to the bad faith claim, and the application of choice of law principles clearly shows that the bad faith is viable under the proper state law.

Plaintiffs' incorrect assumption that New York law governs the bad faith claim is based upon a narrowly drafted choice of law provision in some, but not all, of the insurance policies. Indeed, for several of the claims at issue, the applicable policy has a Delaware choice of law provision. The choice of law provision relied on by Plaintiffs, however, at most applies to issues of interpretation of the terms of some of the policies and has no bearing on the choice of law governing the separate bad faith claim. Applying choice of law principles, it is clear that New York law does not govern U.S. Bank's counterclaim for bad faith, because contacts with other

states substantially outweigh any contacts with New York. Moreover, the Court would be required to interpret a disputed policy provision and look to evidence external to the allegations in the counterclaim to determine whether New York law applies to the bad faith claim. Plaintiffs, therefore, cannot possibly satisfy the strict requirements of Rule 12(b)(6) that the purported failure to state a cognizable claim be established solely by the pleadings in the counterclaim. Accordingly, the Court should not dismiss U.S. Bank's bad faith claim and associated requests for punitive damages and attorneys' fees.

## STATEMENT OF FACTS

In the late 1990's, Franchise Mortgage Acceptance Company LLC ("FMAC") originated numerous loans secured by commercial real estate, namely, convenience stores, most of which, if not all, have underground petroleum storage tanks. FMAC subsequently assigned its interest in the loans and the related deeds to secure debt to FMAC Loan Receivables Trusts 1997-B, 1998-B, 1998-C, 1998-D and 2000-A (the "Trusts"). U.S. Bank National Association is the indenture trustee of the Trusts. See Def. Counterclaim at ¶ 6. Similar to any other lender, the Trusts faced a risk that the borrowers would default. Furthermore, due to the presence of underground petroleum storage tanks, the Trusts faced the risk that the secured property might develop on-site pollution conditions which could have a severe negative impact on the value of the collateral securing the loans.

To guard against these risks, the Trusts purchased SCIP policies from Commerce and Industry Insurance Company ("C&I") and American International Specialty Lines Insurance Company ("AISLIC"), which are related entities under the American International Group, Inc., ("AIG") umbrella, including SCIP policies numbered 5295738, 5295859, 5295865, 7788373,

7788374 (the "C&I Policies") and 8195202 (the "AISLIC Policy") (collectively, the "Policies").[1]
Id. at ¶ 7.  Two brokers, both of whom were located in New Jersey, assisted in obtaining the
policies:  (1) Meeker Sharkey Financial Services Group, located in Cranford, New Jersey, and
(2) FMAC Insurance Services, Inc., located in Parsippany and/or Morristown, New Jersey.  See
Declarations Page to Policies 5295738, 5295859, 5295865, 7788373, 7788374 and 8195202,
attached as Exhs. 1-6, respectively.  C&I and AISLIC ultimately issued these policies in the
name of the Trusts.  See 2d Amd. Cmplt. at ¶¶ 14-19.  Under the Policies, AISLIC and C&I
agreed to pay the Trusts the lesser of the "Outstanding Balance" or the "Clean-up Costs" in the
event the Trusts incurred a loss arising from a default by a borrower on a commercial real estate
loan secured by insured property accompanied by on-site pollution conditions.  See Def.
Counterclaim at ¶ 8.

Plaintiffs delivered three of the Policies to Trust addresses in California:  (1) AISLIC
delivered policy 8195202 to a FMAC Loan Receivable Trust 1997-B address in Los Angeles,
California, (2) C&I delivered policy 5295859 to a FMAC Loan Receivable Trust 1998-C address
in Costa Mesa, California, and (3) C&I delivered policy 5295865 to a FMAC Loan Receivable
Trust 1998-D address in Costa Mesa, California.  See Policy Declaration Page to Policies
8195202, 5295859, and 5295865, Exhs. 6, 2, & 3, respectively.  C&I delivered the other three
Policies to Trust addresses in New Jersey:  (1)  C&I delivered policy 5295738 to a FMAC Loan
Receivables Trust 1998-B address in Parsippany, New Jersey, (2) C&I delivered policy 7788373
to a FMAC Loan Receivables Trust 2000-A address in Morristown, New Jersey, and (3) C&I

---

[1]       C&I issued SCIP insurance policy 5295738 to FMAC Loan Receivables Trust 1998-B, SCIP insurance
policy 5295859 to FMAC Loan Receivables Trust 1998-C, SCIP insurance policy 5295865 to FMAC Loan
Receivables Trust 1998-D, SCIP insurance policy 7788373 to FMAC Loan Receivables Trust 2000-A, and SCIP
insurance policy 7788374 to FMAC Loan Receivables Trust 2000-A.  AISLIC issued SCIP insurance policy
8195202 to FMAC Loan Receivables Trust 1997-B.  See  2d Amd. Cmplt. at ¶¶ 14-19.

delivered policy 7788374 to a FMAC Loan Receivables Trust 2000-A address in Morristown, New Jersey.  See Policy Declaration Pages to Policies 5295738, 7788373, and 7788374, Exhs. 1, 4 & 5, respectively.

Subsequent to the issuance of the Policies, there were defaults on the commercial real estate loans made by various borrowers, including Acme, Carolina Entertainment, Fasmart, Iowa Oil, Henson Oil, Petroleum Holdings, FFP Properties, T&S Pantries, East Texas Holdings, One Stop Food Services, Ran Oil, and Oasis Car Wash (collectively, the "Borrowers").  See Def. Counterclaim at ¶ 9.  The Trusts also subsequently discovered pollution conditions on certain of the properties securing the defaulted loans.  Id. at ¶ 11.  U.S. Bank provided AISLIC and C&I with timely notice of the discovery of pollution conditions at the various properties and made claims under the Policies relating to sixty-four properties located in numerous states.  Id. at ¶¶ 12, 18; 2d Amd. Cmplt. at ¶ 39 and Exh. A to 2d Amd. Cmplt.  Nonetheless, AISLIC and C&I disregarded their obligations under the Policies and refused to pay the overwhelming majority of the Trusts' losses.  See Def. Counterclaim at ¶ 15.

On August 28, 2007, Plaintiffs filed their Second Amended Complaint seeking a declaration regarding (1) the scope and extent of their obligations to provide coverage and make payments to U.S. Bank in connection with claims under the SCIP Policies, and (2) Plaintiffs' purported right to recover any monies paid to U.S. Bank in connection with its claims under the SCIP policies.  See 2d Amd. Cmplt. at ¶¶ 50-55.  On October 29, 2007, U.S. Bank filed its Answer and Counterclaim.  U.S. Bank asserts two claims in its counterclaim.  First, U.S. Bank asserts a breach of contract claim that contends that Plaintiffs breached the Policies by refusing to pay the Trusts' losses related to the sixty-four properties at issue.  See Def. Counterclaim at ¶¶ 16-22.  Second, U.S. Bank asserts a bad faith claim and alleges that Plaintiffs refused in bad

faith to perform their obligations to the Trusts under the Policies, did so without reasonable justification or a fairly debatable reason, and knowingly or recklessly disregarded the lack of a reasonable basis for their refusal to perform. Id. at ¶¶ 23-29. The bad faith claim is premised, in part, on Plaintiffs' initially approving and then later denying claims, waiting years to deny claims, and repeatedly changing the claims handler, thereby resulting in frequently changing and inconsistent positions being taken by Plaintiffs on U.S. Bank's claims. Among other relief, U.S. Bank seeks to recover damages available under applicable law for Plaintiffs' bad faith refusal to pay and to recover attorneys' fees and expenses. Id. at ¶¶ 28-29.

## ARGUMENT

### I.    Motion to Dismiss Standard and Consideration of Extrinsic Evidence.

For purposes of analyzing a motion to dismiss a counterclaim under Rule 12(b)(6), the Court must "accept as true the factual allegations of the [counterclaim]" and "must read the [counterclaim] liberally, drawing all inferences in favor of the pleader."[2] IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1052 (2d Cir. 1993). The Court's task in ruling on a motion to dismiss "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." Levitt v. Bear Stearns & Co., 340 F.3d 94, 101 (2d Cir. 2003). Due to liberal pleading standards, "[w]hen a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one." Lipsky v. Commonwealth United Corp., 551 F.2d 887, 894-95 (2d Cir. 1976) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L. Ed.2d 90 (1974)).

---

[2]    With respect to a motion to dismiss a counterclaim, a court applies the same principles it would use to rule on a motion to dismiss a complaint. See Republic of Ecuador v. ChevronTexaco Corp., 376 F.Supp.2d 334, 375 (S.D.N.Y. 2005) (applying same principles to motion to dismiss counterclaim as motion to dismiss complaint).

In light of these principles, where a Rule 12(b)(6) motion to dismiss requires resort to extrinsic evidence to decide the motion, the motion must be denied. In <u>DKR Capital, Inc. v. AIG International West Broadway Fund, Ltd.</u>, 03 Civ. 1568(JGK), 2003 WL 22283836, *4 (S.D.N.Y. Oct. 2, 2003), Your Honor wrote:

> In deciding a <u>Rule 12(b)(6)</u> motion to dismiss a breach of contract claim, the Court's role is not to resolve ambiguities in the language of the contract. Where the intent of the parties is too ambiguous to be gleaned from the contract alone, the Court should receive evidence that might better clarify that intent. . . . Because evidence from outside the four corners of the Agreement is required to ascertain the parties' intent, [defendant's] motion to dismiss [plaintiff's] second and third claims for relief is denied.

<u>See also</u> <u>Lipsky</u>, 551 F.2d at 895, 897-98 (holding that motion to dismiss should have been denied because question of contract term's materiality could not be decided on the complaint alone); <u>Banks v. Correctional Services Corp.</u>, 475 F. Supp.2d 189, 195-96 (E.D.N.Y. 2007) (denying motion to dismiss concerning breach of contract claim involving issue of contract interpretation because contract was subject to more than one reasonable interpretation and extrinsic evidence was needed in light of potential ambiguity). Indeed, in the context of a choice of a choice of law analysis where the court must look to extrinsic evidence in deciding the motion to dismiss, the motion should be denied. <u>See</u> <u>New York Marine and General Insurance Co. v. McDermott International, Inc.</u>, No. Civ.A.04-2548, 2005 WL 1400450, *8 (E.D. La. June 1, 2005) ("[T]his Court cannot conclude that Louisiana law applies solely by virtue of the allegations in the counterclaim alone. Therefore, [defendant's] tortious interference with contract claim cannot be dismissed at this state of the litigation on the ground that Louisiana law precludes such a claim."); <u>see also</u> <u>D'Agostino v. Johnson & Johnson, Inc.</u>, 115 N.J. 491, 496-97 (1989) (holding that trial court could not dismiss complaint on *forum non conveniens* grounds

6

where, in absence of discovery, there were insufficient facts available for a court to determine which law applies).

As discussed in detail below, choice of law analysis will necessarily require the Court to consider extrinsic evidence to determine which state's law will apply to the bad faith claim. Accordingly, the Motion to Dismiss should be denied if the Court must go beyond the allegations in the Counterclaim to determine whether New York law applies to the bad faith claim.[3]

## II.    Choice of Law.

Without any substantive choice of law analysis, Plaintiffs contend that New York law applies to the bad faith claim and requires the dismissal of U.S. Bank's bad faith claim and associated request for punitive damages and attorneys' fees.  While U.S. Bank acknowledges that New York law generally does not recognize a claim for an insurer's bad faith refusal to pay benefits, Plaintiffs are fundamentally incorrect in their assertion that New York law governs U.S. Bank's bad faith claim.

Plaintiffs' attempted reliance on the narrowly drafted and limited choice of law provision in the five C&I Policies misconstrues and improperly expands the provisions.  It is well established that each claim asserted by U.S. Bank must be independently analyzed under choice of law principles.  By its own terms, the choice of law provision in the C&I Policies applies, at most, to the breach of contract claim against C&I.  For purposes of the bad faith claim, however,

---

[3]        To the extent Plaintiffs may contend that the presence of extrinsic evidence requires the Court to convert the Motion to Dismiss to a Rule 56 motion for summary judgment, any such ruling would have to be deferred until appropriate discovery can be conducted and facts related to contacts may be developed.  See Fed. R. Civ. P. 12(b) (stating "all parties shall be given reasonable opportunity to present all material made pertinent to such a motion [a Rule 12(b)(6) motion to dismiss treated as a Rule 56 motion for summary judgment] by Rule 56"); see also Marra v. Bushee, 447 F.2d 1282, 1285 (2d Cir. 1971) (where choice of law issue was outcome determinative as to whether plaintiff had stated a claim, jury was entitled to receive evidence on the situs of defendants' conduct, a factual determination on which the choice of law depended).

application of choice of law principles clearly shows that the law of states other than New York governs.

**A.    Every Claim Must Be Analyzed Independently for Choice of Law.**

When deciding which state's substantive law applies to a claim, courts analyze each claim separately.  Accordingly, the breach of contract and bad faith claims asserted by U.S. Bank must be addressed independently for purposes of choice of law.  Indeed, it is possible that the law applied to the bad faith claim may be a different state's law than that applied to the breach of contract claim.  See Finance One Public Co. v. Lehman Bros. Special Financing, Inc., 414 F.3d 325, 335-38 (2d Cir. 2005) (analyzing choice of law for setoff claim independently from choice of law for contract claim; Thai law governed the setoff claim while N.Y. law governed the contract claim); National Oil Well Maintenance Co. v. Fortune Oil & Gas, Inc., No. 02 CV. 7666 (LBS), 2005 WL 1123735 at *4 (S.D.N.Y. May 11, 2005) (analyzing choice of law for promissory estoppel claim separately from related contract claim, and applying English law to contract claim and New York law to promissory estoppel claim); Knieriemen v. Bache Halsey Stuart Shields, Inc., 74 A.D.2d 290, 293 (1st Dept. 1980) (holding choice of law for claims falling outside a contractual choice of law provision had to be independently analyzed, and that "there is no reason why all [of the claims] must be resolved by reference to the law of the same jurisdiction"), *overruled on other grounds*, Rescildo v. R.H. Macy's, 187 A.D.2d 112, 594 (1st Dept. 1993).

**B.    The Choice of Law Provision in the Five C&I Policies Does Not Apply to the Bad Faith Claim.**

The five C&I Policies contain a choice of law provision for the application of New York law that is limited to the interpretation of the Policy terms.  See 2d Amd. Cmplt. at ¶ 10.  Plaintiffs' attempt to expand the policy provision to encompass the bad faith claim misconstrues

8

both the language of the Policies and the law applicable to analysis of restrictive choice of law contract provisions. Application of the proper choice of law principles shows that the choice of law provision in the C&I Policies does not govern the bad faith claim.

In a case based on diversity jurisdiction involving a choice of law provision, the forum state's law governs the validity and scope of the choice of law provision. Finance One Public Co., 414 F.3d at 332-33. New York courts are reluctant to construe contractual choice of law clauses broadly. Id. at 334; see also National Oil Well Maintenance Co., 2005 WL 1123735 at *3; Knieriemen, 74 A.D.2d at 293. Indeed, the Southern District of New York has held: "New York has not adopted the California rule that broadly construes contractual choice-of-law provisions to apply to causes of action arising from or *related to* a contract." National Oil Well Maintenance Co., 2005 WL 1123735 at *3 (emphasis in original).

New York law excludes from the scope of a contractual choice of law provision *any extra-contractual claim.* Id. at *4. In National Oil Well Maintenance Co., a loan agreement contained a choice of law provision and a dispute arose as to whether it applied to a promissory estoppel claim that was asserted in conjunction with a breach of contract claim. Id. Although the promissory estoppel claim related to a breach of contract claim, the court rejected the contention that the choice of law clause governed the promissory estoppel claim. The court held: "[P]romissory estoppel, by definition, is a claim outside the contract and therefore, the parties' choice of law is not binding." Id.

Other courts have similarly refused to expand choice of law provisions governing contracts to include other claims, including, but not limited to, enforcement of the contract. See e.g., Diamond Waterproofing Systems, Inc. v. 55 Liberty Owners Corp., 4 N.Y.3d 247, 253 (2005) (choice of law provision which stated that "[c]ontract shall be governed by the law of the

9

place where [p]roject is located [i.e., New York]" would not govern "agreement's enforcement"); Finance One Public Company, 414 F.3d at 335 (extra-contractual setoff rights were not governed by choice of law provision governing agreement); Schuster v. Dragone Classic Motor Cars, Inc., 67 F. Supp.2d 288, 291 (S.D.N.Y. 1999) (choice of law provision in promissory note stating that "laws of New York shall apply," and which contained no language such as a reference to "any controversy or claim," was not broad enough to encompass lender's claim for fraud in conjunction with promissory note issued by lender); Krock v. Lipsay, 97 F.3d 640, 645 (2d Cir. 1996) (choice of law provision in mortgage agreement stating "[t]his Mortgage shall be governed by and construed in accordance with the laws of the Commonwealth of Massachusetts" was not broad enough to apply to tort claim for fraudulent representation involving property subject to mortgage).

 Here, the choice of law provision in the five C&I Policies is extremely narrow and states:

> **K. Choice of Law and Forum** - In the event that the **Insured** and the Company dispute the *validity or formation of this Policy or the meaning, interpretation or operation of any term, condition, definition or provision of this Policy* resulting in litigation, arbitration or other form of dispute resolution, the **Insured** and the Company agree that the law of the State of New York shall apply and that all litigation, arbitration or other form of dispute resolution shall take place in the State of New York.

See 2d Amd. Cmplt. at ¶ 10 (bold in original) (italics added). Thus, by its express language, the choice of law provision included in the C&I Policies only applies to the meaning, interpretation or operation of the terms, conditions, definitions, or provisions of the policies. Indeed, this provision does not include terms that are routinely found in broader choice of law provisions intended to govern conduct outside of the contract's interpretation, and does not have a phrase specifically stating that it applies to "all claims arising out of, related to, or in connection with" the underlying agreement. The limited choice of law provision cannot reasonably be interpreted

to apply to claims involving the bad faith processing of claims and the wrongful actions taken by the insurer in handling claims filed by an insured under the policy.

U.S. Bank's bad faith claim is separately pled and involves facts and evidence unrelated to the contract interpretation itself. The bad faith claim cannot be resolved by merely looking to the "meaning, interpretation or operation" of the policy's terms. On the contrary, the bad faith claim concerns both AISLIC's and C&I's refusal to perform and/or delay in performing without reasonable justification, their knowing lack of a reasonable basis for denying the Trusts' claims, and their knowing delay in making a coverage determination. See Def. Counterclaim at ¶¶ 24-29. Plaintiffs' bad faith conduct includes, but is not limited to, Plaintiffs initially approving and then later denying claims, waiting years to deny claims, and repeatedly changing the claims handler, thereby causing the claims review process to start over from the beginning. This claim necessitates looking at Plaintiffs' conduct without simply interpreting the Policy provisions. In keeping with New York's rule requiring the narrow construction of choice of law provisions, the bad faith claim falls outside the scope of the contractual choice of law provision.

### C. The AISLIC Policy Does Not Contain a New York Choice of Law Provision.

The AISLIC Policy does not contain a New York choice of law provision, but, instead, contains a choice of law provision for the application of Delaware law for certain, limited issues. See 2d Amd. Cmplt. at ¶ 11. Moreover, Plaintiffs' reliance on the C&I Policies' choice of law provision has no bearing on the bad faith claim under the AISLIC policy. Accordingly, if the Court applies the reasoning of Plaintiffs regarding the application of contractual choice of law provisions, the claims under the AISLIC Policy cannot be governed by New York law. Therefore, the choice of law provision in the C&I Policies cited by Plaintiffs provides no support for their contention that New York law governs the bad faith claim under the AISLIC Policy.

11

**D.    New York Law Does Not Apply to the Bad Faith Claim Under New York Choice of Law Principles.**

Because the choice of law provision in the C&I Policies does not apply to the bad faith claim, the Court must turn to customary choice of law analysis. When choice of law issues arise in a case based on diversity jurisdiction, a federal court must apply the underlying conflict of law rules of the forum state. Klaxon Co. v. Stentor Electric Manufacturing Co., 313 U.S. 487, 496-97, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); Wiener v. Unumprovident Corp., No. 00 CIV. 9315(NRB), 2002 WL 31108182, at *1 (S.D.N.Y. Sept. 20, 2002) (Wiener 2).[4]  New York follows the "center of gravity" approach and requires the application of the jurisdiction's law which has the most "significant contacts" with the matter in dispute. Wiener 2, 2002 WL 31108182, at *1 (quoting Auten v. Auten, 308 N.Y. 155, 160 (1954)); see also Olin Corp. v. Insurance Co. of North America, 743 F. Supp. 1044, 1048 (S.D.N.Y. 1990) (New York law requires courts to apply the law of the jurisdiction "which has the most significant contacts with the matter in dispute"). Under the "significant contacts theory" and "center of gravity" approach, the law of the "place having the most interest in the problems" is applied. Munzer v. St. Paul Fire and Marine Insurance Co., 203 A.D.2d 770, 772 (3d. Dept. 1994); see also American National Fire Insurance Co. v. Mirasco, Inc., 143 F. Supp.2d 372, 378 (S.D.N.Y. 2001) (in insurance coverage dispute involving determination of whether New York law applied to bad faith claim, New York courts consider the "law of the jurisdiction with the strongest interest in the resolution of the particular issue presented"); Caribbean Construction Services & Associates,

---

[4]    In an earlier decision issued in February 2002, the court in Wiener considered whether New York and New Jersey recognize a cause of action for bad faith denial of insurance coverage. Wiener v. Unumprovident Corp., 202 F. Supp. 2d 116, 124 (S.D.N.Y. Feb. 28, 2002) (hereinafter referred to as Wiener 1). Plaintiffs cited Wiener 1 for the unremarkable proposition that New York law does not recognize bad faith claims. Although not cited by Plaintiffs, Wiener 2 considered a motion for leave to amend the complaint, and, after specifically addressing choice of law issues, held that New Jersey law permits bad faith claims.

Inc. v. Zurich Insurance Co., 267 A.D.2d 81, 83 (1st Dept. 1999) (in bad faith dispute involving insurer, law of jurisdiction having the greatest interest in the litigation will be applied).

In the context of insurance policy-related disputes, New York law considers various contacts such as "the location of the insured risk, the insured's principal place of business, the residence of the insured, where the policy was issued and delivered, the location of the broker or agent placing the policy, where the premiums were paid, and the insurer's place of business." Wiener 2, 2002 WL 31108182, at *2; see also U.S. Express, Inc. v. Intercargo Insurance Co., 841 F. Supp. 1328, 1335 (E.D.N.Y. 1994) (holding that New York courts resolve choice of law issues involving insurance policies by considering factors such as the location of the insured risk, insured's principal place of business, where policy is delivered, where policy is issued, location of broker placing the policy, where premiums are paid, and insurer's place of business); Olin Corp., 743 F. Supp. 1044, 1048 (S.D.N.Y. 1990) (recognizing same factors). When these factors are applied, substantial emphasis frequently is placed on the insured's location and contacts. See Wiener 2, 2002 WL 31108182, at *2; Munzer, 203 A.D.2d at 772.

For example, in Wiener 2 the court considered whether New Jersey or New York law applied to the plaintiff's claim for damages arising out of the defendant's bad faith denial of disability insurance benefits. The court determined that New Jersey law applied and that New Jersey recognized a claim for bad faith. Wiener 2, 2002 WL 31108182, at *2. In making its determination, the court focused on the insured and recognized that the insured was a New Jersey domiciliary, worked at a New Jersey business when she purchased the policies at issue, and the insured risk (the risk of plaintiff becoming disabled) was located in New Jersey. Id. The court also held that the location of the insurance broker and the insurance company's office location in New York were not sufficient to justify application of New York law. Id.

13

Courts applying the center of gravity/significant contacts approach in determining which state has the most significant interest in the dispute generally focus on the insured and give it "primary" consideration. Munzer, 203 A.D.2d at 772. In Munzer, the court considered whether New York or Vermont law applied to a policy claim for mercury pollution. Id., at 771-72. The court concluded that Vermont law applied because the insured was a Vermont-based business, and the insurer had limited contacts with New York. Id. The court stated that "the significant contacts theory, when considered in light of the reality of this primary factor [that the insurer insured a Vermont-based business], plainly reveals that this dispute centers on Vermont." Id. at 772. The court rejected the insurance company's argument that New York law applied because the policy was obtained from an insurer's New York office, the broker procuring the policy was located in New York, and one of the insurance company's subsidiaries was a New York corporation. Id. at 771-72. Moreover, the fact that the insurer was a Minnesota corporation with its principal place of business in Minnesota did not affect the court's determination that Vermont law should apply rather than some other state's law. The court concluded that New York "lacks a significant nexus to the insurance policy dispute and clearly lacks any significant public policy interest in what is essentially a Vermont problem." Id. at 772. See also Certain Underwriters at Lloyd's, London v. Foster Wheeler Corp., 36 A.D.3d 17, 22-23 (1st. Dept. 2006) (where grouping of contacts theory applies for choice of law analysis, but location of insured risk is in multiple states, court should apply law of the insured's domicile, notwithstanding that certain other states, including states of insurer's domicile, may share an interest in regulating insurance companies' business).

In this case, contacts with states other than New York are overwhelming. Plaintiffs issued the Policies in the name of the Trusts, thereby making them the insureds. See 2d Amd.

14

Cmplt. at ¶¶ 14-19; Policy Declarations Pages, Exhs. 1-6. The Trusts are all Delaware business trusts formed under Chapter 38 of the Delaware Code, and U.S. Bank is the Indenture Trustee of the Trusts, with its principal trust offices located in St. Paul, Minnesota.[5] See Confidential Offering Circulars for Trusts at pp. 2&3, attached as Exhs. 7-11. According to the addresses on the Policies, three of the Trusts conducted business in California at the time the Policies were issued: FMAC Loan Receivables Trusts 1997-B, 1998-C, and 1998-D (the named insureds on policies 8195202, 5295859, and 5295865, respectively). See Policy Declaration Page for Policies 8195202, 5295859, and 5295865, Exhs. 6, 2 & 3, respectively. The other two Trusts conducted business in New Jersey at the time the other three Policies were issued: FMAC Loan Receivables Trust 1998-B (the named insured on policy 5295738) and FMAC Loan Receivables Trust 2000-A (the named insured on policies 7788373 and 7788374). See Policy Declaration Page for Policies 5295738, 7788373, and 7788374, Exhs. 1, 4 & 5, respectively. Similarly, as indicated by the addresses on the Policies, C&I and AISLIC delivered the policies to California and/or New Jersey. See Exhs. 1-6.

In addition, upon information and belief, the policies were negotiated in California and New Jersey. Significantly, FMAC appears to have applied for SCIP coverage in Los Angeles, California. See Application, attached as Exh. 12. Upon further information and belief, Plaintiffs conduct business in California, Delaware, and New Jersey and derive revenue from that business in those states. Further, the Policies were procured, in part, by the use of two brokers in New Jersey. Meeker Sharkey Financial Services Group, located in Cranford, New Jersey, assisted in the procurement of SCIP policies 5295738 and 8195202. See Policy Declaration Pages for Policies 5295738 and 8195202, Exhs. 1 & 6, respectively. FMAC Insurance Services, Inc.,

---

[5]       Pursuant to 28 U.S.C. § 1348, U.S. Bank is deemed a citizen of Ohio.

located in Morristown and/or Parsippany, New Jersey, assisted in the procurement of the other four policies -- 5295859, 5295865, 7788373 and 7788374. See Policy Declaration Pages for Policies 5295859, 5295865, 7788373, and 7788374, Exhs. 2, 3, 4 & 5, respectively.

Consistent with these contacts, AIG Environmental, an entity related to AISLIC and C&I that handled much of the underwriting, routinely sent policy correspondence to California and New Jersey. Moreover, AIG Environmental is located in Denver, Colorado and communications with AIG Environmental were sent to and from Colorado. As an example of the extensive correspondence sent to these states, AIG Environmental sent a letter on August 12, 1998 to FMAC attaching copies of Environmental Impairment Liability Notice of Loss/Notice of Claim Forms to an address in Costa Mesa, California that is the same address as the insureds listed in policies 5295859 and 5295865. See 8/12/98 letter, attached as Exh. 13. Similarly, AIG Environmental sent a letter on August 21, 1998 to FMAC Insurance Services, Inc., providing a binder for policy 5295738 to an address in Parsippany, New Jersey that is the same address as the insured listed in policy 5295738. See 8/21/98 letter, attached as Exh. 14.

In addition to the foregoing contacts, none of which are with New York, the insured entities are located in Delaware, California, or New Jersey. The Policies are designed to protect the insured Trusts in the event of loss by the Trusts resulting from a borrower's default where certain pollution conditions on the secured property also are present. See Def. Counterclaim at ¶ 8. Should a default occur, the Trusts would experience a loss in Delaware, California, or New Jersey due to the Trusts' presence in those states.

Similarly, none of the properties that served as collateral for the various commercial loans, including those which are the subject of Policy claims at issue in this lawsuit, are located in New York. See Endorsements for Policies 5295738, 5295859, 5295865, 7788373, 7788374,

16

and 8195202, attached as Exhs. 15-20, respectively.  Rather, these properties are located throughout the United States, including Delaware (2 claims), Indiana (1 claim), Iowa (1 claim), Michigan (2 claims), Mississippi (2 claims), Missouri (1 claim), New Mexico (1 claim), Oklahoma (1 claim), Pennsylvania (8 claims), South Carolina (12 claims), Texas (31 claims), Virginia (1 claim), and Wisconsin (1 claim). Id.

Even assuming that C&I is a New York corporation with its principal place of business in New York, or that certain claim notices may have been sent to a New York mailing address, such factors, alone, are insufficient to require the application of New York law to the bad faith claim.[6] See 2d Amd. Cmplt. at ¶ 3.  In fact, much, if not all, of the insurers' underwriting occurred in Denver, Colorado, and the insurers sent correspondence to the insureds from Denver. See Exhs. 13 & 14.

As New York law indicates, the choice of law analysis focuses predominantly on the insured.  The states with the most significant contacts are California, Delaware, and New Jersey. Even though these contacts are spread throughout the country, the insured and the insured risk have no significant connection or contacts with New York.  In conjunction with the motion to dismiss standard requiring denial of a Rule 12(b)(6) motion where extrinsic evidence must be analyzed, the evidence here shows that contacts with states other than New York substantially outweigh contacts with New York that may exist.  Therefore, Plaintiffs' motion, premised on New York law, must be denied.

---

[6]    AISLIC, however, is an Alaska corporation with its principal place of business in New Jersey.  See 2d Amd. Cmplt. at ¶ 4.

III.  **Bad Faith Claims are Recognized Under Delaware, California and New Jersey Law.**

Due to the lack of significant contacts with New York and the inapplicability of the C&I Policies' choice of law provision, New York law does not apply to the bad faith claim for any of the Policies.[7]  As discussed above, Delaware, California, and New Jersey maintain the most significant contacts with the insured, the Policies, and the events surrounding this lawsuit.  All three of these states recognize a claim for bad faith refusal to pay insurance benefits.  See Tackett v. State Farm Fire & Casualty Insurance Co., 653 A.2d 254, 264 (Del. 1995) ("Where an insurer fails to investigate or process a claim or delays payment in bad faith, it is in breach of the implied obligations of good faith and fair dealing underlying all contractual obligations. . . . A lack of good faith, or the presence of bad faith, is actionable where the insured can show that the insurer's denial of benefits was 'clearly without any reasonable justification.'") (internal citations omitted);[8] Amadeo v. Principal Mutual Life Insurance Co., 290 F.3d 1152, 1161 (9th Cir. 2002) (Under California law, "bad faith by an insurer is subject to tort remedies, including punitive damages" and "'[t]he key to a bad faith claim is whether or not the insurer's denial of coverage was reasonable'") (internal citations omitted);  Ketzner v. John Hancock Mutual Life Insurance Co., 118 Fed. Appx. 594, 599 (3d Cir. 2004) (under New Jersey law, to establish a claim for bad faith in the insurance context a plaintiff must show two elements:  "(1) the insurer lacked a 'fairly debatable' reason for its failure to pay a claim, and (2) the insurer knew or recklessly disregarded the lack of a reasonable basis for denying the claim.") (internal citations omitted).

---

[7]      The AISLIC Policy does not even contain a New York choice of law provision.  See p. 11, *supra.*

[8]      In Tackett, the Delaware Supreme Court also held that an insured "may be entitled to the recovery of punitive damages in a bad faith action if the insurer's breach is particularly egregious."  Id. at 265.

18

Here, U.S. Bank properly asserts a claim for bad faith refusal to pay. U.S. Bank alleges that (1) Plaintiffs *"refused to fulfill their obligations and/or delayed the performance of their obligations* to the Trusts under the Policies"; (2) Plaintiffs' "refusal to perform and/or delay in performing their obligations to the Trusts under the Policies was *without reasonable justification and/or lacked a fairly debatable reason"*; (3) Plaintiffs *"knew or recklessly disregarded the lack of a reasonable basis* for their refusal to perform and/or delay in performing their obligations to the Trusts under the Policies"; and (4) Plaintiffs' "coverage position herein *is without reasonable justification."* See Def. Counterclaim at ¶¶ 24-27 (emphasis added). Because New York law does not apply, and bad faith claims are recognized under California, Delaware, and New Jersey law, Plaintiffs' Motion to Dismiss should be denied. See, Tackett, 653 A.2d at 264; Amadeo, 290 F.3d at 1161 and; Ketzner, 118 Fed. App. at 599.

## CONCLUSION

Based on the foregoing, U.S. Bank respectfully requests that the Court deny Plaintiffs' Motion to Dismiss.

Dated:  December 7, 2007
        New York, New York

McKENNA LONG & ALDRIDGE LLP



Charles E. Dorkey III (CD-8422)
S. Jane Moffat (SM-0912)
230 Park Avenue
Suite 1700
New York, NY 10169
Telephone:  (212) 905-8330
Facsimile:  (212) 922-1819

Tami L. Azorsky (admitted *pro hac vice*)
McKenna Long & Aldridge LLP
1900 K Street, NW
Washington, D.C.  20006
Telephone:  (202) 496-7500
Facsimile:  (202) 496-7756

Barry J. Armstrong (admitted *pro hac vice*)
Jeremy M. Moeser (admitted *pro hac vice*)
McKenna Long & Aldridge LLP
303 Peachtree Street, Suite 5300
Atlanta, Georgia  30308
Telephone:  (404) 527-4000
Facsimile:  (404) 527-4198

*Attorneys for Defendant U.S. Bank National
Association, as Indenture Trustee for the Registered
Holders of FMAC Loan Receivables Trusts 1997-B,
1998-B, 1998-C, 1998-D  and 2000-A*

Charles E. Dorkey III (CD-8422)
S. Jane Moffat (SM-0912)
230 Park Avenue
Suite 1700
New York, NY 10169
(212) 905-8330
(212) 922-1819 (facsimile)

*Attorneys for Defendant U.S. Bank National Association,
as Indenture Trustee for the Registered Holders of FMAC
Loan Receivables Trusts 1997-B, 1998-B, 1998-C, 1998-D
and 2000-A*

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| COMMERCE AND INDUSTRY INSURANCE COMPANY and AMERICAN INTERNATIONAL SPECIALTY LINES INSURANCE COMPANY,<br><br>Plaintiffs,<br><br>- against -<br><br>U.S. BANK NATIONAL ASSOCIATION, AS INDENTURE TRUSTEE FOR THE REGISTERED HOLDERS OF FMAC LOAN RECEIVABLES TRUSTS 1997-B, 1998-B, 1998-C, 1998-D AND 2000-A,<br><br>Defendant. | Civil Action No.<br>1:07-CV-5731 (JGK)<br><br><br>**CERTIFICATE OF SERVICE** |

I hereby certify that I have this day served a copy of "Defendant's Response to and Memorandum of Law in Opposition to Plaintiff's Motion to Dismiss" upon counsel via U.S. Mail postage prepaid to ensure delivery as follows:

John D. Lovi
Laura E. Romansic
Steptoe & Johnson LLP
750 Seventh Avenue, Suite 1900
New York, New York  10019

Roger Warin
Harry Lee
Andrew Racca
Steptoe & Johnson LLP
1330 Connecticut Avenue, NW
Washington, DC  20036

Scott Davis
David Timmins
Gardere Wynne Sewell LLP
1601 Elm Street, Suite 3000
Dallas, Texas  75201


Dated: December 7, 2007
       New York, New York


_____
S. Jane Moffat

McKenna Long & Aldridge LLP
230 Park Avenue
Suite 1700
New York, NY 10169
Telephone:  (212) 905-8330
Facsimile:  (212) 922-1819


NY:12050493.2