Charles E. Dorkey III
S. Jane Moffat
McKENNA LONG & ALDRIDGE LLP
230 Park Avenue
New York, New York 10169
212-905-8330

*Attorneys for Defendant U.S. Bank National
Association, as Indenture Trustee for the
Registered Holders of FMAC Loan Receivables
Trusts 1997-B, 1998-B, 1998-C, 1998-D and 2000-A*

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| COMMERCE AND INDUSTRY INSURANCE COMPANY and AMERICAN INTERNATIONAL SPECIALTY LINES INSURANCE COMPANY,<br><br>              Plaintiffs,<br><br>    - against -<br><br>U.S. BANK NATIONAL ASSOCIATION, AS INDENTURE TRUSTEE FOR THE REGISTERED HOLDERS OF FMAC LOAN RECEIVABLES TRUSTS 1997-B, 1998-B, 1998-C, 1998-D AND 2000-A,<br><br>              Defendant. | Civil Action No.<br>1:07-CV-5731 (JGK)(RLE) |

## DECLARATION OF CHARLES E. DORKEY III

I, Charles E. Dorkey III, submit this declaration in support of Defendant's Response to and Memorandum in Opposition to Plaintiffs' Motion to Dismiss.

1.    I am a member of McKenna Long & Aldridge LLP, counsel to defendant U.S. Bank National Association, as Indenture Trustee for the Registered Holders of FMAC Loan Receivables Trusts 1997-B, 1998-B, 1998-C, 1998-D and 2000-A ("Defendant" or "U.S. Bank").

2.    Attached hereto are true and correct copies of the following documents:

| Exhibit No. | Description |
|---|---|
| 1 | Declaration Page to Secured Creditor Impaired Property ("SCIP") Policy 5295738 from Commerce and Industry Insurance Company ("C&I"), for period from June 11, 1998 to June 11, 2018. |
| 2 | Declaration Page to Secured Creditor Impaired Property ("SCIP") Policy 5295859 from Commerce and Industry Insurance Company ("C&I"), for period from September 23, 1998 to September 23, 2018. |
| 3 | Declaration Page to Secured Creditor Impaired Property ("SCIP") Policy 5295865 from Commerce and Industry Insurance Company ("C&I"), for period from December 1, 1998 to December 1, 2018. |
| 4 | Declaration Page to Secured Creditor Impaired Property ("SCIP") Policy 7788373 from Commerce and Industry Insurance Company ("C&I"), for period from April 26, 2000 to April 26, 2020. |
| 5 | Declaration Page to Secured Creditor Impaired Property ("SCIP") Policy 7788374 from Commerce and Industry Insurance Company ("C&I"), for period from April 26, 2000 to April 26, 2020. |
| 6 | Declaration Page to Secured Creditor Impaired Property ("SCIP") Policy 8195202 from American International Specialty Lines Insurance Company ("AISLIC"), for period from September 23, 1997 to September 23, 2017. |
| 7 | Confidential Offering Circular for Franchise Mortgage Acceptance Company LLC ("FMAC") Loan Receivables Trust 1997-B, dated September 23, 1997. |
| 8 | Confidential Offering Circular for Franchise Mortgage Acceptance Company LLC ("FMAC") Loan Receivables Trust 1998-B, dated June 19, 1998. |
| 9 | Confidential Offering Circular for Franchise Mortgage Acceptance Company LLC ("FMAC") Loan Receivables Trust 1998-C, dated September 18, 1998. |
| 10 | Confidential Offering Circular for Franchise Mortgage Acceptance Company LLC ("FMAC") Loan Receivables Trust 1998-D, dated December 1, 1998. |
| 11 | Confidential Offering Circular for Franchise Mortgage Acceptance Company LLC ("FMAC") Loan Receivables Trust 2000-A, dated April 27, 2000. |
| 12 | American International Companies' Secured Creditor Impaired Property Application. |
| 13 | Letter from Travis McManigal of American International Group, Inc. ("AIG") to the Insurance Manager of Franchise Mortgage Acceptance Company LLC ("FMAC"), dated August 12, 1998. |

| 14 | Letter from Eric D. Rosenblum of American International Group, Inc. ("AIG") to Michael Moffett of Franchise Mortgage Acceptance Company LLC ("FMAC"), dated August 21, 1998. |
|----|---|
| 15 | Endorsement # 7 to Policy 5295738, for period June 11, 1998 to June 11, 2018. |
| 16 | Endorsement # 27 to Policy 5295859, for period September 23, 1998 to September 23, 2018. |
| 17 | Endorsement # 1 to Policy 5295865, for period December 1, 1998 to December 1, 2018. |
| 18 | Endorsement # 9 to Policy 7788373, for period April 26, 2000 to April 26, 2020. |
| 19 | Endorsement # 9 to Policy 7788374, for period April 26, 2000 to April 26, 2020. |
| 20 | Endorsement # 9 to Policy 8195202, for period September 23, 1997 to September 23, 2017. |

I declare under penalty of perjury that the foregoing is true and correct.

Executed on December 7, 2007.

Charles E. Dorkey III

# EXHIBIT 1

# COMMERCE AND INDUSTRY INSURANCE COMPANY
### 70 PINE STREET
### NEW YORK, N.Y. 10270

A Capital Stock Company
(herein called the "Company")

**NAMED**
**INSURED**
**AND**
**POST OFFICE**

FMAC LOAN RECEIVABLES TRUST 1998-B
9 Campus Drive
Parsippany, NJ 07045

## SECURED CREDITOR IMPAIRED PROPERTY POLICY

### DECLARATIONS

**THIS IS A CLAIMS-MADE AND REPORTED POLICY - PLEASE READ CAREFULLY.**

POLICY NUMBER:                SC - 5295738

Item 1: NAMED INSURED        FMAC Loan Receivables Trust 1998-B

ADDRESS                       9 Campus Drive
                             Parsippany, NJ 07045

Item 2: POLICY PERIOD   FROM        June 11, 1998   TO    June 11, 2018
        12:01 A.M. Standard time at the address of the Named Insured shown above.

Item 3: LIMITS OF LIABILITY    Each Loss          $ 2,000,000

                              Total all Losses    $ 35,000,000

Item 4: DEDUCTIBLE: Each Loss                     $   10,000

Item 5: INSURED PROPERTY(S):    See Schedule of Insured Properties

Item 6: POLICY PREMIUM    $ 138,232.

Broker:      Meeker Sharkey Financial Services Group
             14 Commerce Drive
             Cranford, NJ 07016

_____
AUTHORIZED REPRESENTATIVE

67779 (5/97)

# EXHIBIT 2

# COMMERCE AND INDUSTRY INSURANCE COMPANY

## 70 PINE STREET
## NEW YORK, N.Y. 10270

A Capital Stock Company
(herein called the "Company")

**NAMED**
**INSURED**
**AND**
**POST OFFICE**

FMAC – Loan Receivables Trust 1998C
611 Anton Boulevard, Suite 500
Costa Mesa, CA 92628

## SECURED CREDITOR IMPAIRED PROPERTY POLICY

### DECLARATIONS

### THIS IS A CLAIMS-MADE AND REPORTED POLICY - PLEASE READ CAREFULLY.

POLICY NUMBER:                    SC 529 58 59

Item 1: NAMED INSURED            FMAC – Loan Receivables Trust 1998C

   ADDRESS                       611 Anton Boulevard, Suite 500
                                 Costa Mesa, CA 92628

Item 2: POLICY PERIOD   FROM        September 23, 1998   TO        September 23, 2018
        12:01 A.M. Standard time at the address of the Named Insured shown above.

Item 3: LIMITS OF LIABILITY    Each **Loss**        $  2,000,000.

                               Total all **Losses**    $  35,000,000.

Item 4: DEDUCTIBLE: Each **Loss**                  $       10,000.

Item 5: INSURED PROPERTY(S):    See Schedule of Insured Properties endorsement(s)

Item 6: POLICY PREMIUM          $ 149,321

Broker:     FMAC Insurance Services, Inc.
            9 Campus Drive
            Parsippany, NJ 07054

_Carolyn Sloan_
AUTHORIZED REPRESENTATIVE

67779 (5/97)

# EXHIBIT 3

# COMMERCE AND INDUSTRY INSURANCE COMPANY
70 PINE STREET
NEW YORK, N.Y. 10270

A Capital Stock Company
(herein called the "Company")

**NAMED**
**INSURED**           FMAC – Loan Receivables Trust 1998D
**AND**               611 Anton Boulevard, Suite 500
**POST OFFICE**       Costa Mesa, CA 92628

## SECURED CREDITOR IMPAIRED PROPERTY POLICY

### DECLARATIONS

**THIS IS A CLAIMS-MADE AND REPORTED POLICY - PLEASE READ CAREFULLY.**

POLICY NUMBER:              SC 529 58 65

Item 1: NAMED INSURED       FMAC – Loan Receivables Trust 1998D

    ADDRESS            611 Anton Boulevard, Suite 500
                            Costa Mesa, CA 92628

Item 2: POLICY PERIOD   FROM      December 1, 1998   TO     December 1, 2018
       12:01 A.M. Standard time at the address of the Named Insured shown above.

Item 3: LIMITS OF LIABILITY    Each Loss      $  2,000,000.

                                      Total all Losses   $  35,000,000.

Item 4: DEDUCTIBLE: Each Loss                 $      10,000.

Item 5: INSURED PROPERTY(S):      See Scheduled of Insured Properties endorsement

Item 6: POLICY PREMIUM     $54,868 Total Premium

Broker:    FMAC Insurance Services, Inc.
           9 Campus Drive
           Parsippany, NJ 07054

_____
AUTHORIZED REPRESENTATIVE

67779 (5/97)

# EXHIBIT 4

# COMMERCE AND INDUSTRY INSURANCE COMPANY

70 PINE STREET
NEW YORK, N.Y. 10270

A Capital Stock Company
(herein called the "Company")

The undersigned certifies that
this is a true copy of the policy

Date: _12/06/03_

| | |
|---|---|
| NAMED | FMAC Loan Receivables Trust 2000-A |
| INSURED | Headquarters Plaza |
| AND | West Tower, 3rd Floor |
| POST OFFICE | Morristown, NJ 07960 |

## SECURED CREDITOR IMPAIRED PROPERTY POLICY

### DECLARATIONS

**THIS IS A CLAIMS-MADE AND REPORTED POLICY - PLEASE READ CAREFULLY.**

POLICY NUMBER:           778 83 73

Item 1: NAMED INSURED           FMAC Loan Receivables Trust 2000-A

ADDRESS                         Headquarters Plaza
                                West Tower, 3rd Floor
                                Morristown, NJ 07960

Item 2: POLICY PERIOD  FROM     April 26, 2000  TO    April 26, 2020
        12:01 A.M. Standard time at the address of the Named Insured shown above.

Item 3: LIMITS OF LIABILITY     Each **Loss**        $ 2,000,000

                                Total all **Losses**    $35,000,000

Item 4: DEDUCTIBLE: Each **Loss**               $    10,000

Item 5: INSURED PROPERTY(S):    See Insured Property Endorsement(s)

Item 6: POLICY PREMIUM      $ 65,320

Broker:       FMAC Insurance Services
              Headquarters Plaza
              West Tower, 3rd Floor
              Morristown, NJ 07960

COPY

AUTHORIZED REPRESENTATIVE

67779 (5/97)

# EXHIBIT 5

# COMMERCE AND INDUSTRY INSURANCE COMPANY

70 PINE STREET
NEW YORK, N.Y.  10270

A Capital Stock Company
(herein called the "Company")

NAMED
INSURED
AND
POST OFFICE

FMAC Loan Receivables Trust 2000-A
Headquarters Plaza
West Tower, 3rd Floor
Morristown, NJ 07960

## SECURED CREDITOR IMPAIRED PROPERTY POLICY

### DECLARATIONS

**THIS IS A CLAIMS-MADE AND REPORTED POLICY - PLEASE READ CAREFULLY.**

POLICY NUMBER:                    778 83 74

Item 1: NAMED INSURED            FMAC Loan Receivables Trust 2000-A

        ADDRESS            Headquarters Plaza
West Tower, 3rd Floor
Morristown, NJ 07960

Item 2: POLICY PERIOD  FROM      April 26, 2000   TO     April 26, 2020
12:01 A.M. Standard time at the address of the Named Insured shown above.

Item 3: LIMITS OF LIABILITY      Each **Loss**       $ 2,000,000

Total all **Losses**    $35,000,000

Item 4: DEDUCTIBLE: Each **Loss**                $     10,000

Item 5: INSURED PROPERTY(S):      See Insured Property Endorsement(s)

Item 6: POLICY PREMIUM      $ 54,105

Broker:        FMAC Insurance Services
Headquarters Plaza
West Tower, 3rd Floor
Morristown, NJ 07960

AUTHORIZED REPRESENTATIVE

67779 (5/97)

EXHIBIT 6

JAN-07-98  10:37  From:C&I-DENVER                           3032957461              T-597  P.02    Job-095



**AISL**

A Member Company
of American International
Group, Inc.

## AMERICAN INTERNATIONAL
## SPECIALTY LINES INSURANCE COMPANY
A Capital Stock Insurance Company
c/o American International Surplus Lines Agency, Inc.
Harborside Financial Center, 401 Plaza 3
Jersey City, NJ  07311

NAMED INSURED:   FMAC Loan Receivables Trust 1997-B
AND                          333 South Grand Ave., Suite 3040
POST OFFICE:       Los Angeles, CA 90071

*9-24-97*
*Issued*

# SECURED CREDITOR IMPAIRED PROPERTY POLICY

## DECLARATIONS

**THIS IS A CLAIMS-MADE AND REPORTED POLICY - PLEASE READ CAREFULLY.**

**POLICY NUMBER:**            SC - 8195202

**Item 1: NAMED INSURED**      FMAC Loan Receivables Trust 1997-B
**ADDRESS**                333 South Grand Ave., Suite 3040
                           Los Angeles, CA 90071

**Item 2: POLICY PERIOD:**     FROM   September 23, 1997   TO   September 23, 2017
                           12:01 A.M. Standard time at the address of the Named Insured
                           shown above.

**Item 3: LIMITS OF LIABILITY**    Each Loss          $ 5,000,000

                           Total all Losses   $ 25,000,000

**Item 4: DEDUCTIBLE:**        Each Loss          $    10,000

**Item 5: INSURED PROPERTY(S):**   See attached Schedule of Insured Properties

**Item 6: POLICY PREMIUM**      $ 125,000. Estimated total premium

**Broker:**       Meeker Sharkey Financial Services Group
                  14 Commerce Drive
                  Cranford, NJ 07018

*Armand Pepin*
AUTHORIZED REPRESENTATIVE

67774 (5/97)

# EXHIBIT 7

# CONFIDENTIAL OFFERING CIRCULAR

## $185,161,058

## FMAC Loan Receivables Trust 1997-B
### FMAC Loan Receivables Notes, Series 1997-B
## FMAC Franchisee Finance Corp.
Designated Certificate Holder

## Franchise Mortgage Acceptance Company LLC
Originator and Servicer

The FMAC Loan Receivables Notes, Series 1997-B (collectively, the "Notes") will consist of seven classes (each a "Class") as set forth on the table below. The Notes are obligations of FMAC Loan Receivables Trust 1997-B, a Delaware business trust (the "Issuer") formed pursuant to a Trust Agreement, dated as of September 1, 1997 (the "Trust Agreement"), between Wilmington Trust Company, as Issuer trustee (the "Issuer Trustee"), FMAC Franchisee Finance Corp., a special purpose Delaware corporation, as holder of the Designated Certificate (the "Designated Certificate Holder") and Franchise Mortgage Acceptance Company LLC, a California limited liability company, as originator ("FMAC" or the "Originator"). The FMAC Loan Receivables Certificates, Series 1997-B (collectively, the "Certificates") will consist of a single class to be designated as set forth in the table below and the Designated Certificate. The Certificates represent beneficial interests in the Issuer. Only the Notes are offered hereby. The Certificates are not offered pursuant to this Offering Circular. The respective Classes of Notes offered hereby will be issued in the aggregate principal amounts and will accrue interest at the per annum rates set forth or otherwise described in the table below. The Notes and the Certificates are collectively referred to as the "Securities." Capitalized terms used herein have the meanings ascribed to such terms in Appendix A hereto. Application will be made to have the Class E Notes and the Class F Notes designated as eligible for trading in The Portal℠ Market ("PORTAL") a subsidiary of The Nasdaq Stock Market, Inc.

(continued on next page)

**For a discussion of certain risks associated with an investment in the Securities, see "Special Considerations" herein.**

THE NOTES AND CERTIFICATES DO NOT REPRESENT OBLIGATIONS OF THE ORIGINATOR, THE ISSUER TRUSTEE, THE INDENTURE TRUSTEE, THE ADMINISTRATOR, THE CERTIFICATE PAYING AGENT, THE INITIAL PURCHASER, THE SERVICER (ALL AS DEFINED HEREIN), OR ANY OF THEIR RESPECTIVE AFFILIATES, OFFICERS, DIRECTORS, SHAREHOLDERS, MEMBERS, PARTNERS, EMPLOYEES, REPRESENTATIVES OR AGENTS. NEITHER THE NOTES, THE CERTIFICATES NOR THE LOANS ARE INSURED OR GUARANTEED BY ANY GOVERNMENTAL AGENCY OR INSTRUMENTALITY. THE NOTES AND CERTIFICATES ARE PAYABLE SOLELY FROM THE TRUST ESTATE, AND PROSPECTIVE INVESTORS SHOULD MAKE AN INVESTMENT DECISION BASED UPON AN ANALYSIS OF THE SUFFICIENCY OF THE TRUST ESTATE. THE SECURITIES HAVE NOT BEEN AND WILL NOT BE REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "1933 ACT") OR ANY APPLICABLE STATE SECURITIES LAWS AND NO SECURITYHOLDER WILL HAVE THE RIGHT TO REQUIRE SUCH REGISTRATION. THE SECURITIES MAY NOT BE OFFERED, SOLD OR TRANSFERRED WITHIN THE UNITED STATES OR TO U.S. PERSONS (AS DEFINED IN REGULATION S UNDER THE 1933 ACT), EXCEPT TO QUALIFIED INSTITUTIONAL BUYERS (AS DEFINED IN RULE 144A UNDER THE 1933 ACT) IN RELIANCE ON THE EXEMPTION FROM THE REGISTRATION REQUIREMENTS OF THE 1933 ACT PROVIDED BY RULE 144A OR OTHERWISE IN TRANSACTIONS EXEMPT FROM THE REGISTRATION REQUIREMENTS OF THE 1933 ACT. FOR CERTAIN RESTRICTIONS ON RESALES, SEE "TRANSFER RESTRICTIONS."

| | Initial Balance(1) | Initial Note Rate(2) | Rating(3) | Expected Average Life(4) | Rated Final Distribution Date(5) |
|---|---|---|---|---|---|
| Class A Notes | $114,799,000 | 6.8500% | AAA | 6.28 | 9/15/19 |
| Class A-X Notes | 185,161,058 | 3.2591% | AAA(6) | 9.19 | 9/15/19 |
| Class B Notes | 9,258,000 | 7.1600% | AA | 11.31 | 9/15/19 |
| Class C Notes | 22,220,000 | 7.4000% | A | 12.38 | 9/15/19 |
| Class D Notes | 16,664,000 | 7.6300% | BBB | 13.80 | 9/15/19 |
| Class E Notes | 7,407,000 | 7.8912% | BB | 14.64 | 9/15/19 |
| Class F Notes | 5,555,000 | 7.8912% | B | 13.57 | 9/15/19 |
| Certificates(7) | 9,258,058 | N/A | N/A | 18.35 | 9/15/19 |
| Total Initial Aggregate Principal Amount and Certificate Balance | $185,161,058 | | | | |

(1) The Initial Balance is either the approximate Initial Aggregate Principal Amount, Initial Certificate Balance or Initial Aggregate Notional Amount of the related Class of Securities.
(2) The Note Rate applicable to each security is either a fixed rate or a weighted average paythrough rate ("WAPT Rates"). See "Summary—Interest" herein and Appendix A hereto.
(3) It is expected that the Class A Notes, Class A-X Notes, Class B Notes and the Class C Notes will be rated by Standard & Poor's, DCR and Fitch. It is expected that the Class D Notes, Class E Notes and the Class F Notes will be rated by DCR and Fitch. The Certificates will not be rated. See "Summary—Rating" herein.
(4) Assuming no prepayments or accelerations.
(5) Determined on the assumptions described herein under "Description of the Securities—Rated Final Distribution Date" herein.
(6) The Rating for the Class A-X Notes is "AAAr" by Standard & Poor's. See "Special Considerations—The Securities—Ratings" herein.
(7) Not offered hereby.

The Notes are offered by the Initial Purchaser, when, as and if issued by the Issuer delivered to and accepted by the Initial Purchaser and subject to its right to reject orders in whole or in part. It is expected that delivery of the Notes will be made on or about September 29, 1997, against payment in immediately available funds.

## Credit Suisse First Boston
Confidential Offering Circular dated September 23, 1997

| | |
|---|---|
| Issuer | FMAC Loan Receivables Trust 1997-B, a special purpose Delaware business trust (the "**Issuer**") under Chapter 38 of the Delaware Code ("**Business Trust Law**") formed pursuant to the Trust Agreement between Wilmington Trust Company, a Delaware banking corporation, as Issuer Trustee, FMAC Franchisee Finance Corp., a special purpose Delaware corporation, as the Holder of the Designated Certificate, and Franchise Mortgage Acceptance Company LLC, a California limited liability company, as Originator. See "Description of the Issuer" herein. The purposes and powers of the Issuer generally are limited to purchasing, holding and administering the Loans, selling the Securities and activities incidental thereto. The offices of the Issuer are c/o Wilmington Trust Company, Rodney Square North, 1100 N. Market Street, Wilmington, Delaware 19890. Attention: Corporate Trust Administration. |
| Originator | Franchise Mortgage Acceptance Company LLC, a California limited liability company ("**FMAC**" or the "**Originator**"), originated the Loans which it is contributing to the Issuer pursuant to the Contribution Agreement. See "The FMAC Loan Programs" and "The Loans" herein. FMAC's offices are located at Five Greenwich Office Park, Greenwich, Connecticut 06831. |
| Servicer | FMAC is the Servicer of the Loans pursuant to the Servicing Agreement among the Issuer, U.S. Bank National Association d/b/a First Bank National Association, as Indenture Trustee and the Servicer. The Servicer will service the Loans and have the duties and be entitled to the benefits and be subject to the liabilities provided under the Servicing Agreement. See "The Servicer" herein. The office of the Servicer is located at Five Greenwich Office Park, Greenwich, Connecticut 06831. |
| Indenture Trustee | U.S. Bank National Association d/b/a First Bank National Association, a national banking association, is the Indenture Trustee pursuant to the terms of the Indenture of Trust between the Issuer and the Indenture Trustee. The Indenture Trustee will have the duties and be entitled to the benefits provided under the Indenture. See "Description of the Indenture" herein. The principal trust offices of the Indenture Trustee are located at First Trust Center, 180 E. Fifth Street, Saint Paul, Minnesota 55101. |
| Certificate Paying Agent; Certificate Registrar | U.S. Bank National Association d/b/a First Bank National Association, a national banking association, is the Certificate Paying Agent and Certificate Registrar for the Certificates. The principal offices of the Certificate Paying Agent are located at First Trust Center, 180 E. Fifth Street, Saint Paul, Minnesota 55101. |
| Administrator | U.S. Bank National Association d/b/a First Bank National Association is the Administrator pursuant to the Administration Services Agreement among the Issuer, Servicer and the Administrator, and will, to the extent provided in the Administration Services Agreement, provide notices and perform other administrative obligations of the Issuer required by the Indenture and the Trust Agreement. The principal offices of the |

3

# EXHIBIT 8

CONFIDENTIAL OFFERING CIRCULAR

**$297,555,709**
**FMAC Loan Receivables Trust 1998-B**
**FMAC Loan Receivables Notes, Series 1998-B**
**FMAC Franchisee Finance Corp.**
Designated Certificate Holder
**Franchise Mortgage Acceptance Company**
Originator and Servicer

*The FMAC Loan Receivables Notes, Series 1998-B (collectively, the "Notes") will consist of seven classes (each a "Class" as set forth in the table below. The Notes are obligations of FMAC Loan Receivables Trust 1998-B, a Delaware business trust (the "Issuer") formed pursuant to a Trust Agreement, dated as of June 1, 1998 (the "Trust Agreement"), among Wilmington Trust Company, as issuer trustee (the "Issuer Trustee"), FMAC Franchisee Finance Corp., a special purpose Delaware corporation, as holder of the Designated Certificate (The "Designated Certificate Holder") and Franchise Mortgage Acceptance Company, a Delaware corporation ("FMAC" or the "Originator"). The FMAC Loan Receivables Certificates, Series 1998-B (collectively, the "Certificates") will consist of a single class to be designated as set forth in the table below and the Designated Certificate. The Certificates represent beneficial interests in the Issuer. Only the Notes are offered hereby. The Certificates are not offered pursuant to this Offering Circular. The respective Classes of Notes offered hereby will be issued in the aggregate principal amounts and will accrue interest at the per annum rates set forth or otherwise described in the table below. The Notes and the Certificates are collectively referred to as the "Securities". Capitalized terms used herein have the meanings ascribed to such terms in Appendix A hereto. Application will be made to have the Class E Notes and the Class F Notes designated as eligible for trading in The Portal Market ("PORTAL"), a subsidiary of The Nasdaq Stock Market, Inc. For a discussion of certain risks associated with an investment in the Notes, see "Special Considerations" herein.*

THE SECURITIES DO NOT REPRESENT OBLIGATIONS OF THE ORIGINATOR, THE ISSUER TRUSTEE, THE INDENTURE TRUSTEE, THE ADMINISTRATOR, THE CERTIFICATE PAYING AGENT, THE INITIAL PURCHASERS, THE SERVICER (ALL AS DEFINED HEREIN), OR ANY OF THEIR RESPECTIVE AFFILIATES, OFFICERS, DIRECTORS, SHAREHOLDERS, MEMBERS, PARTNERS, EMPLOYEES, REPRESENTATIVES OR AGENTS. NEITHER THE NOTES, THE CERTIFICATES NOR THE LOANS ARE INSURED OR GUARANTEED BY ANY GOVERNMENTAL AGENCY OR INSTRUMENTALITY. THE NOTES AND CERTIFICATES ARE PAYABLE SOLELY FROM THE TRUST ESTATE, AND PROSPECTIVE INVESTORS SHOULD MAKE AN INVESTMENT DECISION BASED UPON AN ANALYSIS OF THE SUFFICIENCY OF THE TRUST ESTATE.

THE NOTES HAVE NOT BEEN AND WILL NOT BE REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "1933 ACT"), OR ANY APPLICABLE STATE SECURITIES LAWS AND NO NOTEHOLDER WILL HAVE THE RIGHT TO REQUIRE SUCH REGISTRATION. THE NOTES ARE BEING OFFERED AND SOLD ONLY (1) IN THE CASE OF THE SENIOR NOTES (DEFINED BELOW) OUTSIDE OF THE UNITED STATES WITHIN THE MEANING OF, AND IN COMPLIANCE WITH, REGULATION S UNDER THE 1933 ACT ("REGULATION S"), OR (2) TO QUALIFIED INSTITUTIONAL BUYERS (AS DEFINED IN RULE 144A UNDER THE 1933 ACT) IN RELIANCE ON THE EXEMPTION FROM THE REGISTRATION REQUIREMENTS OF THE 1933 ACT PROVIDED BY RULE 144A OR OTHERWISE IN TRANSACTIONS EXEMPT FROM THE REGISTRATION REQUIREMENTS OF THE 1933 ACT. EXCEPT AS DESCRIBED IN THE PRECEDING CLAUSE (2), NO SECURITIES MAY BE OFFERED, SOLD OR DELIVERED, DIRECTLY OR INDIRECTLY, WITHIN THE UNITED STATES OR TO, OR FOR THE ACCOUNT OF, U.S. PERSONS (AS DEFINED IN REGULATION S). FOR CERTAIN RESTRICTIONS ON RESALES, SEE "TRANSFER RESTRICTIONS."

| | Initial Balance (1) | Initial Note or Certificate Rate (2) | Rating(3)(6) (S&P/DCR/ Fitch IBCA) | Expected Average Life (years) (4) | Rated Final Distribution Date ($) |
|---|---|---|---|---|---|
| Class A-1 Notes | $ 60,000,000 | 6.22000% | AAA/AAA/AAA | 3.0 | November 15, 2020 |
| Class A-2 Notes | 157,216,000 | 6.74000% | AAA/AAA/AAA | 10.0 | November 15, 2020 |
| Class A-X Notes | 297,555,709 | 2.38544% | AAArr/AAA/AAA | 10.3 | November 15, 2020 |
| Class B Notes | 16,366,000 | 6.84000% | AA/AA/AA | 14.0 | November 15, 2020 |
| Class C Notes | 20,829,000 | 7.04000% | A/A/A | 14.8 | November 15, 2020 |
| Class D Notes | 10,414,000 | 7.29000% | BBB/BBB/BBB | 16.1 | November 15, 2020 |
| Class E Notes | 11,902,000 | 8.01695% | BB/BB/NR | 17.3 | November 15, 2020 |
| Class F Notes | 5,951,000 | 8.01695% | B/B/NR | 18.1 | November 15, 2020 |
| Certificates (7) | 14,877,709 | 6.22000% | NR/NR/NR | 19.1 | NA |
| Total Initial Aggregate Principal Amount and Certificate Balance | $ 297,555,709 | | | | |

(1)   The Initial Balance is either the approximate Initial Aggregate Principal Amount, Initial Certificate Balance or Initial Notional Amount of the related Class of Securities.
(2)   The Note or Certificate Rate applicable to each security is either a fixed rate or weighted average pay-through rate ("WAPT Rates"). See "Summary – Interest" herein and Appendix A hereto.
(3)   It is expected that the Class A Notes, Class A-X Notes, Class B Notes, Class C Notes and Class D Notes (the "Senior Notes"), will be rated by S&P, DCR and Fitch IBCA. It is expected that the Class E Notes and the Class F Notes will be rated by S&P and DCR. The Certificates will not be rated. See "Summary — Rating" herein.
(4)   Assuming no prepayments or accelerations.
(5)   Determined on the assumptions described herein under "Description of the Securities -- Rated Final Distribution Date" herein.
(6)   The Rating for the Class A-X Notes is "AAAr" by S&P. See "Special Considerations -- The Securities -- Ratings" herein.
(7)   The Certificates are not offered hereby.

The Notes are offered by the Initial Purchasers, when, as and if issued by the Issuer delivered to and accepted by the Initial Purchasers and subject to their right to reject orders in whole or in part. It is expected that delivery of the Notes will be made in book-entry form through the facilities of The Depository Trust Company, which may include delivery through Cedel Bank, société anonyme, and the Euroclear System as participants of The Depository Trust Company on or about June 25, 1998, against payment in immediately available funds.

**MORGAN STANLEY DEAN WITTER**

                                           **CREDIT SUISSE FIRST BOSTON**

*Confidential Offering Circular dated June 19, 1998*

**Issuer** ........................................................ FMAC Loan Receivables Trust 1998-B, a special purpose Delaware business trust (the **"Issuer"**) under Chapter 38 of the Delaware Code (**"Business Trust Law"**) formed pursuant to the Trust Agreement among Wilmington Trust Company, a Delaware banking corporation, as Issuer Trustee, FMAC Franchisee Finance Corp., a special purpose Delaware corporation, as the Holder of the Designated Certificate, and Franchise Mortgage Acceptance Company, a Delaware corporation, as Originator. See "Description of the Issuer" herein. The purposes and powers of the Issuer generally are limited to purchasing and holding the Loans, selling the Securities and activities incidental thereto. The offices of the Issuer are c/o Wilmington Trust Company, Rodney Square North, 1100 N. Market Street, Wilmington, Delaware 19890. Attention: Corporate Trust Administration.

**Originator** ................................................. Franchise Mortgage Acceptance Company, a Delaware corporation (**"FMAC"** or the **"Originator"**). The Originator originated or acquired the Loans which, it is contributing to the Issuer pursuant to the Contribution Agreement. See "The FMAC Loan Programs" and "The Loans" herein. FMAC's headquarters is located at 1888 Century Park East, 3rd Floor, Los Angeles, CA 90067.

**Servicer** ..................................................... FMAC is the Servicer of the Loans pursuant to the Servicing Agreement among the Issuer, U.S. Bank National Association, as Indenture Trustee, and the Servicer. The Servicer will service the Loans and have the duties and be entitled to the benefits and be subject to the liabilities provided under the Servicing Agreement. See "The Servicer" herein. The office of the Servicer is located at Three American Lane, Greenwich, Connecticut 06831.

**Designated Certificateholder** ................... FMAC Franchisee Finance Corp., a special purpose Delaware corporation, shall receive the Designated Certificate representing an ownership interest in the Issuer.

**Indenture Trustee** ..................................... U.S. Bank National Association, a national banking association, is the Indenture Trustee pursuant to the terms of the Indenture of Trust between the Issuer and the Indenture Trustee. The Indenture Trustee will have the duties and be entitled to the benefits provided under the Indenture. See "Description of the Indenture" herein. The principal trust offices of the Indenture Trustee are located at First Trust Center, 180 E. Fifth Street, Saint Paul, Minnesota 55101.

**Certificate Paying Agent;**
**Certificate Registrar** ........................... U.S. Bank National Association, a national banking association, is the Certificate Paying Agent and Certificate Registrar for the Certificates. The principal offices of the Certificate Paying Agent are located at First Trust Center, 180 E. Fifth Street, Saint Paul, Minnesota 55101.

2

# EXHIBIT 9

CONFIDENTIAL OFFERING CIRCULAR
$374,015,423

# FMAC Loan Receivables Trust 1998-C

FMAC Loan Receivables Notes, Series 1998-C

# FMAC Franchisee Finance Corp.

Designated Certificate Holder

## Franchise Mortgage Acceptance Company

Originator and Servicer

The FMAC Loan Receivables Notes, Series 1998-C (collectively, the "Notes") will consist of nine classes (each a "Class") as set forth in the table below. The Notes are obligations of FMAC Loan Receivables Trust 1998-C, a Delaware business trust (the "Issuer") formed pursuant to a Trust Agreement, dated as of September 1, 1998 (the "Trust Agreement"), among Wilmington Trust Company, as issuer trustee (the "Issuer Trustee"), FMAC Franchisee Finance Corp., a special purpose Delaware corporation, as holder of the Designated Certificate (the "Designated Certificate Holder") and Franchise Mortgage Acceptance Company, a Delaware corporation ("FMAC" or the "Originator"). The FMAC Loan Receivables Certificates, Series 1998-C (collectively, the "Certificates") will consist of a single class to be designated as set forth in the table below and the Designated Certificate. The Certificates represent in the aggregate 100% of the beneficial interests in the Issuer. Only the Notes are offered hereby. The Certificates are not offered pursuant to this Confidential Offering Circular ("Offering Circular"). The respective Classes of Notes offered hereby will be issued in the aggregate principal amounts and will accrue interest at the per annum rates set forth or otherwise described in the table below. The Notes and the Certificates are collectively referred to as the "Securities." Capitalized terms used herein have the meanings ascribed to such terms in Appendix A hereto. Application will be made to have the Class E Notes and the Class F Notes designated as eligible for trading in The Portal Market ("PORTAL"), a subsidiary of The Nasdaq Stock Market, Inc. For a discussion of certain risks associated with an investment in the Notes, see "Special Considerations" herein.

(continued on next page)

THE SECURITIES DO NOT REPRESENT OBLIGATIONS OF THE ORIGINATOR, THE ISSUER TRUSTEE, THE INDENTURE TRUSTEE, THE ADMINISTRATOR, THE CERTIFICATE PAYING AGENT, THE INITIAL PURCHASERS, THE SERVICER (ALL AS DEFINED HEREIN), OR ANY OF THEIR RESPECTIVE AFFILIATES, OFFICERS, DIRECTORS, SHAREHOLDERS, MEMBERS, PARTNERS, EMPLOYEES, REPRESENTATIVES OR AGENTS. NEITHER THE NOTES, THE CERTIFICATES NOR THE LOANS ARE INSURED OR GUARANTEED BY ANY GOVERNMENTAL AGENCY OR INSTRUMENTALITY. THE NOTES AND CERTIFICATES ARE PAYABLE SOLELY FROM THE TRUST ESTATE, AND PROSPECTIVE INVESTORS SHOULD MAKE AN INVESTMENT DECISION BASED UPON AN ANALYSIS OF THE SUFFICIENCY OF THE TRUST ESTATE.

THE NOTES HAVE NOT BEEN AND WILL NOT BE REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "1933 ACT") OR ANY APPLICABLE STATE SECURITIES LAWS AND NO NOTEHOLDER WILL HAVE THE RIGHT TO REQUIRE SUCH REGISTRATION. THE NOTES ARE BEING OFFERED AND SOLD ONLY (1) IN THE CASE OF THE SENIOR NOTES (DEFINED BELOW) OUTSIDE OF THE UNITED STATES WITHIN THE MEANING OF, AND IN COMPLIANCE WITH, REGULATION S UNDER THE 1933 ACT ("REGULATION S"), OR (2) TO QUALIFIED INSTITUTIONAL BUYERS (AS DEFINED IN RULE 144A UNDER THE 1933 ACT) IN RELIANCE ON THE EXEMPTION FROM THE REGISTRATION REQUIREMENTS OF THE 1933 ACT PROVIDED BY RULE 144A OR OTHERWISE IN TRANSACTIONS EXEMPT FROM THE REGISTRATION REQUIREMENTS OF THE 1933 ACT. EXCEPT AS DESCRIBED IN THE PRECEDING CLAUSE (2), NO SECURITIES MAY BE OFFERED, SOLD OR DELIVERED, DIRECTLY OR INDIRECTLY, WITHIN THE UNITED STATES OR TO, OR FOR THE ACCOUNT OF, U.S. PERSONS (AS DEFINED IN REGULATION S). FOR CERTAIN RESTRICTIONS ON RESALES, SEE "TRANSFER RESTRICTIONS."

| | Initial Balance(1) | Initial Note or Certificate Rate(2) | Rating(3) S&P/DCR/Fitch IBCA/Moody's | Expected Average Life (Years)(4) | Rated Final Distribution Date(5) |
|---|---|---|---|---|---|
| Class A-1 Notes............. | $ 96,160,000 | 5.9900000% | AAA/AAA/AAA/Aaa | 3.40 | September 15, 2020 |
| Class A-2 Notes............. | 174,020,000 | 6.6600000% | AAA/AAA/AAA/Aaa | 10.00 | September 15, 2020 |
| Class A-3 Notes............. | 12,200,000 | 6.9900000% | AAA/AAA/AAA/Aaa | 13.55 | September 15, 2020 |
| Class A-X Notes............. | 374,015,423 | 2.0011132% | AAAr/AAA/AAA/Aaa(6) | 9.93 | September 15, 2020 |
| Class B Notes .............. | 20,570,000 | 7.0500000% | AA/AA/AA/Aa3 | 14.07 | September 15, 2020 |
| Class C Notes .............. | 20,670,000 | 7.4100000% | A/A/A/A2 | 14.77 | September 15, 2020 |
| Class D Notes .............. | 13,090,000 | 7.6600000% | BBB/BBB/BBB/Baa2 | 15.90 | September 15, 2020 |
| Class E Notes .............. | 13,090,000 | 8.6640029% | BB/BB/NR/NR | 17.04 | September 15, 2020 |
| Class F Notes .............. | 5,610,000 | 8.6640029% | B/B/NR/NR | 17.93 | September 15, 2020 |
| Certificates(7) .............. | 18,705,423 | 5.9900000% | NR/NR/NR/NR | 19.06 | NA |
| Total Initial Aggregate Principal Amount and Certificate Balance ................. | $374,015,423 | | | | |

(1)  The Initial Balance is either the approximate Initial Aggregate Principal Amount, Initial Certificate Balance or Initial Notional Amount of the related Class of Securities.

(2)  The Note or Certificate Rate applicable to each security is either a fixed rate or weighted average pay-through rate ("WAPT Rates"). See "Summary—Interest" herein and Appendix A herein.

(3)  It is expected that the Class A Notes, Class A-X Notes, Class B Notes, Class C Notes and Class D Notes (the "Senior Notes"), will be rated by S&P, DCR, Fitch IBCA and Moody's. It is expected that the Class E Notes and Class F Notes will be rated by S&P and DCR. The Certificates will not be rated. See "Summary—Rating" herein.

(4)  Assuming no prepayments or accelerations.

(5)  Determined on the assumptions described herein under "Description of the Notes–Rated Final Distribution Date" herein.

(6)  The Rating for the Class A-X Notes is "AAAr" by S&P. See "Special Considerations–The Securities–Ratings" herein.

(7)  The Certificates are not offered hereby.

The Notes are offered by the Initial Purchasers, when, as and if issued by the Issuer delivered to and accepted by the Initial Purchasers and subject to their right to reject orders in whole or in part. It is expected that delivery of the Notes will be made in book-entry form through the facilities of The Depository Trust Company, which may include (for the Senior Notes) delivery through Cedel Bank, société anonyme, and the Euroclear System as participants of The Depository Trust Company on or about September 23, 1998, against payment in immediately available funds.

## Credit Suisse First Boston

### Morgan Stanley Dean Witter

### PaineWebber Incorporated

Confidential Offering Circular dated September 18, 1998

Chksum:  54628

→ **Issuer**.......................................... FMAC Loan Receivables Trust 1998-C, a special purpose **Delaware** business trust (the **"Issuer"**) under Chapter 38 of the Delaware Code (**"Business Trust Law"**) formed pursuant to the Trust Agreement among Wilmington Trust Company, a Delaware banking corporation, as Issuer Trustee, FMAC Franchisee Finance Corp., a special purpose Delaware corporation, as the Holder of the Designated Certificate, and Franchise Mortgage Acceptance Company, a Delaware corporation, as Originator. See "Description of the Issuer" herein. The purposes and powers of the Issuer generally are limited to purchasing and holding the Loans, selling the Securities and activities incidental thereto. The offices of the Issuer are c/o Wilmington Trust Company, Rodney Square North, 1100 N. Market Street, Wilmington, Delaware 19890. Attention: Corporate Trust Administration.

**Originator**................................ Franchise Mortgage Acceptance Company, a Delaware corporation (**"FMAC"** or the **"Originator"**). The Originator originated or acquired the Loans which, it is contributing to the Issuer pursuant to the Contribution Agreement. Certain Loans have been acquired from Credit Suisse First Boston Corporation, one of the Initial Purchasers, or one of its affiliates. See "The FMAC Loan Programs" and "The Loans" herein. FMAC's headquarters is located at 1888 Century Park East, 3rd Floor, Los Angeles, CA 90067.

**Servicer**.................................... FMAC is the Servicer of the Loans pursuant to the Servicing Agreement among the Issuer, U.S. Bank National Association, as Indenture Trustee, and the Servicer. The Servicer will service the Loans and have the duties and be entitled to the benefits and be subject to the liabilities provided under the Servicing Agreement. See "The Servicer" herein. The office of the Servicer is located at Three American Lane, Greenwich, Connecticut 06831.

**Designated Certificateholder** ................ FMAC Franchisee Finance Corp., a special purpose Delaware corporation, shall receive the Designated Certificate representing an ownership interest in the Issuer.

→ **Indenture Trustee** ................................... U.S. Bank National Association, a national banking association, is the Indenture Trustee pursuant to the terms of the Indenture of Trust between the Issuer and the Indenture Trustee. The Indenture Trustee will have the duties and be entitled to the benefits provided under the Indenture. See "Description of the Indenture" herein. The principal trust offices of the Indenture Trustee are located at First Trust Center, 180 E. Fifth Street, Saint Paul, Minnesota 55101.

**Administrator**.......................................... U.S. Bank National Association is the Administrator pursuant to the Administration Services Agreement among the Issuer, Servicer and the Administrator, and will, to the extent provided in the Administration Services Agreement, provide notices and perform other administrative obligations of the Issuer required by the Indenture and the Trust Agreement. The principal offices of the Administrator are located at First Trust Center, 180 E. Fifth Street, Saint Paul, Minnesota 55101.

**Securities**................................ The Securities consist of the Notes and the Certificates. Only the Notes are offered hereby. The Class E Notes and the Class F Notes will initially be purchased by FMAC. The Notes will be issued pursuant to the Indenture and will be secured by the Trust Estate. The Certificates will be issued by the Issuer pursuant to the Trust Agreement and will represent in the aggregate 100% of the beneficial interests in the Issuer and, for federal tax purposes, partnership

# EXHIBIT 10

*PRELIMINARY CONFIDENTIAL OFFERING CIRCULAR*

$275,836,581

### FMAC Loan Receivables Trust 1998-D
### FMAC Loan Receivables Notes, Series 1998-D
### FMAC Franchise Receivables Corp.
*Seller*

### Franchise Mortgage Acceptance Company
*Originator and Servicer*

The FMAC Loan Receivables Notes, Series 1998-D (collectively, the "Notes") will consist of three classes (each, a "Class") as set forth in the table below. The Notes are obligations of FMAC Loan Receivables Trust 1998-D, a Delaware business trust (the "Issuer") formed pursuant to a Trust Agreement, dated as of December 1, 1998 (the "Trust Agreement"), between Wilmington Trust Company, as issuer trustee (the "Issuer Trustee") and FMAC Franchise Receivables Corp., a special purpose Delaware corporation, as seller (the "Seller"). The FMAC Loan Receivables Certificates, Series 1998-D (collectively, the "Certificates") will consist of a single class to be designated as set forth in the table below. The Certificates represent in the aggregate 100% of the beneficial interests in the Issuer and will be held by the Seller. Only the Notes are offered hereby. The Certificates are not offered pursuant to this Confidential Offering Circular ("Offering Circular"). The respective Classes of Notes offered hereby will be issued in the aggregate principal amounts and will accrue interest at the per annum rates set forth in the table below. The Notes and the Certificates are collectively referred to as the "Securities." Capitalized terms used herein have the meanings ascribed to such terms in Appendix A hereto. For a discussion of certain risks associated with an investment in the Notes, see "Special Considerations" herein.

On or before the date of issuance of the Notes, the Issuer will obtain from Financial Security Assurance Inc. (the "Note Insurer") a Financial Guaranty Insurance Policy (the "Note Insurance Policy") which will, subject to its terms, protect the holders of certain of the Class A Notes against any interest shortfalls (except as described herein) allocated to the Class A Notes and guarantee the ultimate payment of the principal on the Class A Notes. See "Description of the Notes—Note Insurance Policy" herein.

[FSA Logo]

THE SECURITIES DO NOT REPRESENT OBLIGATIONS OF THE ORIGINATOR, THE SELLER, THE ISSUER TRUSTEE, THE INDENTURE TRUSTEE, THE ADMINISTRATOR, THE CERTIFICATE PAYING AGENT, THE INITIAL PURCHASERS, THE SERVICER (ALL AS DEFINED HEREIN), OR ANY OF THEIR RESPECTIVE AFFILIATES, OFFICERS, DIRECTORS, SHAREHOLDERS, MEMBERS, PARTNERS, EMPLOYEES, REPRESENTATIVES OR AGENTS. NEITHER THE NOTES, THE CERTIFICATES NOR THE LOANS ARE INSURED OR GUARANTEED BY ANY GOVERNMENTAL AGENCY OR INSTRUMENTALITY. THE NOTES AND CERTIFICATES ARE PAYABLE SOLELY FROM THE TRUST ESTATE, AND PROSPECTIVE INVESTORS SHOULD MAKE AN INVESTMENT DECISION BASED UPON AN ANALYSIS OF THE SUFFICIENCY OF THE TRUST ESTATE.

THE NOTES HAVE NOT BEEN AND WILL NOT BE REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "1933 ACT") OR ANY APPLICABLE STATE SECURITIES LAWS AND NO NOTEHOLDER WILL HAVE THE RIGHT TO REQUIRE SUCH REGISTRATION. THE NOTES ARE BEING OFFERED AND SOLD ONLY (1) OUTSIDE OF THE UNITED STATES WITHIN THE MEANING OF, AND IN COMPLIANCE WITH, REGULATION S UNDER THE 1933 ACT ("REGULATION S"), OR (2) TO QUALIFIED INSTITUTIONAL BUYERS (AS DEFINED IN RULE 144A UNDER THE 1933 ACT) IN RELIANCE ON THE EXEMPTION FROM THE REGISTRATION REQUIREMENTS OF THE 1933 ACT PROVIDED BY RULE 144A OR OTHERWISE IN TRANSACTIONS EXEMPT FROM THE REGISTRATION REQUIREMENTS OF THE 1933 ACT. EXCEPT AS DESCRIBED IN THE PRECEDING CLAUSE (2), NO SECURITIES MAY BE OFFERED, SOLD OR DELIVERED, DIRECTLY OR INDIRECTLY, WITHIN THE UNITED STATES OR TO, OR FOR THE ACCOUNT OF, U.S. PERSONS (AS DEFINED IN REGULATION S). FOR CERTAIN RESTRICTIONS ON RESALES, SEE "TRANSFER RESTRICTIONS."

| | Initial Balance (1) | Note Rate (2) | Rating(3)<br>S&P/DCR/Fitch IBCA/Moody's | Expected Average<br>Life (years) (4) | Rated Final Payment<br>Date (5) |
|---|---|---|---|---|---|
| Class A-1 Notes | $71,485,000 | | AAA/AAA/AAA/Aaa | 3.00 | December 1, 2019 |
| Class A-2 Notes | $65,494,000 | | AAA/AAA/AAA/Aaa | 7.00 | December 1, 2019 |
| Class A-3 Notes | $134,720,000 | | AAAAAA/AAA/Aaa | 11.49 | December 1, 2019 |
| Certificates (6) | $4,137,581 | | NR | 14.14 | N/A |
| Total Initial Aggregate Principal Amount and Certificate Balance | $275,836,581 | | | | |

(1)  The Initial Balance is either the approximate Initial Aggregate Principal Amount or Initial Certificate Balance of the Class of Securities.
(2)  The Note Rate is a fixed rate. See "Summary — Interest" herein and Appendix A hereto.
(3)  It is expected that the Class A Notes will be rated by S&P, DCR, Fitch IBCA and Moody's. The Certificates will not be rated. See "Summary — Rating" herein.
(4)  Assuming no prepayments.
(5)  Determined on the assumptions described herein under "Description of the Notes — Rated Final Payment Date" herein.
(6)  The Certificates are not offered hereby.

The Notes are offered by the Initial Purchasers, when, as and if issued by the Issuer, delivered to and accepted by the Initial Purchasers and subject to their right to reject orders in whole or in part. It is expected that delivery of the Notes will be made in book-entry form through the facilities of The Depository Trust Company, which may include delivery through Cedel Bank, société anonyme, and the Euroclear System as participants of The Depository Trust Company on or about December __, 1998, against payment in immediately available funds.

### CREDIT SUISSE FIRST BOSTON

### MORGAN STANLEY DEAN WITTER

### DEUTSCHE BANK SECURITIES, INC.

*Preliminary Confidential Offering Circular dated December 1, 1998*

1

*PRELIMINARY CONFIDENTIAL OFFERING CIRCULAR*

## SUMMARY

The following summary of certain pertinent information is qualified in its entirety by reference to the detailed information appearing elsewhere in this Offering Circular. Reference is made to Appendix A hereto for the definitions of certain capitalized terms used herein.

| Class | Rating(1) S&P/DCR/ Fitch IBCA/ Moody's | Initial Balance | Coupon Description | Note Rate | Expected Average Life (years)(2) | Principal Payment Window (2) |
|---|---|---|---|---|---|---|
| A-1 | AAA/AAA/AAA/ Aaa | $71,485,000 | fixed | | 3.00 | 1/99-3/04 |
| A-2 | AAA/AAA/AAA/ Aaa | $65,494,000 | fixed | | 7.00 | 3/04-7/07 |
| A-3 | AAA/AAA/AAA/ Aaa | $134,720,000 | fixed | | 11.49 | 7/07-1/13 |
| Certificates(3) | NR | $4,137,581 | N/A | | 14.14 | 1/13-2/13 |

(1) It is expected that the Class A Notes will be rated by S&P, DCR, Fitch IBCA and Moody's.
(2) Based on prepayment assumption of 0% CPR (as described in "The Loans—Weighted Average Life" herein).
(3) The Certificates are not offered hereby.

→ **Issuer**...................................................... FMAC Loan Receivables Trust 1998-D, a special purpose Delaware business trust (the **"Issuer"**) under Chapter 38 of the Delaware Code (**"Business Trust Law"**) formed pursuant to the Trust Agreement between Wilmington Trust Company, a Delaware banking corporation, as Issuer Trustee and FMAC Franchise Receivables Corp., a special purpose Delaware corporation, as the Seller. See "Description of the Issuer" herein. The purposes and powers of the Issuer generally are limited to purchasing and holding the Loans, selling the Securities and activities incidental thereto. The offices of the Issuer are c/o Wilmington Trust Company, Rodney Square North, 1100 N. Market Street, Wilmington, Delaware 19890. Attention: Corporate Trust Administration.

**Originator**................................................ Franchise Mortgage Acceptance Company, a Delaware corporation (**"FMAC"** or the **"Originator"**). The Originator originated the Loans which it is selling to the Seller pursuant to the Purchase and Sale Agreement. See "The FMAC Loan Programs" and "The Loans" herein. FMAC's headquarters is located at 1888 Century Park East, 3rd Floor, Los Angeles, CA 90067.

**Servicer**.................................................... FMAC is the Servicer of the Loans pursuant to the Servicing Agreement among the Issuer, U.S. Bank National Association, as Indenture Trustee, and the Servicer. The Servicer will service the Loans and have the duties and be entitled to the benefits and be subject to the liabilities provided under the Servicing Agreement. See "The Servicer" herein. The office of the Servicer is located at Three American Lane, Greenwich, Connecticut 06831.

**Seller** ...................................................... FMAC Franchise Receivables Corp., a special purpose Delaware corporation (the "Seller") shall purchase the Loans from FMAC pursuant to the Purchase and Sale Agreement and immediately transfer the Loans to the Issuer pursuant to the Sale and Assignment Agreement. The Seller will assign to the Issuer the benefit of certain representations and warranties relating to the Loans made by FMAC

under the Purchase and Sale Agreement.

**Indenture Trustee** ..................................... U.S. Bank National Association, a national banking association, is the Indenture Trustee pursuant to the terms of the Indenture of Trust among the Issuer, the Indenture Trustee and the Servicer. The Indenture Trustee will have the duties and be entitled to the benefits provided under the Indenture. See "Description of the Indenture" herein. The principal trust offices of the Indenture Trustee are located at First Trust Center, 180 E. Fifth Street, Saint Paul, Minnesota 55101.

**Note Insurer** ............................................ Financial Security Assurance Inc. (the "Note Insurer") is the Note Insurer pursuant to the Insurance and Indemnity Agreement among the Issuer, the Originator, the Servicer and the Note Insurer, and will, to the extent provided in the Note Insurance Policy, insure the ultimate payment of principal and the current payment of interest on the Class A Notes. See "The Note Insurer" herein. The Note Insurer's principal executive offices are located at 350 Park Avenue, New York, New York 10022.

**Administrator** .......................................... U.S. Bank National Association is the Administrator pursuant to the Administration Services Agreement among the Issuer, Servicer and the Administrator, and will, to the extent provided in the Administration Services Agreement, provide notices and perform other administrative obligations of the Issuer required by the Indenture and the Trust Agreement. The principal offices of the Administrator are located at First Trust Center, 180 E. Fifth Street, Saint Paul, Minnesota 55101.

**Securities** .................................................. The Securities consist of the Notes and the Certificates. Only the Notes are offered hereby. The Notes will be issued pursuant to the Indenture and will be secured by the Trust Estate. The Certificates will be issued by the Issuer pursuant to the Trust Agreement and will represent in the aggregate 100% of the beneficial interests in the Issuer. Payments in respect of the Securities will be made in the amounts and in the priority described below under the caption "Distributions on the Notes." See the table of the first page of this "Summary."

**Cut-Off Date** ........................................... The Cut-Off Date is December 1, 1998.

**Closing Date** ............................................ The Closing Date is on or about December __, 1998.

**Payment Date** .......................................... The Payment Date is the 15th day of each month or, if any such 15th day is not a Business Day, then the next succeeding Business Day, commencing on January 15, 1999.

**Due Period** ............................................... Due Period shall mean, with respect to a Payment Date, the period from and including the second day of the calendar month preceding the month in which such Payment Date occurs through and including the first day of the calendar month in which such Payment Date occurs.

**Interest Calculation** ................................. Interest on the Notes is calculated on the basis of a 360-day year consisting of twelve 30-day months.

# EXHIBIT 11

*$268,171,670*

# FMAC Loan Receivables Trust 2000-A
## FMAC Loan Receivables Notes, Series 2000-A
## FMAC Franchise Receivables Corp.
*Seller*

## Bay View Franchise Mortgage Acceptance Company
*Originator and Servicer*

The FMAC Loan Receivables Notes, Series 2000-A (collectively, the "Notes") will consist of three classes (each, a "Class") as set forth in the table below. The Notes are obligations of FMAC Loan Receivables Trust 2000-A, a Delaware business trust (the "Issuer") formed pursuant to a Trust Agreement, dated as of April 1, 2000 (the "Trust Agreement"), between Wilmington Trust Company, as issuer trustee (the "Issuer Trustee") and FMAC Franchise Receivables Corp., a special purpose Delaware corporation, as seller (the "Seller"). The FMAC Loan Receivables Certificates, Series 2000-A (collectively, the "Certificates") will consist of a single class to be designated as set forth in the table below. The Certificates represent in the aggregate 100% of the beneficial interests in the Issuer and will be held by the Seller. Only the Notes are offered hereby. The Certificates are not offered pursuant to this Confidential Offering Circular ("Offering Circular"). The respective Classes of Notes offered hereby will be issued in the aggregate principal amounts and will accrue interest at the per annum rates set forth in the table below. The Notes and the Certificates are collectively referred to as the "Securities." Capitalized terms used herein have the meanings ascribed to such terms in Appendix A hereto. For a discussion of certain risks associated with an investment in the Notes, see "Special Considerations" herein.

On or before the date of issuance of the Notes, the Issuer will obtain from Financial Security Assurance Inc. (the "Note Insurer") a financial guaranty insurance policy (the "Note Insurance Policy"), which will, subject to its terms, protect the holders of certain of the Class A Notes against any interest shortfalls (except as described herein) allocated to the Class A Notes and guarantee the ultimate payment of the principal on the Class A Notes. See "Description of the Notes—Note Insurance Policy" herein.

**⊞FSA**

THE SECURITIES DO NOT REPRESENT OBLIGATIONS OF THE ORIGINATOR, THE SELLER, THE ISSUER TRUSTEE, THE INDENTURE TRUSTEE, THE ADMINISTRATOR, THE CERTIFICATE PAYING AGENT, BVB, BVCC, THE SERVICER (ALL AS DEFINED HEREIN), OR ANY OF THEIR RESPECTIVE AFFILIATES, OFFICERS, DIRECTORS, SHAREHOLDERS, MEMBERS, PARTNERS, EMPLOYEES, REPRESENTATIVES OR AGENTS. NEITHER THE NOTES, THE CERTIFICATES NOR THE LOANS ARE INSURED OR GUARANTEED BY ANY GOVERNMENTAL AGENCY OR INSTRUMENTALITY.   THE NOTES AND CERTIFICATES ARE PAYABLE SOLELY FROM THE TRUST ESTATE, AND PROSPECTIVE INVESTORS SHOULD MAKE AN INVESTMENT DECISION BASED UPON AN ANALYSIS OF THE SUFFICIENCY OF THE TRUST ESTATE.

THE NOTES HAVE NOT BEEN AND WILL NOT BE REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "1933 ACT") OR ANY STATE SECURITIES LAWS AND NO NOTEHOLDER WILL HAVE THE RIGHT TO REQUIRE SUCH REGISTRATION. THE NOTES ARE BEING OFFERED AND SOLD ONLY TO QUALIFIED INSTITUTIONAL BUYERS (AS DEFINED IN RULE 144A UNDER THE 1933 ACT) IN RELIANCE ON THE EXEMPTION FROM THE REGISTRATION REQUIREMENTS OF THE 1933 ACT PROVIDED BY RULE 144A OR OTHERWISE IN TRANSACTIONS EXEMPT FROM THE REGISTRATION REQUIREMENTS OF THE 1933 ACT."

| | Initial Balance (1) | Note Rate (2) | Rating(3) S&P/Moody's | Expected Average Life (years) (4) | Rated Final Payment Date (5) |
|---|---|---|---|---|---|
| Class A-1 Notes | $ 63,020,343 | 6.85% | AAA/Aaa | 2.10 | September 15, 2020 |
| Class A-2 Notes | $ 67,042,918 | 6.85% | AAA/Aaa | 5.47 | September 15, 2020 |
| Class A-3 Notes | $134,085,835 | 6.85% | AAA/Aaa | 9.50 | September 15, 2020 |
| Certificates (6) | $ 4,022,574 | N/A | NR | 11.91 | N/A |
| Total Initial Aggregate Principal Amount and Certificate Balance | $268,171,670 | | | | |

(1)   The Initial Balance is either the approximate Initial Aggregate Principal Amount or Initial Certificate Balance of the Class of Securities.
(2)   The Note Rate is a fixed rate but is subject to decrease upon the occurrence of certain events described herein.   See "Summary — Interest" herein and Appendix A hereto.
(3)   It is expected that the Class A Notes will be rated by S&P and Moody's. The Certificates will not be rated. See "Summary — Rating" herein.
(4)   Assuming no prepayments.
(5)   Determined on the assumptions described herein under "Description of the Notes — Rated Final Payment Date" herein.
(6)   The Certificates are not offered hereby.

*Confidential Offering Circular dated April 27, 2000*

## SUMMARY

The following summary of certain pertinent information is qualified in its entirety by reference to the detailed information appearing elsewhere in this Offering Circular. Reference is made to Appendix A hereto for the definitions of certain capitalized terms used herein.

| Class | Rating(1) S&P/Moody's | Initial Balance | Coupon Description | Note Rate(2) | Expected Average Life (years)(3) | Principal Payment Window (3) |
|---|---|---|---|---|---|---|
| A-1 | AAA/Aaa | $ 63,020,343 | fixed | 6.85% | 2.10 | 5/00 – 3/04 |
| A-2 | AAA/Aaa | $ 67,042,918 | fixed | 6.85% | 5.47 | 3/04 – 4/07 |
| A-3 | AAA/Aaa | $134,085,835 | fixed | 6.85% | 9.50 | 4/07 – 3/12 |
| Certificates(4) | NR | $ 4,022,574 | N/A | N/A | 11.91 | 3/12 – 4/12 |

(1)  It is expected that the Class A Notes will be rated by S&P and Moody's.
(2)  The Note Rate is a fixed rate but is subject to decrease upon the occurrence of certain events described herein.  See "Summary — Interest" herein and Appendix A hereto.
(3)  Based on prepayment assumption of 0% CPR (as described in "The Loans—Weighted Average Life" herein).
(4)  The Certificates are not offered hereby.

**Issuer** ....................................................
FMAC Loan Receivables Trust 2000-A, a special purpose Delaware business trust (the **"Issuer"**) under Chapter 38 of the Delaware Code (**"Business Trust Law"**) formed pursuant to the Trust Agreement between Wilmington Trust Company, a Delaware banking corporation, as Issuer Trustee and FMAC Franchise Receivables Corp., a special purpose Delaware corporation, as the Seller.  See "Description of the Issuer" herein.  The purposes and powers of the Issuer generally are limited to purchasing and holding the Loans, selling the Securities and activities incidental thereto.  The offices of the Issuer are c/o Wilmington Trust Company, Rodney Square North, 1100 N. Market Street, Wilmington, Delaware 19890.  Attention: Corporate Trust Administration.

**Originator** ...............................................
Bay View Franchise Mortgage Acceptance Company, a California corporation, or its predecessor entity, Franchise Mortgage Acceptance Company, a Delaware corporation (collectively, **"BVFMAC"** or the **"Originator"**).  The Originator originated the Loans and Bay View Capital Corporation (**"BVCC"**) will sell the Loans to the Seller pursuant to the Purchase and Sale Agreement.  See "The BVFMAC Loan Programs" and "The Loans" herein.  BVFMAC's headquarters is located at 1888 Century Park East, 3rd Floor, Los Angeles, CA 90067.

**Servicer**...................................................
BVFMAC is the Servicer of the Loans pursuant to the Servicing Agreement among the Issuer, U.S. Bank National Association, as Indenture Trustee, and the Servicer.  The Servicer will service the Loans and have the duties and be entitled to the benefits and be subject to the liabilities provided under the Servicing Agreement.  See "The Servicer" herein.  The office of the Servicer is located at Three American Lane, Greenwich, Connecticut 06831.

**Seller**......................................................
FMAC Franchise Receivables Corp., a special purpose Delaware corporation (the **"Seller"**) shall purchase the Loans from BVCC pursuant to the Purchase and Sale Agreement and immediately transfer the Loans to the Issuer pursuant to the Sale and Assignment Agreement.  The Seller will assign to the Issuer the benefit of certain

representations and warranties relating to the Loans made by BVCC under the Purchase and Sale Agreement.

**Indenture Trustee**..................................... U.S. Bank National Association, a national banking association, is the Indenture Trustee pursuant to the terms of the Indenture of Trust among the Issuer, the Indenture Trustee and the Servicer. The Indenture Trustee will have the duties and be entitled to the benefits provided under the Indenture. See "Description of the Indenture" herein. The principal trust offices of the Indenture Trustee are located at First Trust Center, 180 E. Fifth Street, Saint Paul, Minnesota 55101.

**Note Insurer**............................................ Financial Security Assurance Inc. (the **"Note Insurer"**) is the Note Insurer pursuant to the Insurance and Indemnity Agreement among the Issuer, the Originator, the Servicer, BVCC and the Note Insurer, and will, to the extent provided in the Note Insurance Policy, insure the ultimate payment of principal and the current payment of interest on the Class A Notes. See "The Note Insurer" herein. The Note Insurer's principal executive offices are located at 350 Park Avenue, New York, New York 10022.

**Administrator** ......................................... U.S. Bank National Association is the Administrator pursuant to the Administration Services Agreement among the Issuer, Servicer and the Administrator, and will, to the extent provided in the Administration Services Agreement, provide notices and perform other administrative obligations of the Issuer required by the Indenture and the Trust Agreement. The principal offices of the Administrator are located at First Trust Center, 180 E. Fifth Street, Saint Paul, Minnesota 55101.

**Securities** ................................................ The Securities consist of the Notes and the Certificates. Only the Notes are offered hereby. The Notes will be issued pursuant to the Indenture and will be secured by the Trust Estate. The Certificates will be issued by the Issuer pursuant to the Trust Agreement and will represent in the aggregate 100% of the beneficial interests in the Issuer. Payments in respect of the Securities will be made in the amounts and in the priority described below under the caption "Distributions on the Notes." See the table of the first page of this "Summary."

**Cut-Off Date** ............................................ The Cut-Off Date is April 1, 2000.

**Closing Date** ............................................. The Closing Date is on or about April 27, 2000.

**Payment Date**............................................ The Payment Date is the 15th day of each month or, if any such 15th day is not a Business Day, then the next succeeding Business Day, commencing on May 15, 2000.

**Due Period**................................................ Due Period shall mean, with respect to a Payment Date, the period from and including the second day of the calendar month preceding the month in which such Payment Date occurs through and including the first day of the calendar month in which such Payment Date occurs (or, if such day is not a Business Day, with respect to Loans due on such day the first Business Day thereafter).

**Interest Calculation**................................. Interest on the Notes is calculated on the basis of a 360-day year

# EXHIBIT 12

# AMERIC .N INTERNATIONAL COMPANIES®

Company to which Application is made (herein called the Company)

## SECURED CREDITOR IMPAIRED PROPERTY APPLICATION

*This is an application for a Claims-Made Policy*

Named Insured: **FMAC**

Post Office Address: **2049 Century-Park East, Suite 350**

City, State, Zip Code: **Los Angeles, CA  90067**

The following information must accompany this application:

☐ Audited financial statements for the past three years.

☐ Complete copy of your Commercial Credit Loan Policy Manual regarding new and refinanced loans secured by real estate.

1. Are you requesting coverage for existing loans? ( ) No  (✓)Yes  If Yes, please attach schedule of locations.

   Are you requesting coverage for new loans?  (✓)No  (✗)Yes

3. Limits/Deductible requested:

   **Deductible: Each Loss**
   - ☒ $10,000
   - ☐ $25,000
   - ☐ $50,000
   - ☐ $100,000
   - ☐ Other - Specify:
     _____

   **Limit Each Loss**
   - ☐ $1,000,000
   - ☐ $2,000,000
   - ☒ Other - Specify:
     5,000,000

   **Limit Total all Losses**
   - ☐ $5,000,000
   - ☐ $10,000,000
   - ☐ $20,000,000
   - ☐ $35,000,000
   - ☒ Other - Specify:
     25,000,000

4. At the time of the signing of this application, do you know any facts or circumstances which may reasonably be expected to result in a claim or claims being asserted against your company for Environmental Cleanup, or for Bodily Injury or Property Damage arising from the release of pollutants into the environment?  (✓)No  ( )Yes  If "Yes", attach details to application.

5. Provide the five (5) year historical default rate and foreclosure rate for all your commercial real estate loans. Please provide information in table below:

| Year | 19 92 | 19 93 | 19 94 | 19 95 | 19 96 |
|------|-------|-------|-------|-------|-------|
| fault Rate | O | O | O | O | O |

67773 (5/97)

Foreclosure Rate

6.    Define default as it is used in your commercial real estate loan documents.

Failure to pay schedule principal and interest payments as the come due which results in acceleration of the loan.

7.    Please attach environmental loss history for commercial real estate loans for the past five (5) years. If none, indicate here. (✓) No losses to report.

8.    Are there circumstances where you will require your borrowers to purchase environmental impairment insurance? ( ) No (✓) Yes   If "Yes" provide details.

In states where no state fund coverage exists

9.    Are there circumstances where you would require your borrowers to provide an environmental indemnity agreement? ( ) No (✓) Yes If "Yes" provide details including a sample indemnity agreement.

If there is one in place from the oil company the sold the borrower the property. We review the agreement to be sure it anures to our benefit

10.    What environmental information is required of borrowers?  Include copy of any related questionnaire, etc.

11.    What is the current average term of your commercial real estate loans when issued?   15.8 years

12.    What is the current actual average term of your commercial real estate loans?   15.8 years

13.    What percentage of your commercial real estate loans are balloon mortgages?   0 %

14.    What will be your current minimum loan to value ratio?   70
                                      maximum ?

15.    Do you acquire commercial real estate loans from other lenders? (✓) No ( ) Yes If "Yes" please describe your due diligence process when acquiring these loans.

67773 (5/97)                                      2

16.  Do you plan any changes   your current lending practices/proce   us? ( ✓ No   ( ) Yes
If "Yes", provide details including implementation plan/procedures schedule.

_____

_____

_____

17.  Within the past five (5) years, have you received any CERCLA information requests or have you been determined to be an owner and/or operator under the EPA's lender liability guidance? ( ✓ No   ( ) Yes  If "Yes", provide details.

_____

_____

_____

18.  Have you restructured any commercial real estate loan and/or not foreclosed on any property due to the presence of an environmental condition in the last (5) five years? ( ✓ No   ( ) Yes  If "Yes", provide details.

_____

_____

_____

19.  Complete the following tables for existing and/or new loans you are requesting insurance for.

## COMPOSITION OF EXISTING LOAN PORTFOLIO

LV = Loan Value

| PROPERTY TYPE | LV < $250K # of Loans | LV = $250K to $500K # of Loans | LV = 501K to $1MM # of Loans | LV = 1MM + # of Loans | Total Outstanding |
|---|---|---|---|---|---|
| Wholesale & Light Industrial | | | | | |
| Retail | 13 | 16 | 34 | 24 | 87 |
| Office and/or Hotel | | | | | |
| Habitational | | | | | |
| Other | | | | | |

37773 (5/97)

3

COMPOSITION OF PROJECTED NEW LOAN PORTFOLIO

| PROPERTY TYPE | LV < $250K # of Loans | LV = $250K to $500K # of Loans | LV = 501K to $1MM # of Loans | LV = 1MM + # of Loans |
|---|---|---|---|---|
| Wholesale & Light Industrial | | | | |
| Retail | | | | |
| Office and/or Hotel | | | | |
| Habitational | | | | |
| Other | | | | |

NOTICE TO NEW YORK APPLICANTS: "ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY OR OTHER PERSON FILES AN APPLICATION FOR INSURANCE OR STATEMENT OF CLAIM CONTAINING ANY MATERIALLY FALSE INFORMATION, CONCEALS FOR THE PURPOSE OF MISLEADING, INFORMATION CONCERNING ANY FACT MATERIAL THERETO, COMMITS A FRAUDULENT INSURANCE ACT, WHICH IS A CRIME, AND SHALL ALSO BE SUBJECT TO A CIVIL PENALTY NOT TO EXCEED FIVE THOUSAND DOLLARS AND THE STATED VALUE OF THE CLAIM FOR EACH SUCH VIOLATION."

NOTICE TO OHIO APPLICANTS: "ANY PERSON WHO, WITH INTENT TO DEFRAUD OR KNOWING THAT HE IS FACILITATING A FRAUD AGAINST AN INSURER, SUBMITS AN APPLICATION OR FILES A CLAIM CONTAINING A FALSE OR DECEPTIVE STATEMENT IS GUILTY OF INSURANCE FRAUD."

NOTICE TO KENTUCKY APPLICANTS: "ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY OR OTHER PERSON FILES AN APPLICATION FOR INSURANCE CONTAINING ANY MATERIALLY FALSE INFORMATION, OR CONCEALS FOR THE PURPOSE OF MISLEADING, INFORMATION CONCERNING ANY FACT MATERIAL THERETO, COMMITS A FRAUDULENT INSURANCE ACT, WHICH IS A CRIME."

NOTICE TO PENNSYLVANIA APPLICANTS: "ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY OR OTHER PERSON FILES AN APPLICATION FOR INSURANCE OR STATEMENT OF CLAIM CONTAINING ANY MATERIALLY FALSE INFORMATION OR CONCEALS FOR THE PURPOSE OF MISLEADING, INFORMATION CONCERNING ANY FACT MATERIAL THERETO, COMMITS A FRAUDULENT INSURANCE ACT, WHICH IS A CRIME AND SUBJECTS SUCH PERSON TO CRIMINAL AND CIVIL PENALTIES."

NOTICE TO NEW JERSEY APPLICANTS: "ANY PERSON WHO INCLUDES ANY FALSE OR MISLEADING INFORMATION ON AN APPLICATION FOR AN INSURANCE POLICY IS SUBJECT TO CRIMINAL AND CIVIL PENALTIES."

NOTICE TO FLORIDA APPLICANTS: "ANY PERSON WHO KNOWINGLY AND WITH INTENT TO INJURE, DEFRAUD, OR DECEIVE ANY INSURER FILES A STATEMENT OF CLAIM OR AN APPLICATION CONTAINING ANY FALSE, INCOMPLETE OR MISLEADING INFORMATION IS GUILTY OF A FELONY IN THE THIRD DEGREE."

NOTICE TO COLORADO APPLICANTS: "IT IS UNLAWFUL TO KNOWINGLY PROVIDE FALSE, INCOMPLETE, OR MISLEADING FACTS OR INFORMATION TO AN INSURANCE COMPANY FOR THE PURPOSE OF DEFRAUDING OR ATTEMPTING TO DEFRAUD THE COMPANY. PENALTIES MAY INCLUDE IMPRISONMENT, FINES, DENIAL OF INSURANCE, AND CIVIL DAMAGES. ANY INSURANCE COMPANY OR AGENT OF AN INSURANCE COMPANY WHO KNOWINGLY PROVIDES FALSE, INCOMPLETE, OR MISLEADING FACTS OR INFORMATION TO A POLICYHOLDER OR CLAIMANT FOR THE PURPOSE OF DEFRAUDING OR ATTEMPTING TO DEFRAUD THE POLICYHOLDER OR CLAIMANT WITH REGARD TO A SETTLEMENT OR AWARD PAYABLE FROM INSURANCE PROCEEDS SHALL BE REPORTED TO THE COLORADO DIVISION OF INSURANCE WITHIN THE DEPARTMENT OF REGULATORY AGENCIES."

NOTICE TO MINNESOTA APPLICANTS: "A PERSON WHO SUBMITS AN APPLICATION OR FILES A CLAIM WITH INTENT TO DEFRAUD OR HELPS COMMIT A FRAUD AGAINST AN INSURER IS GUILTY OF A CRIME."

BI... 3 (5/97)

The applicant represents that the above statements and facts are true and that no material facts have been suppressed or misstated.

COMPLETION OF THIS FORM DOES NOT BIND COVERAGE. Applicant's acceptance of Company's quotation and Company's written agreement to be bound are required to bind coverage and to issue policy. It agreed that this form shall be the basis of the contract should a policy be issued, and will be attached to the policy.

All written statements and materials furnished to the Company in conjunction with this application are hereby incorporated by reference into this application and made a part hereof.

If an order is received, the application is attached to the policy so it is necessary that all questions be answered in detail.

_____          _____
SIGNATURE OF APPLICANT                    DATE

Chris Kelleler     SVP
_____
PRINT NAME AND TITLE


_____
BROKER

_____

_____
ADDRESS OF BROKERAGE FIRM

_____
CONTACT PERSON AND TELEPHONE NUMBER

67/73 (5/97)                              5

EXHIBIT 13

 **AIG Environmental**
A Division of American International Companies®

1225 17th Street, Suite 1700
Denver, CO 80202
(303) 382-8500
Fax (303) 295-7461

12-Aug-98

Insurance Manager
Franchise Mortgage Acceptance Company
611 Anton Boulevard, Suite 500
Costa Mesa, CA 92628

Dear Insured:

Attached please find copies of the Environmental Impairment Liability Notice Of Loss/Notice Of Claim Form to be used in conjunction with your Environmental Impairment Liability policy. Because of the uniqueness of this particular type of coverage, we have established special claims reporting guidelines to expedite claims handling and provide you with the best service possible.

Please use the attached form when filing all claims and mail to the Claims Department located in New York, New York along with a copy to the Pollution Liability Department. (Addresses on attached form.)

We feel that the established reporting guidelines will result in the proper and professional handling of these unique claims and will be a benefit to both of us.

Thank you for choosing American International Companies.

Sincerely,

Travis McManigal
Underwriting Assistant
Pollution Liability

Enc.

# EXHIBIT 14

AUG 24 1998 09:17 FR AIG ENVIRONMENTAL     303 295 7461 TO 17144442547     P.02/03

**AIG**     **AIG Environmental**
A Division of American International Companies*

1225 17th Street
Suite 1700
Denver, CO 80202
Tel: 303.382-8500
Fax: 303.295-7461

August 21, 1998

*VIA FAX*

Mr. Michael Moffett
FMAC Insurance Services, Inc.
9 Campus Drive
Parsippany, NJ 07054

RE:    **FMAC Master Policy 2**
       **Secured Creditor Portfolio Binder - REVISED**
       *Policy # SC-5295857*
       *Effective Dates: June 26, 1998 to June 26, 2018*

Dear Mr. Moffett,

We are pleased to provide the following binder for the above referenced account.
Coverage is provided using the Commerce & Industry Insurance Company Secured
Creditor Impaired Property Policy form #67778 (6/97).

## Coverage Limit of Liability

| | |
|---|---|
| Each Loss | $2,000,000 |
| Total All Losses | $35,000,000 |
| Deductible | $10,000 |
| Policy Term | 20 years |
| Estimated Premium | $99,800 per pool of 150 properties<br>Based on 600 properties per year |
| Total Estimated Premium for 1 Year<br>(based on 4 pools per year securitizing) | $399,200 |
| Deposit Premium | $0 |

## Premium per Property

| | |
|---|---|
| **Loans under $500,000 with UST's** | $442.00 |
| **Loans over $500,001 with UST's** | $777.00 |
| **Lube Centers** | $300.00 |
| **390 site Duke & Long Deal w/indemnity** | $460.00 |

**NOTE 1:** We assume that after one years time has passed we will have 4 pools extracted from the master policy and securitized, thereby creating their own (for a total of 4 policies) policy with 2MM/35MM limits with a $10,000 deductible for 20 years. The premiums above also assume that the master policy will remain in place for a period of one year from the inception date. After that period of time has passed further negotiations can proceed for a new master policy. The above premiums include all the necessary costs and fees to perform this service.

**NOTE 2:** The premium to move properties from the original master policy SC-4177406 to the new master policy is: $20 per property.

**NOTE 3:** We will give a premium credit to borrowers who have an excellent credit rating. These figures will be determined at a later date. Please note that until this is put into effect there will be no premium credit. In addition, we will not adjust this retroactively.

**NOTE 4:** Like the other policies in place, this binder assumes that the environmental review of borrowers will continue to take place by FMAC. In addition, we assume, that the guidelines (decision tree) for approving sites will remain in force. Audits will continue to take place biannually.

**NOTE 5:** It is assumed that all lube center (ASTs only) environmental documentation will be submitted to us for review. A letter authorizing coverage for the sites should be received by FMAC before closing on them.

**The following is required to be received by AIG within 10 days:**

1. An original completed and signed Secured Creditor Pollution application.

Please feel free to contact me with any questions.

Sincerely,

Eric D. Rosenblum
Risk Analyst, Commercial Real Estate
Environmental Programs Unit

cc:     Beki Sullivan, AIG Environmental
         Denis McCarthy, AIG Environmental