UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

COMMERCE AND INDUSTRY INSURANCE
COMPANY and AMERICAN INTERNATIONAL
SPECIALTY LINES INSURANCE COMPANY,

                Plaintiffs,

-against-

U.S. BANK NATIONAL ASSOCIATION, AS
INDENTURE TRUSTEE FOR THE REGISTERED
HOLDERS OF FMAC LOAN RECEIVABLES
TRUSTS 1997-B, 1998-B, 1998-C, 1998-D AND
2000-A,

                Defendant.

Civil Action No. 1:07-CV-5731
(JGK)(RLE)

(Oral Argument Requested)

## REPLY MEMORANDUM OF LAW IN FURTHER
## SUPPORT OF PLAINTIFFS' MOTION TO DISMISS

STEPTOE & JOHNSON LLP
750 Seventh Avenue
Suite 1900
New York, New York 10019
(212) 506-3900

December 17, 2007

*Attorneys for Plaintiffs/Counterclaim Defendants
American International Specialty Lines Insurance
Company and Commerce & Industry Insurance
Company*

# TABLE OF CONTENTS

**Table of Contents** ............................................................................................................. i

**Table of Authorities** ......................................................................................................... ii

**INTRODUCTION** ............................................................................................................ 1

**ARGUMENT** .................................................................................................................... 2

    I.      The Court May Grant a Motion to Dismiss Involving Choice of Law Determinations ................................................................................................... 2

    II.     New York Law Applies to U.S. Bank's Bad Faith Claims ........................................ 3

         A.    U.S. Bank's Bad Faith Claim Is Subject to the Policies' Choice of Law Provision ................................................................................................ 3

         B.    U.S. Bank's Claim for Bad Faith Is Inextricably Intertwined with Its Breach of Contract Claim and Must Be Decided Under New York Law .......... 5

    III.    Applying New York's Choice of Law Rules Results in Application of New York Law to U.S. Bank's Bad Faith Claim ............................................................. 7

    IV.    New York Law Applies to the Three Claims Brought Under the AISLIC Policy ........................................................................................................... 9

**CONCLUSION** ............................................................................................................... 10

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Allis-Chalmers Corp. v. Lueck*,
   471 U.S. 202 (1985) ..................................................................................................6, 7

*Fasolino Foods Co. v. Banca Nazionale del Lavoro*,
   961 F.2d 1052 (2d Cir. 1992) .........................................................................................5

*Globe Commc'ns Corp. v. R.C.S. Rizzoli Periodici, S.p.A.*,
   729 F. Supp. 973 (S.D.N.Y. 1990) ................................................................................8

*Guebara v. Allstate Ins. Co.*,
   237 F.3d 987 (9th Cir. 2001) .........................................................................................5

*Harris v. Provident Life and Acc. Ins. Co.*,
   310 F.3d 73 (2d Cir. 2002) .............................................................................................5

*Home Ins. Co. v. Serv. Am. Corp.*,
   654 F. Supp. 157 (N.D. Ill. 1987) ..................................................................................7

*In Re IAC/InterActive Corp. Secs. Litig.*,
   478 F. Supp.2d 574 (S.D.N.Y. 2007) ............................................................................3

*In re Payroll Express Corp.*,
   921 F. Supp. 1121 (S.D.N.Y. 1996) ..............................................................................6

*Krock v. Lipsay*,
   97 F.3d 640 (2d Cir. 1996) .............................................................................................4

*Lafarge Corp. v. Nat'l Union Fire Ins. Co.*,
   935 F. Supp. 675 (D. Md. 1996) ....................................................................................7

*New York Univ. v. Continental Ins. Co.*,
   87 N.Y.2d 308 (1995) ................................................................................................4, 5

*Phila. Parking Auth. v. Fed. Ins. Co.*,
   385 F. Supp. 2d 280 (S.D.N.Y. 2005) .......................................................................2, 3

*Pickett v. Lloyd's*,
   621 A.2d 445 (N.J. 1993) ..............................................................................................5

*Schwartz v. Twin City Fire Ins. Co.*,
   492 F. Supp. 2d 308 (S.D.N.Y. 2007) .......................................................................6, 7

*Tackett v. State Farm Fire and Cas. Ins. Co.*,
   653 A.2d 254 (Del. 1995) ................................................................................................5

Plaintiffs Commerce and Industry Insurance Company ("C&I") and American International Specialty Lines Insurance Company ("AISLIC") (collectively "Insurers") respectfully submit this Reply Memorandum of Law in Support of Its Motion to Dismiss.

## INTRODUCTION

Defendant U.S. Bank National Association, as Indenture Trustee for the Registered Holders of FMAC Loan Receivables Trusts 1997-B, 1998-B, 1998-C, 1998-D and 2000-A ("U.S. Bank") urges in hypothetical terms that "it is possible" that a court could determine that a party's bad faith claim and contract claim are governed by different state laws. Remarkably, U.S. Bank does not cite a single case in which a court has actually done so. Its failure to support its most fundamental argument is not surprising, however, as U.S. Bank's bad faith and punitive damages claims must be considered together with its breach of contract claim for choice of law purposes. The court's task in deciding Insurers' motion to dismiss, therefore, is simple: it must determine the state law that governs the breach of contract claim. This analysis is uncomplicated here because U.S. Bank concedes, as it must, that the New York choice of law provision set forth in the five Secured Creditor Impaired Property ("SCIP") polices issued by C&I ("C&I policies") governs the breach of contract claims found in U.S. Bank's First Claim for Relief.

U.S. Bank's bad faith claim arises out of its contract claim under applicable law and, as a result, the same state law that governs the contract claim – New York's – also applies to the bad faith claim. As Insurers explained in their initial memorandum in support of their motion to dismiss, New York law does not recognize a claim of bad faith refusal to pay. In its reply, U.S. Bank openly accepts this fact. *See* Def. Opp. at 7, 12 n.4 ("Plaintiffs cited *Wiener 1* for the unremarkable proposition that New York does not recognize bad faith claims.").

In seeking to avoid the consequence of New York law, U.S. Bank, in its opposition brief, engages in a protracted and disjointed discussion of the different types of contacts the SCIP policies have with various jurisdictions.[1] U.S. Bank's needless digression and flood of exhibits is intended solely to muddy the waters and divert the court's attention from the applicable law and a simple disposition of this matter. The Court should reject U.S. Bank's arguments and grant Insurers' motion to dismiss because New York law applies to U.S. Bank's bad faith claim and does not recognize a separate claim for bad faith refusal to pay.

## ARGUMENT

### I. The Court May Grant a Motion to Dismiss Involving Choice of Law Determinations

Despite its introduction of extrinsic evidence and its terse discussion of the availability of remedies for bad faith in other jurisdictions, U.S. Bank does not take any position on the law applicable to its bad faith claim. Rather, U.S. Bank implies that the court should not grant Insurers' motion because choice of law concerns are implicated. The court need not resort to extrinsic evidence or engage in the "significant contacts" choice of law analysis that U.S. Bank advocates. In fact, no choice of law analysis is required because the contract specifies the law that applies. This court need only examine the applicable law, the pleadings (including the plain language of the SCIP policies referenced therein) and U.S. Bank's admissions to determine that New York law governs both U.S. Bank's breach of contract claim and its bad faith claim.

Even if a choice of law analysis were required, however, the Court may still grant the Insurer's motion to dismiss. *Phila. Parking Auth. v. Fed. Ins. Co.*, 385 F. Supp. 2d 280, 285-86 (S.D.N.Y. 2005) (dismissing claims for breach of contract and bad faith under Rule 12(b)(6) of

---

[1] Although U.S. Bank instructs the court that it may neither consider extrinsic evidence nor convert Insurers' Motion to Dismiss to a Rule 56 motion for summary judgment, it attaches a variety of exhibits containing extrinsic evidence to its opposition brief. Given U.S. Bank's instruction, all of the truly extrinsic evidence must be ignored.

the Federal Rules of Civil Procedure after conducting a choice of law analysis and determining that Pennsylvania law applied to the case). If deemed necessary to support its dismissal of U.S. Bank's bad faith claim, the court may consider both the language of the SCIP policies at issue and documents relied upon in the drafting of the complaint. *See In Re IAC/InterActive Corp. Secs. Litig.*, 478 F. Supp.2d 574, 585 (S.D.N.Y. 2007). In any event, U.S. Bank's attempt to suggest that the court is somehow precluded from granting a motion to dismiss because U.S. Bank's opposition includes new and irrelevant allegations and arguments is invalid.

II.  **New York Law Applies to U.S. Bank's Bad Faith Claims**

    A.  **U.S. Bank's Bad Faith Claim Is Subject to the Policies' Choice of Law Provision**

U.S. Bank concedes that if New York law is applied to its "Second Claim of Relief for Bad Faith Refusal to Pay," it has failed to state a claim upon which relief can be granted under New York law. *See* Def. Resp. at 7 ("U.S. Bank acknowledges that New York law generally does not recognize a claim for an insurer's bad faith refusal to pay benefits"). In the face of this reality, U.S. Bank engages in a results-driven attempt to avoid the application of the clear choice of law provision – and thus, New York law – to its claims. Its effort falls well short of this end.

The "Choice of Law and Forum" provision in the five C&I policies requires application of New York substantive law to the resolution of the Insurers' Motion. *See* 2d Amd. Cmplt. at ¶10 (bold in original). U.S. Bank concedes that the Choice of Law and Forum provision in the C&I policies requires application of New York substantive law to the "meaning, interpretation [and] operation of the terms, conditions, definitions, [and] provisions of the policies." *See* Def. Resp. at 10. It accordingly does not, and cannot, dispute that this provision establishes New York law as controlling U.S. Bank's breach of contract claim. Instead, U.S. Bank argues,

without citation, that its bad faith claim is "separately pled" and "involves facts and evidence unrelated to the contract interpretation itself." *See* Def. Resp. at 11.

The distinctions U.S. Bank contrive between its breach of contract and bad faith claims are meaningless as a matter of law and belied by its own pleading. Tellingly, although U.S. Bank asserts that "it is possible that the law applied to the bad faith claim may be a different state's law than that applied to the breach of contract claim," *id.* at 8, U.S. Bank does not cite a single authority for the proposition that a valid choice of law provision relating to the contract should be ignored in connection with a bad faith insurance claim arising from that contract. U.S. Bank's reliance on cases discussing promissory estoppel, extra-contractual setoff rights and fraud is misplaced.[2]

An action for bad faith refusal to pay insurance benefits arises from the covenant of good faith and fair dealing implicit in all insurance contracts. *New York Univ. v. Continental Ins. Co.*, 87 N.Y.2d 308, 318 (1995).[3] Accordingly, a claim for bad faith is properly characterized as a breach of contract claim involving an "additional and exemplary remedy." *Id.* at 316; *see also Harris v. Provident Life and Acc. Ins. Co.*, 310 F.3d 73, 80 (2d Cir. 2002) ("Under New York law, parties to an express contract are bound by an implied duty of good faith, but breach of that duty is merely a breach of the underlying contract.") (quoting *Fasolino Foods Co. v. Banca Nazionale del Lavoro*, 961 F.2d 1052, 1056 (2d Cir.1992)). The relationship of a breach of

---

[2] For example, *Krock v. Lipsay*, 97 F.3d 640, 645 (2d Cir. 1996), cited by U.S. Bank, stands only for the non-controversial proposition that a choice of law provision governing a contract does not dispositively determine the law which will govern a claim of fraud (i.e., a tort) arising incident to the contract.

[3] Even under the laws U.S. Bank asserts may apply, a claim for bad faith claim handling arises from the breach of the implied covenant of good faith and fair dealing. *E.g., Guebara v. Allstate Ins. Co.*, 237 F.3d 987, 992 (9th Cir. 2001) (California law); *Tackett v. State Farm Fire and Cas. Ins. Co.*, 653 A.2d 254, 264 (Del. 1995) (Delaware law); *Pickett v. Lloyd's*, 621 A.2d 445, 451, 452 (N.J. 1993) (New Jersey law).

contract claim to a bad faith claim confirms the applicability of the choice of law provision to both claims.

U.S. Bank even acknowledges this relationship in its Counterclaim. Each of U.S. Bank's allegations in its claim for relief for bad faith refusal to pay relate to the Insurers' purported "obligations to [U.S. Bank] under the Policies." Countercl. at ¶¶24-26. Moreover, U.S. Bank pleads it is entitled to extraordinary relief "[b]ecause AISLIC and C&I *breached the Policies in bad faith.*" Countercl. at ¶29 (emphasis added). U.S. Bank's reliance on the contract as the foundation of its bad faith claim confirms the applicability of the choice of law provision to that claim. U.S. Bank cannot now ignore its own claim in seeking to avoid the result of its pleading. Rather, the connection between the contract and the bad faith claims dictates that the choice of law provision in the C&I policies, adopting New York law, must control both claims.

### B. U.S. Bank's Claim for Bad Faith Is Inextricably Intertwined with Its Breach of Contract Claim and Must Be Decided Under New York Law

Even if U.S. Bank's bad faith claim is not expressly subject to the Choice of Law and Forum provision in the C&I policies, it must still be resolved under New York's bad faith rules because the contract claim and the bad faith claim are "inextricably intertwined." Courts applying New York law have recognized that allegations of bad faith claims handling are "inextricably intertwined with the insurance contract and therefore the same state's law should govern both claims" *Schwartz v. Twin City Fire Ins. Co.*, 492 F. Supp. 2d 308, 329 n.12 (S.D.N.Y. 2007); *In re Payroll Express Corp.*, 921 F. Supp. 1121, 1125 (S.D.N.Y. 1996) ("bad faith and punitive damages claims must be considered together with the breach of contract claim for choice of law purposes").

The Supreme Court of the United States addressed this very issue in the context of whether an allegation of bad faith claim handling brought in state court was preempted by § 301

of the Labor Management Relations Act, 29 U.S.C. § 185(a). *See Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202 (1985). In order to determine the overarching preemption issue, the Court had to decide "whether the Wisconsin tort action for breach of the duty of good faith . . . confers nonnegotiable state-law rights . . . independent of any right established by contract, or, instead, whether evaluation of the tort claim is inextricably intertwined with consideration of the terms of the labor contract." *Id.* at 213. If the latter, federal law would preempt state tort law. *Id.*

Similar to U.S. Bank's bad faith claim, the underlying bad faith claim brought by the *Allis-Chalmers* respondent concerned allegations of repeated delays in the payment of insurance benefits. *Id.* at 205. Prior to the Court granting *certiorari*, the Wisconsin Supreme Court had determined that under Minnesota law, the bad faith tort claim at issue was independent of any contract claim and could be adjudicated without reaching any questions of contractual interpretation. *Id.* at 213-15. The United States Supreme Court rejected this analysis, explaining that since a cause of action in tort for an insurer's bad faith refusal to honor an insured's claim is derived from an implied covenant of good faith and fair dealing found in any contract, any attempt to decide liability for a bad faith claim "inevitably will involve contract interpretation." *Id.* at 218. Therefore, with respect to respondent's bad faith claim, whether there was an obligation under a contract to provide timely payment of insurance benefits was intrinsically an issue of contractual interpretation. *Id.* at 215.

This analysis has been applied to insurance bad faith claims, such as U.S. Bank's, with the same result that the bad faith claim is "inextricably intertwined" with the contract, such that an interpretation of the policies is necessary to establish liability. *See, e.g., Schwartz*, 492 F. Supp. 2d at 329 n.12; *Lafarge Corp. v. Nat'l Union Fire Ins. Co.*, 935 F. Supp. 675, 692 (D. Md. 1996); *Home Ins. Co. v. Serv. Am. Corp.*, 654 F. Supp. 157, 158-59 (N.D. Ill. 1987). In applying

this analysis to bad faith claims, courts have recognized that, "'an unnecessarily confusing situation would result if the law of one state is used to interpret the insurance agreement regarding the breach of contract claim and the law of a second state is applied to interpret the same agreement with regard to the bad faith claim.'" *Schwartz*, 492 F. Supp. 2d at 329 n.12 (citations omitted); *see also Lafarge*, 935 F. Supp. at 692 ("[T]his Court will not . . . subject [the non-movant] to 'potentially conflicting standards of conduct.'"). Because U.S. Bank's bad faith and breach of contract claims are inextricably intertwined, this court should avoid injecting confusion into this case and apply New York law to both claims.

### III. Applying New York's Choice of Law Rules Results in Application of New York Law to U.S. Bank's Bad Faith Claim

As discussed above, U.S. Bank has cited no cases in which the choice of law analysis used by a court resulted in the application of different legal regimes to breach of contract and bad faith claims because courts view those claims as inherently connected. There is no dispute here that the choice of law provision in the C&I policies requires application of New York law to the contract claims and, therefore, to the related bad faith claims. However, even if the court conducted the "significant contacts" approach advocated by U.S. Bank without regard to the choice of law provision, New York law should still be applied to both claims in U.S. Bank's counterclaim. Under New York law, choice of law issues must be determined issue by issue. *See e.g., Globe Commc'ns Corp. v. R.C.S. Rizzoli Periodici, S.p.A.*, 729 F. Supp. 973, 975 (S.D.N.Y. 1990). Were the court to separate the issues for choice of law purposes, as U.S. Bank suggests it should, the most significant contacts for the bad faith claim will not be the same as those for the contract claim. In its lengthy, but inconclusive choice of law discussion, U.S. Bank alleges contacts with numerous jurisdictions that should be considered by this Court, but all of these contacts relate to formation of the contract – the issue already addressed by the choice of

law provision. U.S. Bank ignores the significant contacts that New York has with the claims at issue in an attempt to blur the choice of law analysis related to its bad faith claim. *See* Def. Opp. at 12-17.

As is evident from U.S. Bank's pleadings, *see* Countercl. at ¶¶ 23-29, the issue implicated in its bad faith claim is the Insurers' claim handling practices. Despite this admission, U.S. Bank makes no mention in its opposition brief to the significant contacts New York maintains with respect to the claims handling allegations in this case. *See* Def. Opp. at 12-17. Rather, U.S. Bank focuses its discussion solely on the contacts more properly considered when determining the state law applicable to a breach of contract rather than to an allegation of bad faith. If U.S. Bank were to have performed that analysis, it would be clear that New York has the most significant contacts to the bad faith allegations made by U.S. Bank.

New York is the jurisdiction in which the alleged breach of the covenant of good faith and fair dealing took place under both the C&I policies and the AISLIC policy. All of U.S. Bank's claims at issue were submitted to offices in New York, the alleged bad faith claims handling occurred in New York, the Insurers' alleged bad faith interpretation of the various terms and conditions complained about by U.S. Bank occurred in New York, all of the Insurers' claims communications with U.S. Bank were received or originated in New York, and the ultimate coverage decisions at issue in this case were sent to U.S. Bank from New York. Further, U.S. Bank admits that C&I is a New York corporation with its principal place of business in New York. *See* Def. Reply at 17. And, as discussed above, the Choice of Law and Forum provision in the C&I policies evidences the fact that the parties intended to have New York law apply to all disputes between them. Finally, U.S. Bank completely ignores the clear public policy interest that New York has in regulating its insurance industry and any alleged bad

faith conduct that takes place within its borders. Accordingly, because of the significant contacts that New York maintains with respect to U.S. Bank's bad faith claim, New York law must apply and U.S. Bank's Second Claim for Relief must be dismissed.

### IV.   New York Law Applies to the Three Claims Brought Under the AISLIC Policy

U.S. Bank's counterclaim for bad faith must also be dismissed with respect to the three claims out of sixty-four brought under the one AISLIC Policy, because New York law applies to those claims as well. The AISLIC Policy contains an Arbitration clause that differs from the Choice of Law and Forum clause found in the five C&I policies. *See* 2d Amd. Complt. at ¶¶ 10, 11. The Arbitration clause found in the AISLIC Policy provides that all disputes arising under or in connection with the Policy "shall be submitted to the American Arbitration Association and in accordance with its then prevailing commercial arbitration rules." *See* 2d Amd. Complt. at ¶ 11. The provision goes on to state that "the arbitrators shall give *due consideration* to the *general principles* of Delaware law in construction and interpretation of the provisions of this Policy; provided, however, that the terms, conditions, provisions and exclusions of this Policy are to be construed in an evenhanded fashion as between the parties. . ." *See id.* (emphasis added).

As is clear from the plain language of the Arbitration clause, and unlike the Choice of Law and Forum clause in the C&I policies, a dispute arising under the AISLIC Policy had to be brought before the American Arbitration Association. Absent agreement of the parties, this Court would not have been able to resolve the three claims related to the AISLIC policy due to the mandatory nature of the Arbitration clause. U.S. Bank and the Insurers agreed to waive their rights under the Arbitration clause in order to litigate the issues related to the AISLIC and C&I policies with this Court. *See* 2d Amd. Complt. at ¶ 12; Answer at ¶ 12. U.S. Bank now selectively chooses the provision it likes from the Choice of Law and Forum clause, *i.e.* the provision requiring that all litigation take place in the State of New York, while ignoring the

requirement that New York law apply to disputes between the parties and selectively reverting to the "Delaware principles" language in the waived Arbitration clause. Since the parties agreed to waive the Arbitration provision in the AISLIC Policy and submit to the jurisdiction of this Court pursuant to the Choice of Law and Forum provision in the C&I policies, New York law must apply to the breach of contract and bad faith allegations brought by U.S. Bank under the AISLIC Policy as well.

## CONCLUSION

For the foregoing reasons, the Insurers respectfully request that the Court grant their Motion to Dismiss for failure to state a claim as to Count II of U.S. Bank's Counterclaim.

Dated:   New York, New York
         December 17, 2007

STEPTOE & JOHNSON LLP

By:   /s/ John D. Lovi
    John D. Lovi (JL-5928)
    Lara E. Romansic (LR-9236)
    750 Seventh Avenue, 19th Floor
    New York, New York  10019
    (212) 506-3900
    (212) 506-3950 (fax)

-and-

Roger Warin
Harry Lee
Steptoe & Johnson LLP
1330 Connecticut Avenue, NW
Washington, DC  20036
(202) 429-3000
(202) 429-3902 (fax)

*Attorneys for Plaintiffs/Counterclaim Defendants American International Specialty Lines Insurance Company and Commerce & Industry Insurance Company*

*Of Counsel:*
Scott Davis
Gardere Wynne Sewell LLP
1601 Elm Street, Suite 3000
Dallas, Texas  75201
(214) 999-3000
(214) 999-4667 (fax)