**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------

**COMMERCE AND INDUSTRY INSURANCE COMPANY, et al.,**

                 **Plaintiffs,**

         - against -

**U.S. BANK NATIONAL ASSOCIATION, AS INDENTURE TRUSTEE FOR THE REGISTERED HOLDERS OF FMAC LOAN RECEIVABLES TRUSTS 1997-B, 1998-B, 1998-C, 1998-D AND 2000-A,**

                 **Defendant.**
------------------------------------------------

07 Civ. 5731 (JGK)

OPINION AND ORDER

**JOHN G. KOELTL, District Judge:**

    The plaintiffs, Commerce and Industry Insurance Company ("C&I") and American International Specialty Lines Insurance Company ("AISLIC"), filed this action seeking a declaratory judgment on their obligations and liabilities under six commercial real estate insurance policies with regard to sixty-four claims made by the defendant, U.S. Bank National Association ("U.S. Bank"), as indenture trustee for the registered holders of FMAC Loan Receivables Trusts 1997-B, 1998-B, 1998-C, 1998-D, and 2000-A, under those policies. Jurisdiction is based on diversity of citizenship pursuant to 28 U.S.C. § 1332. The defendant filed counterclaims for (1) breach of contract and (2) bad faith refusal to pay. The plaintiffs, pursuant to Federal Rule of Civil Procedure 12(b)(6), move to

dismiss the defendant's counterclaim for bad faith refusal to pay, as well as the associated request for punitive damages and attorneys' fees that are based on the bad faith claim.

I.

In deciding a motion to dismiss a counterclaim pursuant to Rule 12(b)(6), the allegations in the claimant's pleadings are accepted as true and all reasonable inferences must be drawn in the claimant's favor. McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007); Arista Records LLC v. Lime Group LLC, No. 06 Civ. 5936, 2007 WL 4267190, at *4-*5 (S.D.N.Y. Dec. 3, 2007). The Court should not dismiss the counterclaim if the counter-plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." Twombly v. Bell Atlantic Corp., 127 S. Ct. 1955, 1974 (2007). See Katz v. Image Innovations Holdings, Inc., No. 06 Civ. 3707, 2008 WL 762101, at *2 (S.D.N.Y. March 24, 2008).

The Court may consider documents that are referenced in the counterclaim, documents that the counter-plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit, or matters of which judicial notice may be taken. Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002); see also Taylor v. Vermont Dep't of Educ., 313 F.3d 768, 776 (2d Cir. 2002); Kramer

v. Time Warner, Inc., 937 F.2d 767, 773 (2d Cir. 1991); Brass v. Am. Film Techs., Inc., 987 F.2d 142, 150 (2d Cir. 1993); Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 47-48 (2d Cir. 1991); VTech Holdings Ltd. v. Lucent Techs., Inc., 172 F.Supp.2d 435, 437 (S.D.N.Y. 2001).

## II.

The following facts are accepted as true for the purposes of this motion.

In the late 1990's, the Franchise Mortgage Acceptance Company LLC ("FMAC") made various loans that were secured by commercial real estate. Most of the properties, if not all, have underground petroleum storage tanks. FMAC then assigned its interest in these loans, as well as the related deeds securing the debt, to various trusts of FMAC Loan Receivables Trusts (the "Trusts"). U.S. Bank, the defendant, is the indenture trustee of the Trusts. (Def.'s Countercl. ¶ 6). The loans are secured by the "Insured Properties." (Def.'s Countercl. ¶ 10).

The Trusts faced a risk that the borrowers would default on the loans. Additionally, the Insured Properties might develop on-site pollution conditions as a result of the underground petroleum tanks, which could negatively impact the value of the collateral securing the loans. In light of these risks, the

Trusts purchased six Secured Creditor Impaired Property ("SCIP") insurance policies issued by the plaintiffs. Among the purchased policies were the policies numbered 5295738, 5295859, 5295865, 7788373, 7788374 (the "C&I Policies") and 8195202 (the "AISLIC Policy")(collectively, the "Policies"). (Def.'s Countercl. ¶¶ 6-7).

The Policies insure U.S. Bank against losses that result from borrowers defaulting on commercial real estate loans, where "On-Site Pollution Conditions" exist on the Insured Properties. (Def.'s Countercl. ¶ 8). Should the defendant incur losses as a result of a borrower's default on a commercial real estate loan that is secured by an Insured Property containing an onsite pollution condition, the Policies require the respective insurer to pay the lesser of the "Outstanding Balance" remaining on the loan, or the "Clean-Up Costs" associated with the on-site pollution conditions. (Id.) These insurance policies protect the defendant against financial losses arising from Insured Properties that it seeks to repossess in the event of borrower defaults, where the value of those properties is reduced by on-site pollution conditions.

The defendant has incurred substantial financial losses as a result of defaults by borrowers of commercial real estate loans, where pollution conditions were found on various properties that served as security for the defaulted commercial

4

real estate loans. (Def.'s Countercl. ¶¶ 9-11). The various properties at issue are covered either by the C&I Policies or the AISLIC Policy. (Def.'s Countercl. ¶ 10). The defendant has provided the plaintiffs with timely notice of the details of its claims, and the factual conditions required by the Policies have been met and/or waived, but the plaintiffs have not paid a substantial portion of the defendant's "Losses" under the Policies. (Def.'s Countercl. ¶¶ 12, 13, 15).

The plaintiffs have brought this action for declaratory relief, pursuant to 28 U.S.C. § 2201, seeking a declaration as to the scope of their liability, if any, under the Policies, as well as to any recovery for which they might be entitled with regard to any payments they have already made to the defendant, in connection with sixty-four claims under the Policies. (Second Am. Compl. ("SAC") ¶¶ 52, 55). Although the AISLIC policy contains an arbitration agreement, the parties have agreed to waive their rights under that agreement, choosing instead to litigate the claims brought under the AISLIC policy before this Court. (SAC ¶ 12; Answer ¶ 12.) In its Answer, the defendant has asserted counterclaims for breach of contract, as well as bad faith refusal to pay. (Def.'s Countercl. ¶¶ 16-29). In connection with the claim for bad faith refusal to pay, the defendant seeks punitive damages, attorneys' fees, litigation expenses, and pre-judgment interest. (Def.'s Countercl. ¶¶ 28,

29.)  The plaintiffs have moved to dismiss the counterclaim for bad faith refusal to pay.

### III.

The plaintiffs' motion to dismiss depends on the law that governs the bad faith claim.  The plaintiffs' assertion that the bad faith claim should be dismissed depends on the application of New York law to that claim.  The defendant disputes that New York law applies to the bad faith claim.

If New York law governs the defendant's claim for bad faith refusal to pay, the plaintiffs' motion to dismiss that counterclaim must be granted.  Under New York law, "implicit in contracts of insurance is a covenant of good faith and fair dealing . . ." Bi-Economy Market, Inc. v. Harleysville Ins. Co. of New York, 10 N.Y.3d 187, 194 (2008) (citing New York Univ. v. Continental Ins. Co., 87 N.Y.2d 308, 318, 662 N.E.2d 763, 769 (1995)).  As such, New York law views various bad faith claims against insurance carriers as "contractual in nature." New England Ins. Co. v. Healthcare Underwriters Mut. Ins. Co., 352 F.3d 599, 606 (2d Cir. 2003) (internal citations omitted).  A "breach of [the implied duty of good faith] is merely a breach of the underlying contract." Sea Carriers Corp. v. Empire Programs, Inc., 488 F. Supp. 2d 375, 380 (S.D.N.Y. 2007) (quoting Fasolino Foods Co., Inc. v. Banca Nazionale del Lavoro, 961 F.2d 1052, 1056 (2d Cir. 1992) (internal quotation marks and

6

citation omitted). Such a claim is "duplicative of the [underlying] cause of action for breach of contract." New York Univ., 662 N.E.2d at 770. The claim should be dismissed as duplicative under New York Law. Id.; Sea Carriers Corp., 488 F. Supp. 2d at 380.

Moreover, the defendant seeks punitive damages in connection to its bad faith claim. Under New York law, the failure to pay a claim cannot provide the basis for an award of punitive damages in the absence of egregious conduct on the part of the defendant that is actionable as an independent tort, that is directed to the plaintiff, and that is part of a pattern of behavior aimed at the public generally. See New York Univ., 662 N.E.2d at 767; A I Marine Adjusters, Inc. v. M/V Siri Bhum, No. 05 Civ. 7227, 2007 WL 760415, at *7 (S.D.N.Y. Feb. 8, 2007) (citing TVT Records v. Island Def Jam Music Group, 412 F.3d 82, 94 (2d Cir. 2005)).

Because the C&I Policies contains a choice of law provision not present in the AISLIC Policy, the Policies will be considered separately to determine if New York law governs the claims associated with each one.

A.

The C&I Policies contain a choice of law provision, which states:

7

>**Choice of Law and Forum -** In the event that the **Insured** and the Company dispute the validity or formation of this Policy or the meaning, interpretation or operation of any term, condition, definition or provision of this Policy resulting in litigation, arbitration or other form of dispute resolution, the **Insured** and the Company agree that the law of the State of New York shall apply and that all litigation, arbitration or other form of dispute resolution shall take place in the State of New York.

(SAC ¶ 10.) The parties dispute whether this clause covers the bad faith claim regarding the C&I Policies. Therefore, the initial question is whether this Court should apply New York law to the bad faith claims in light of these provisions of the C&I Policies.

In determining the scope of the choice of law provision, this Court must follow New York law. See Finance One Public Co. Ltd. v. Lehman Bros. Special Financing, Inc., 414 F.3d 325, 333 (2d Cir. 2005) ("The district court . . . sitting in diversity, was bound to apply New York law to determine the scope of the contractual choice-of-law clause. New York courts decide the scope of such clauses under New York law, not under the law selected by the clause, which here also happens to be New York law.").

New York courts are generally reluctant to construe choice of law provisions broadly. Id. at 334-35. Under this approach, "extra-contractual" claims, such as tort claims that arise only

8

incidentally to the contract are not covered by the choice of law clause.  Id.

However, New York law considers the duty to act in good faith as "controlled by the implied covenant of good faith and fair dealing found in every contract," In re Payroll Express Corp., 921 F. Supp. 1121, 1125 (S.D.N.Y. 1996).  Therefore, a bad faith claim is treated as a breach of the underlying contract for the purposes of applying a choice of law provision.  "New York . . . law support[s] the conclusion that the bad faith and punitive damages claims must be considered together with the breach of contract claim for choice of law purposes."  Id.  See also Core-Mark Int'l Corp. v. Commonwealth Ins. Co., No. 05 Civ. 183, 2005 WL 1676704, at *3-*4 (S.D.N.Y. July 19, 2005) (holding that plaintiff's bad faith claim should be dismissed because New York law applies to the plaintiff's bad faith claim in light of a choice of law provision and that "New York does not recognize the tort of bad faith denial of insurance coverage.").  But see Frazer Exton Dev., LP v. Kemper Envtl., Ltd., No. 03 Civ. 0637, 2004 WL 1752580, at *10 (S.D.N.Y. July 29, 2004) (declining to extend a choice of law provision designating New York law to the plaintiff's bad faith claims).[1]

---

[1] It should be noted that the Frazer Exton decision did not consider the argument that in deciding choice of law, the court must apply New York law that does not consider a bad faith claim as separate from a breach of contract claim.  See In re Payroll Express Corp., 921 F. Supp. at 1125; Core-Mark Int'l Corp., 2005 WL 1676704, at *3.  Moreover, the decision did not

The application of New York law to the bad faith claim is supported by the Supreme Court's decision in Allis-Chalmers Corp. v. Lueck, 471 U.S. 202 (1985). In Allis-Chalmers the Supreme Court held that a claim under Wisconsin law for bad faith handling of an insurance claim under a disability insurance plan included in a collective bargaining agreement was pre-empted by Section 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185(a). The Supreme Court reasoned that the tort was "inextricably intertwined" with matters of contract interpretation: "Because the right asserted not only derives from the contract, but is defined by the contractual obligation of good faith, any attempt to assess liability here inevitably will involve contract interpretation." Id. at 218. So too here, the bad faith claim is "inextricably intertwined" with the contract claim, and therefore the same law should govern both the contractual claim as well as the bad faith claims. Cf. Schwartz v. Twin City Fire Ins. Co., 492 F. Supp. 2d 308, 329 n.12 (S.D.N.Y. 2007) (noting in dicta that a first-party bad faith claim may be inextricably intertwined with a contract claim). "An unnecessarily confusing situation would result if the law of one state is used to interpret the insurance agreement regarding the breach of contract claim and the law of

---

consider the Supreme Court's decision in Allis-Chalmers Corp. v. Lueck, 471 U.S. 202 (1985), discussed below.

a second state is applied to interpret the same agreement with regard to the bad faith claim." Home Ins. Co. v. Serv. America Corp., 654 F. Supp 157, 158-59 (N.D.Ill. 1987); see also In re Payroll Express Corp., No. 92-B-43150, 2005 WL 2438444, at *14 (Bankr. S.D.N.Y. March 30, 2005); Lafarge Corp. v. Nat'l Union Fire Ins. Co., 935 F. Supp. 675, 692 (D.Md. 1996).

The basic holding of these cases, that the same state's law should govern both the contract and bad faith claims, applies with equal force where the choice of law for the contract dispute is determined by a contractual choice of law provision. Whether the law governing the breach of contract claim is determined by a contractual choice of law clause, or by the "center of gravity" analysis, an equally "unnecessarily confusing situation would result" if different laws govern the contract and bad faith claims.

At least here, in a first-party breach of insurance contract claim, where the allegation of bad faith refusal to pay depends on a determination of the plaintiff's obligations under the insurance contract, the breach of contract and bad faith claims are inextricably intertwined and should be governed by the laws of the same state. It is undisputed that, based on the contractual choice of law provision, New York law governs the claim for breach of contract arising out of the C&I Policies.

Therefore, New York law should also apply to the bad faith refusal to pay claim relating to these contracts.

Because New York law applies to the bad faith claim under the C&I Policies and New York would not recognize a bad faith refusal to pay claim distinct from the plaintiff's breach of contract claim, the plaintiffs' motion to dismiss the defendant's bad faith claim under the C&I Policies is **granted**.

B.

The Court now turns to the AISLIC Policy to determine if New York law governs the bad faith claim associated with that policy.

Unlike the C&I Policies, the AISLIC Policy does not contain a choice of law clause. The AISLIC Policy does contain an arbitration clause, instructing the arbitrator to "give due consideration to the general principles of Delaware law in the construction and interpretation of the provisions of this Policy," but the parties have mutually waived this arbitration agreement. (SAC ¶ 11.) The Court must therefore engage in a choice of law analysis pursuant to New York's choice of law rules.

A federal court sitting in diversity applies the choice of law rules of the forum state in which it sits. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941); see also

Therefore, New York law should also apply to the bad faith refusal to pay claim relating to these contracts.

Because New York law applies to the bad faith claim under the C&I Policies and New York would not recognize a bad faith refusal to pay claim distinct from the plaintiff's breach of contract claim, the plaintiffs' motion to dismiss the defendant's bad faith claim under the C&I Policies is **granted**.

B.

The Court now turns to the AISLIC Policy to determine if New York law governs the bad faith claim associated with that policy.

Unlike the C&I Policies, the AISLIC Policy does not contain a choice of law clause. The AISLIC Policy does contain an arbitration clause, instructing the arbitrator to "give due consideration to the general principles of Delaware law in the construction and interpretation of the provisions of this Policy," but the parties have mutually waived this arbitration agreement. (SAC ¶ 11.) The Court must therefore engage in a choice of law analysis pursuant to New York's choice of law rules.

A federal court sitting in diversity applies the choice of law rules of the forum state in which it sits. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941); see also

Finance One, 414 F.3d at 331 (2d Cir. 2005) (citing Curley v. AMR Corp., 153 F.3d 5, 11 (2d Cir. 1998)). "In New York, the forum state in this case, the first question to resolve in determining whether to undertake a choice of law analysis is whether there is an actual conflict of laws." Curley, 153 F.3d at 12 (citing Matter of Allstate Ins. Co. and Stolarz, 613 N.E.2d 936, 937 (N.Y. 1993)).

i.

The defendant argues that New York law does not apply to the counterclaim and that either Delaware, New Jersey, or California law applies. An actual conflict of laws exists because these other potentially applicable jurisdictions recognize a claim for bad faith refusal to pay.

Delaware law recognizes, at least in the context of a first-party insurance contract dispute, such as this case, that "the presence of bad faith, is actionable where the insured can show that the insurer's denial of benefits was clearly without any reasonable justification." Tackett v. State Farm Fire and Cas. Ins. Co., 653 A.2d 254, 264 (Del. 1995) (internal quotation marks and citation omitted). Within the category of bad faith claims, Delaware limits punitive damages to situations where "the defendant's conduct is 'outrageous,' because of 'evil motive' or 'reckless indifference to the rights of others.'" Id. at 265 (quoting Jardel Co. v. Hughes, 523 A.2d 518, 529

13

(Del. 1987)); see also Fay v. Unum Life Ins. Co. of America, 1999 WL 1611318, at *2 (Del. Super. Ct. Apr. 1, 1999). This standard for punitive damages differs from New York's standard which includes a requirement that the conduct in question be part of a pattern of behavior aimed at the public.

Similarly, New Jersey requires a showing of "egregious circumstances" beyond the mere "breach of the good-faith obligation." Pickett v. Lloyds, 621 A.2d 445, 455 (N.J. 1993). But conduct that is "wantonly reckless or malicious" would satisfy this "egregious circumstances" requirement, and therefore New Jersey law also differs from New York law in the showing required to recover punitive damages for a first-party claim alleging refusal to pay pursuant to an insurance contract. Polizzi Meats, Inc. v. Aetna Life & Cas. Co., 931 F. Supp. 328, 335 (D.N.J. 1996) (citing Nappe v. Anschelewitz, Barr, Ansell & Bonello, 477 A.2d 1224, 1230-31 (N.J. 1984)).

Finally, in California, "bad faith by an insurer is subject to tort remedies, including punitive damages." Amadeo v. Principal Mut. Life Ins. Co., 290 F.3d 1152, 1161 (9th Cir. 2002). This assessment is based on the reasonableness of the denial of insurance coverage. Id. This standard appears even more permissive with respect to the imposition of punitive damages than the standard in New Jersey and Delaware, and also materially conflicts with New York's more restrictive standard.

14

As explained above, the defendant has no claim for a bad faith refusal to pay under New York law, and the defendant has not stated a claim for punitive damages under New York law because it has not alleged facts to establish the 'public aim' requirement. Therefore, if New York law applies to the bad faith claim under the AISLIC Policy, the plaintiffs' motion should be granted. However, the Court could not conclude that the defendant has failed to state a claim as a matter of law under the remaining potentially applicable laws.[2] Because there is an actual conflict of laws between New York and the remaining potentially applicable laws, the Court must engage in a choice of law analysis.

ii.

For the reasons explained above, under New York's choice-of-law rules, the law that applies to the breach of contract claim also applies to the claim alleging bad faith refusal to pay under the AISLIC Policy. New York applies a "center of gravity" or "grouping of contracts" analysis to determine which state's law applies to a claim for breach of contract, and

---

[2] Although some of the other states (namely Delaware and New Jersey) have a fairly rigorous standard for punitive damages to apply, the defendant has pleaded that the plaintiffs "recklessly disregarded the lack of a reasonable basis for their refusal to perform and/or delay in performing their obligations." (Def.'s Countercl. ¶ 26.) Once it is determined which state's laws apply, it will become clear precisely what the defendant must prove in order to be eligible to receive punitive damages.

therefore that same test should apply to the bad faith claim. Finance One, 414 F.3d at 336.

Courts look to a number of factors under the "center of gravity" or "grouping of contacts" approach, including "the place of contracting, the places of negotiation and performance, the location of the subject matter, and the domicile or place of business of the contracting parties." Wiener v. Unumprovident Corp., 00 Civ. 9315, 2002 WL 31108182, at *1 (S.D.N.Y. Sept. 20, 2002) (citing Brink's Ltd. v. South African Airways, 93 F.3d 1022, 1030-31 (2d Cir. 1996)). In cases involving insurance contracts, New York courts look to "the location of the insured risk, the insured's principal place of business, the residence of the insured, where the policy was issued and delivered, the location of the broker or agent placing the policy, where the premiums were paid, and the insurer's place of business." Id. at *2.[3]

AISLIC is a corporation organized under the laws of the State of Alaska and has its principal place of business in New

---

[3] Alternatively, where "a corporate insured seek[s] coverage under a policy covering risks in multiple states, the foregoing interests, in aggregate, weigh in favor of applying the law of the insured's domicile, notwithstanding that certain other states (e.g., the states of the insurer's domicile, and where negotiation and contracting occurred)" also have an interest in the proceedings. Certain Underwriters at Lloyd's, London v. Foster Wheeler Corp., 822 N.Y.S.2d 30, 34 (App. Div. 1996). This is because the purpose of the contract choice of law analysis is not to conduct a "mindless scavenger hunt to see which state can be found to have more contacts, but rather to detect and analyze what interest the competing states have in enforcing their respective rules." Fireman's Fund Ins. Co., Inc. v. Schuster Films, Inc., 811 F. Supp. 978, 984 (S.D.N.Y. 1993).

Jersey.  The defendant's location is more complicated.  U.S. Bank is a national banking association.  According to its Articles of Association, its main office is in Cincinnati, Ohio.  However, its principal trust office is in St. Paul, Minnesota.[4]  However, there is only one AISLIC Policy at issue, and this Policy was issued to only one of the Trusts, FMAC Loan Receivable Trust 1997-B ("Trust 1997-B").  The AISLIC Policy shows the address of Trust 1997-B to be in California.  (Dorkey Decl. Ex. 6.)  This trust is a Delaware business trust, with its office located in Delaware.  (Def.'s Resp. at 15; see also Dorkey Decl. Ex. 7.)  FMAC, the company that originated the loans and then assigned them to the various individual FMAC trusts, is a California limited liability company, with its offices in Connecticut.  (Dorkey Decl. Ex. 7.)

The defendant also offers a list of Trust 1997-B's properties throughout the country that are insured by the AISLIC Policy, but the list does not indicate which of these properties are at issue in this case.  (Dorkey Decl. Ex. 20.)  However, none of these properties are in New York.  AISLIC issued its policy from an office and through a broker in New Jersey.

---

[4] Neither of the parties has suggested that either Minnesota or Ohio law should govern this issue.  Moreover, because the AISLIC Policy at issue here was only between AISLIC and FMAC Loan Receivable Trust 1997-B, and AISLIC actually communicated with FMAC Loan Receivable Trust 1997-B regarding its policy, the location of FMAC Loan Receivable Trust 1997-B is more relevant to the analysis than is the location of U.S. Bank.  Based on the record there is no reason to conclude that either Minnesota or Ohio law should apply to any of the counterclaims.

17

(Dorkey Decl. Ex. 6.)  The plaintiffs contend that U.S. Bank submitted its claims regarding the AISLIC Policy to a New York office, and this is where the alleged bad faith handling of the claims occurred, but the plaintiffs do not offer any documentary evidence in support of this claim, and the defendant correctly points out that such extrinsic evidence should not be considered on this motion to dismiss.  (Pls.' R. Br. 8.)  In any event, because the center of gravity approach generally focuses on the insured, that contact with New York is not sufficient to establish that New York law should apply.

The plaintiffs argue that a choice of law analysis points to New York law, but they do so by analyzing the contacts relevant to the bad faith claim.  As explained above, the proper choice of law analysis is to determine what law applies to the contract claim, and to apply that law to the bad faith claim.  The plaintiffs do not offer a choice of law analysis in support of the proposition that New York law would apply to the contract claim.

The plaintiffs further argue that the parties' inclusion of a New York choice of law provision in the C&I Policies indicates an intention by the parties to be governed by New York law in the AISLIC policy.  However, the fact that the parties agreed to a New York choice of law clause in the C&I Policies does not indicate that the same should apply to the AISLIC Policy.  If

18

anything, the fact that the parties specifically chose different provisions for each contract indicates a disparity rather than a similarity between the two.

### iii.

Based on the current record it is unclear how the choice of law analysis should be resolved, and the parties should have an opportunity to brief the issue in greater detail and to submit evidence on the proper interests involved. However, based on the evidence presented thus far, the Court could not conclude that the center of gravity analysis, as applied to the claim for breach of the AISLIC Policy, requires that New York law be applied to govern the counterclaim for bad faith.

As explained above, under New York's choice of law rules, the law that governs the breach of contract claim will also govern the bad faith claim. Therefore, because the Court could not conclude that the defendant has failed to state a claim for bad faith under the law of at least one of the potentially applicable jurisdictions, and because it cannot be determined at this point which state's law will govern the claim, the plaintiffs' motion to dismiss the defendant's bad faith claim in connection with the AISLIC Policy is **denied**.

CONCLUSION

The plaintiffs' motion to dismiss the defendant's bad faith claim as a basis for punitive damages and attorneys' fees is **granted** as to the C&I Policies. However, the plaintiffs' motion is **denied** as to the AISLIC Policy. The Clerk is directed to close Docket No. 19.

SO ORDERED.

Dated: New York, New York
       August 29, 2008

_____
John G. Koeltl
United States District Judge